Robyn Crowther (SBN 193840)
*rcrowther@steptoe.com*
**STEPTOE & JOHNSON LLP**
633 West 5th Street, Suite 1900
Los Angeles, CA 90071
Telephone:  (213) 439-9400
Facsimile:  (213) 439-9599

(*Additional counsel listed on next page*)

*Attorney for Defendants* MEKETA INVESTMENT
GROUP, INC. and JUDY CHAMBERS

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA and the BOARD OF TRUSTEES FOR THE CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, each on behalf of the Construction Laborers Pension Plan for Southern California,<br><br>        Plaintiffs,<br><br>    vs.<br><br>MEKETA INVESTMENT GROUP, INC. and JUDY CHAMBERS,<br><br>        Defendants. | Case No.: 2:23-cv-07726<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Judge:  Christina A. Snyder<br>Hearing Date: March 18, 2024<br>Hearing Time: 10:00 a.m.<br>Courtroom:  8D |

Diana K. Lloyd (*Pro hac vice pending*)
Caroline Trusty (*Pro hac vice pending*)
Alexander L. Bevans (*Pro hac vice pending*)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA 02110
*dlloyd@choate.com*
*ctrusty@choate.com*
*abevans@choate.com*
Telephone: (617) 248 5000
Facsimile:  (617) 502-4060

Eric G. Serron (*Pro hac vice pending*)
*eserron@steptoe.com*
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

*Attorneys for Defendants* MEKETA INVESTMENT
GROUP, INC. and JUDY CHAMBERS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# <u>TABLE OF CONTENTS</u>

<u>Page Nos.</u>

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................3

    A.    Pursuant to Their Agreement, Defendants Assisted the Pension Fund with an Infrastructure Investment Program by Developing an Infrastructure Investment Policy. ..............................3

    B.    Defendants Identified Eight Potential Program Managers for the Program, Including Onset. ...............................................5

    C.    The Pension Fund Created a Limited Partnership, Vesting Exclusive Authority and Sole Discretion over the Partnership's Investments and Investment Policy in Onset. ..........................6

    D.    Plaintiffs' Allegations ........................................................8

LEGAL STANDARD ...........................................................................9

ARGUMENT ......................................................................................10

I.    PLAINTIFFS LACK STANDING TO SUE UNDER ERISA. ...................10

II.    ERISA PREEMPTS PLAINTIFFS' STATE LAW CLAIMS......................11

III.    ERISA TIME-BARS PLAINTIFFS' VETTING CLAIM. ..........................14

    A.    All Conduct Related to the Alleged Imprudent Vetting Occurred Over Six Years Ago. ..........................................14

    B.    Plaintiffs Fail to Allege Any Imprudent Conduct Related to Defendants' Vetting of Potential Asset Managers............................15

IV.    PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE DUTY OF PRUDENCE........................................................16

    A.    Documents Referenced in the Complaint and Judicially Noticeable Documents Confirm that Defendants Had No Authority to Supervise Onset..............................................17

i

B.   The Complaint Includes No Facts to Demonstrate Imprudent
        Conduct by Defendants. ........................................................................19

C.   The Complaint and its Attachments Demonstrate that
        Defendants Fulfilled their Responsibilities Under the
        Consulting Agreement. .......................................................................22

V.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE........23

CONCLUSION........................................................................................................24

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1.......................................24

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Albin v. Reynolds Fin. Grp.*,
 No. 96-55816, 1997 U.S. App. LEXIS 28885 (9th Cir. Oct. 17,
 1997) ..................................................................................................... 14

*Anderson v. Intel Corp. Inv. Policy Comm.*,
 No. 19-CV-04618-LHK, 2021 U.S. Dist. LEXIS 12496 (N.D. Cal.
 Jan. 21, 2021) ........................................................................................ 21

*Ashcroft v. Iqbal*,
 556 US 679 (2009) .............................................................................. 9, 19

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...................................................................... 3, 9, 15

*Boilermaker-Blacksmith Nat'l Pension Tr. V. Reed*,
 Nos. 02-10109-7, 02-6028, 2004 Bankr. LEXIS 1429 (Bankr. D.
 Kan. Sept. 14, 2004) ............................................................................. 11

*Bowles v. Reade*,
 198 F.3d 752 (9th Cir. 1999) ................................................................ 10

*Bracalente v. Cisco Sys.*,
 No. 5:22-cv-04417-EJD, 2023 U.S. Dist. LEXIS 140678 (N.D.
 Cal. Aug. 11, 2023) ................................................................... 16, 19, 20

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
 582 U.S. 497 (2017) ............................................................................. 15

*California Infrastructure Fund I Investor LLC v. Onset General
 Partner, LLC*,
 No. 238MCV0048 (Cal. Sup. Ct. Feb. 1, 2023) ............................ 19, 23

*Cleghorn v. Blue Shield*,
 408 F.3d 1222 (9th Cir. 2005) .............................................................. 11

*Cox v. Eichler*,
 765 F. Supp. 601 (N.D. Cal. 1990) ................................................ 12, 13

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

*Dishman v. UNUM Life Ins. Co. of Am.*,
 269 F.3d 974 (9th Cir. 2001) ............................................................... 14

*In re Disney ERISA Litig.*,
 No. CV 16-2251 PA, 2017 U.S. Dist. LEXIS 61202 (C.D. Cal.
 Apr. 21, 2017) ......................................................................................... 9

*Ellenburg v. Brockway, Inc.*,
 763 F.2d 1091 (9th Cir. 1985) ............................................................. 11

*Fifth Third Bancorp v. Dudenhoeffer*,
 573 U.S. 409 (2014)........................................................... 9, 16, 19

*Gen. Am. Life Ins. Co. v. Castonguay*,
 984 F.2d 1518 (9th Cir. 1993) ............................................................. 12

*Guenther v. Lockheed Martin Corp.*,
 972 F.3d 1043 (9th Cir. 2020) ............................................................. 15

*Kopelev v. Boeing Co.*,
 No. 21-55937, 2022 U.S. App. LEXIS 34042 (9th Cir. Dec. 9,
 2022) ..................................................................................................... 23

*Korman v. ILWU-PMA Claims Office*,
 No. 2:18-cv-07516-SVW-JPR, 2019 U.S. Dist. LEXIS 58646
 (C.D. Cal. Mar. 19, 2019) .................................................................... 13

*Lee v. City of Los Angeles*,
 250 F.3d 668 (9th Cir. 2001) ................................................................. 9

*Local 159 v. Nor-Cal Plumbing, Inc.*,
 185 F.3d 978 (9th Cir. 1999) ............................................................... 10

*North Am. Tool & Die v. Blue Cross*,
 No. 92-16903, 1994 U.S. App. LEXIS 10351 (9th Cir. Apr. 28,
 1994) ..................................................................................................... 13

*In re Out of Network Substance Use Disorder Claims Against
 Unitedhealthcare*,
 No. SACV 19-2075 JVS (DFMx), 2020 U.S. Dist. LEXIS 153773
 (C.D. Cal. July 29, 2020)...................................................................... 12

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

*Paulsen v. CNF, Inc.*,
   559 F.3d 1061 (9th Cir. 2009), 1172 (9th Cir. 2004) ........................................ 12

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt*,
   712 F.3d 705 (2d Cir. 2013) .............................................. 16, 19, 20, 22

*Pressroom Unions-Printers League Income Sec. Fund v. Continental Assur. Co.*,
   700 F.2d 889 (2d Cir. 1983) ............................................................ 10

*Retired Indep. Guards Ass'n of Nev. v. Bd. of Trs.*,
   No. 2:08-cv-00849-RLH-LRL, 2009 U.S. Dist. LEXIS 149466 (D. Nev. May 29, 2009) ................................................................. 13

*Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan Enters., Inc.*,
   793 F.2d 1456 (5th Cir. 1986) ........................................................ 12

*Steen v. John Hancock Life Ins. Co.*,
   106 F.3d 904 (9th Cir. 1997) .......................................................... 10

*Tobias v. Nvidia Corp.*,
   No. 20-CV-06081-LHK, 2021 U.S. Dist. LEXIS 173539 (N.D. Cal. Sept. 13, 2021) .............................................................. 9, 17

*Trs. of Hotel Emps. & Rest. Emps. Int'l Union Welfare Pension Fund v. Amivest Corp.*,
   733 F. Supp. 1180 (N.D. Ill. 1990) ................................................. 11

*Wells Fargo Bank v. Bourns, Inc.*,
   860 F. Supp. 709 (N.D. Cal. 1994) ................................................. 12

*Wise v. Verizon Comms., Inc.*,
   600 F. 3d 1180 (9th Cir. 2010) ................................................... 12, 15

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ..................................................... 9, 17

**Statutes**

29 U.S.C. §1002 ............................................................................ 11

29 U.S.C. § 1104 .................................................................... 12, 16

v

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

29 U.S.C. §1109 ...................................................................................... 10

29 U.S.C. § 1113 .............................................................................. 14, 15

29 U.S.C. § 1132(a)(2) ........................................................................ 10

29 U.S.C. § 1144(a) ............................................................................ 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..................................................................... 3, 9

L.R. 7-3 ................................................................................................ 11

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## INTRODUCTION

Over seven years ago, Plaintiffs—a multiemployer Pension Fund and its Board of Trustees—executed a limited partnership agreement with an asset manager, Onset General Partner, LLC ("Onset"), to establish a partnership called the California Infrastructure Fund I Investor LLC (the "Infrastructure Fund" or "Partnership"). The Partnership's objectives were two-fold: (1) to generate returns by investing in infrastructure companies based in Southern California; and (2) to create opportunities for the Pension Fund's beneficiaries to obtain jobs servicing those companies. To that end, the limited partnership agreement, or "LPA," vested **exclusive** authority in its General Partner, Onset, to locate, identify, analyze and cause the Partnership to invest in securities that Onset—in its **sole** discretion—determined to be in the best interest of the Partnership. The Pension Fund invested $30 million into the Partnership for Onset to invest as Onset saw fit under the LPA.

Defendants—an investment consulting firm and one of its managing principals—were never parties to the LPA or the Partnership. Defendants had a consulting agreement with the Plaintiffs only, where Defendants agreed to "oversee" a "Program Manager who [would] have investment discretion" over an Infrastructure Investment Program. While Plaintiffs *could have* chosen an investment structure that enabled Defendants to oversee investments and recommend changes in the investment manager as contemplated under the consulting agreement, Plaintiffs *instead* chose the LPA structure for their infrastructure investing. That structure granted Onset **exclusive** authority and **sole** discretion over investments, leaving no authorization for Defendants to "oversee" or "supervise" Onset's conduct. Thus, the "Infrastructure Investment Program"— as described in the consulting agreement—never fully came to be. At most, Defendants could—and did—review Onset's portrayal of the Partnership's portfolio and report that to the Board (among other responsibilities).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Nevertheless, in this lawsuit Plaintiffs seek to invoke the fiduciary standards of the Employment Retirement Income Security Act of 1974 ("ERISA") and state law to blame Defendants for failing to uncover Onset's alleged fraud under the LPA. Plaintiffs' Complaint fails to state a claim.

*First*, Plaintiffs lack standing to sue under ERISA because the statute only allows *persons* who are fiduciaries, beneficiaries or participants of an ERISA plan to seek recovery for losses from a breach of fiduciary duty. Neither an ERISA plan itself, nor its collective board of trustees, fits that requirement.

*Second*, ERISA preempts all of Plaintiffs' state law claims because each claim bears on the ERISA-regulated relationship between an ERISA plan and its fiduciaries.

*Third*, ERISA's six-year statute of repose bars Plaintiffs' claim that Defendants allegedly imprudently vetted Onset before recommending it as a potential asset manager for the Pension Fund because that recommendation, per the Complaint, occurred over six years ago (and, as documents referenced in the Complaint demonstrate, it was *not* an imprudent recommendation).

*Finally*, the Complaint also fails because its claims are not *possible*, let alone plausible. Plaintiffs assert that Defendants imprudently supervised Onset's investing for the Partnership under the LPA. But the Complaint and judicially noticeable documents demonstrate that Defendants had no power to supervise Onset's conduct. On the contrary, the LPA empowered Onset with **exclusive** authority and **sole** discretion to invest for the Partnership, and it provided no ability for Defendants to "supervise," *i.e.*, direct, correct, or control Onset's conduct, beyond reviewing and reporting on what they learned from Onset about the Partnership's investment portfolio to the Board. Plaintiffs do not—and could not—allege Defendants failed to do that.

But even if Defendants *could have* "supervised" Onset, the Complaint alleges no facts permitting the inference that Defendants' supervision was

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

imprudent.  Instead, the Complaint describes Onset's alleged fraudulent behavior, without any context-specific allegations showing Defendants knew or could have known of any fraud.  Plaintiffs' allegations state only that Onset purposefully concealed the true value of the Partnership's investments, and that uncovering the truth required independent forensic analysis into the Partnership's investments that surpassed Defendants' limited mandate.

Absent ERISA standing, with their claims either preempted or time-barred, and facing judicially noticeable documents contradicting their threadbare conclusory allegations, Plaintiffs stand no chance of ever stating a claim against Defendants.  This Complaint should be dismissed with prejudice.

## BACKGROUND[1]

### A.    Pursuant to Their Agreement, Defendants Assisted the Pension Fund with an Infrastructure Investment Program by Developing an Infrastructure Investment Policy.

Pension Consulting Alliance, Inc., or "PCA,"[2] was an independent investment consulting firm that provided "investment advisory services to pension plans and institutional investors. . . ."  Compl. Ex. A at 2.  Defendant Judy Chambers (together with PCA, "Defendants") served as a Managing Director of PCA.  Compl. ¶18; *Id.* Ex. A.  Plaintiff Construction Laborers Pension Trust for Southern California (the "Pension Fund") is a multiemployer pension fund within the meaning of ERISA Section 3(37), administered by the Pension Fund's Board of Trustees.  Compl. ¶¶15-16.  *See also* Ex. 3[3]

---

[1] Pursuant to Fed. R. Civ. P. 12(b)(6), solely for purposes of this Motion to Dismiss, this Memorandum accepts the Complaint's well-pleaded allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[2] Defendant Meketa Investment Group, Inc. is the successor to PCA.  Compl. ¶18

[3] Exhibit numbers correspond to the accompanying Request for Judicial Notice.

3

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1     In November 2014, Chambers executed a "Consulting Agreement" with the
2  Pension Fund on behalf of PCA.  Compl. ¶26; *Id.* Ex. A.  PCA agreed to "assist"
3  the Pension Fund "in developing a unique investment platform that captures
4  objectives of the [Pension Fund]," including "investing in various infrastructure-
5  building projects" in California, *i.e.*, an "Infrastructure Investment Program" (the
6  "Program").  Compl. ¶¶23, 29.

7     In keeping with the Consulting Agreement, in late 2014, Defendants worked
8  with Plaintiffs to draft an Infrastructure Investment Policy (the "Policy") for the
9  Program.  Compl. ¶31.  The Board adopted the Policy in December 2014, and the
10 Policy satisfied many of the tasks Defendants had promised to undertake under the
11 Consulting Agreement.  *See* Compl. 33; *Id*. Ex. A; *Id.* Ex. B.  Specifically, the
12 Consulting Agreement said, "implement responsible contracting policies," and so
13 the Policy included a section on "Responsible Contracting Policies."  Compl. Ex.
14 A at 3; *Id*. Ex. B at 8.  The Consulting Agreement directed Defendants to "propose
15 benchmark and risk measures"; therefore, the Policy included proposed
16 "benchmark[s]" and "[p]otential risks associated with" the Program.  *Id*. Ex. A at
17 3; *Id.* Ex. B at 4, 7.  And—because the Consulting Agreement sought assessments
18 of "risk profiles of various sub-asset types" and "portfolio target allocation and
19 ranges," in addition to advising on "investment structuring," "commitment
20 pacing," and "portfolio construction"—the Policy included: a chart of
21 "Infrastructure Portfolio Sub-Classifications," with descriptions of sub-asset
22 characteristics and their "risk[s]"; an "asset allocation target and range for the
23 Portfolio"; and counsel on "[w]ays of [i]nvesting," "[p]ortfolio [d]evelopment,"
24 "[p]ortfolio [l]everage," "[i]nvestment [l]ife [c]ycle," the "preferred investments
25 for the Plan," and "[e]xit [s]trateg[ies]" for the investments.  Compl. Ex. A at 3; *Id.*
26 at 4-11.

27    The Policy concluded with direction that the "General Consultant or
28 Infrastructure Consultant, if retained, shall monitor the investment process for

4

compliance with [the Policy]."  Compl. Ex. B at 12.  The Policy does not name PCA or Chambers as either a "General Consultant or Infrastructure Consultant."  Compl. Ex. B.  Merrill Lynch, not Defendants, served as the Pension Fund's investment adviser until August 2019.  Compl. ¶69.  In August 2019, the Pension Fund replaced Merrill Lynch with a new investment adviser, NEPC, LLC.  *Id.*

Beyond drafting the Policy, under the Consulting Agreement the Defendants also undertook to "attend Board meeting[s] to review the [P]rogram," provide market research and education to the Board, inform the Board of key events that could impact the Program such as market changes, and provide copies of research and reviews regarding particular markets to the Board.  Compl. Ex. A at 3.

However, under the Consulting Agreement Defendants were not obligated to:  "perform comprehensive due diligence on potential investment opportunities" for the Program or "provide written recommendation for all managers [or investment] opportunities to be added to the infrastructure portfolio."  Compl. Ex. A at 3.

**B.    Defendants Identified Eight Potential Program Managers for the Program, Including Onset.**

Also under the Consulting Agreement, Defendants agreed to help the Pension Fund identify "potential Program Managers," to "oversee the Program Manager's strategy, investment selection process, deal pipeline and investment process," and conduct an "[a]nnual [p]ortfolio [r]eview and [m]onitoring."  Compl. Ex. A at 3.

As promised, on March 10, 2015, Defendants met with the Pension Fund and presented a summary of its due diligence on eight potential Program Managers.  Compl. ¶42; Ex. 4.  For each of the eight, Defendants provided the Pension Fund with the manager's background, investment approach, geographic focus, investment type, and sector focus.  *Id.*  At the close of the presentation, after reviewing each of the eight potential Program Managers, Defendants suggested

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

that the Pension Fund—and its investment adviser, Merrill Lynch—meet with Onset.  *Id.*  As the Presentation makes clear, Onset was the only potential Program Manager that had a California focus and would agree to limit the geographic focus of investments to California.  *Id.*

### C. The Pension Fund Created a Limited Partnership, Vesting Exclusive Authority and Sole Discretion over the Partnership's Investments and Investment Policy in Onset.

The Pension Fund never named Onset as a "Program Manager" of an "Infrastructure Investment Program" that Defendants would have authority to "oversee."  *See* Compl. ¶¶29, 49.  Instead, in January 2016, the Pension Fund executed a limited partnership agreement (the "LPA") with Onset, naming Onset as the "General Partner" of the Partnership.  Under the LPA, the Pension Fund agreed to invest $30 million in capital as the Partnership's sole "Limited Partner." Compl. ¶49; Ex. 1.

The LPA provided two objectives for the Partnership: (1) to generate returns by investing in infrastructure company securities; and (2) to create opportunities for the Pension Fund's beneficiaries "to obtain jobs providing labor, construction or other services" to those infrastructure companies.  *Id.* at §1.9.1.

To meet those objectives, the LPA vested *exclusive authority* and *sole discretion* in Onset to manage and operate the Partnership.  *Id.* at  §2.1.1. Specifically, the LPA provided:

> The **management and operation** of the Partnership **and the formulation of investment policy** shall be **vested exclusively** in the General Partner.  The General Partner shall, **in its sole discretion**, exercise those powers . . . on behalf and in the name of the Partnership as may be necessary and convenient for the purposes of the Partnership.

*Id.* (emphasis added).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

The LPA imposed a "general fiduciary duty standard" on Onset's conduct, defined by "Title 6 of the Delaware Act," that could not be "expanded, reduced or modified in any manner unless expressly set forth in [the LPA]." *Id.* The LPA also represented "the entire understanding of all the parties" to it and could "not be amended except by an instrument in writing executed by [the Pension Fund] and the General Partner," Onset. *Id.* §6.7.

Defendants were not a party to the LPA and had no authority under the LPA to oversee or supervise Onset's conduct as General Partner. Ex. 1. Nor did the LPA obligate Onset to comply with the Policy adopted by the Board in December 2014. *Id.*

The LPA with Onset outlasted the Consulting Agreement, as the Pension Fund terminated the Consulting Agreement in September 2020. Compl. ¶71. Onset served as General Partner of the Partnership from January 2016 to at least May 2021. Compl. ¶¶49, 72-74. While the Consulting Agreement was in force, Defendants reviewed Onset's portrayal of the Infrastructure Fund's portfolio and reported on that portfolio to the Board. Compl. ¶67. As explained, the Consulting Agreement did not require Defendants to "perform comprehensive due diligence on potential investment opportunities" for the Pension Fund or the Partnership. Compl. Ex. A at 3. Nor did it require Defendants to "provide written recommendation[s] for all managers [or investment] opportunities to be added to the infrastructure portfolio." Compl. Ex. A at 3.

In the Spring of 2020, "NEPC, now serving as the investment adviser for the Pension Fund, vetted [a Partnership] investment" and advised on its valuation. Compl. ¶¶69-70. Even though NEPC "was unable to find support for the valuation" of that investment, the Pension Fund did not remove Onset as General Partner for another year. Compl. ¶¶71-72.

In May 2021—eight months *after* the Pension Fund terminated the Consulting Agreement with Defendants—Onset asked the Pension Fund to

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

contribute an additional $11 million to use for Partnership investing.  Compl. ¶72. The Complaint alleges that there was a "tension" between Onset's request for "so much new funding" and Onset's claims that the Partnership was worth $54.9 million, leading the Pension Fund to hire "additional professional advisors" to "independently review the financial condition of the" Partnership.  *Id.* at ¶¶72-74. An "independent valuation" of the Partnership determined that its worth was at least $35 million *less* than what Onset had reported.  Compl. ¶75.  This "ultimately lead[] the Pension Fund to replace Onset as general partner."  Compl. ¶74.

### D.   Plaintiffs' Allegations

Plaintiffs' Complaint asserts four counts:

- Count I, breach of fiduciary duty under ERISA, alleges that Defendants failed to employ a prudent process to identify potential Infrastructure Fund managers, supervise Onset, and ensure Onset complied with the Policy.  Compl. ¶¶76-88.

- Count II, breach of contract, alleges that Defendant Meketa breached the Consulting Agreement by failing to oversee Onset and to alert the Pension Fund that Onset was not complying with the Policy.  *Id.* ¶¶89-99.

- Counts III, common law breach of fiduciary duty, and IV, negligence/gross negligence, each allege that Defendants breached the duties of loyalty or care, by failing to: oversee Onset, propose benchmark and risk measures; assist with portfolio target allocation and ranges; appropriately advise on investment structuring and commitment pacing;  advise on portfolio construction; and "adequately identify, interview and conduct due diligence on Onset or other prospective managers for the Infrastructure Fund."  *Id.* ¶¶100-114.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

As explained below, each of these Counts fails to state a plausible claim for relief, and all should be dismissed as a matter of law.

## LEGAL STANDARD

Rule 12(b)(6) requires dismissal of any complaint that fails to allege "a plausible entitlement to relief." *Twombly*, 550 U.S. at 559.  Although factual allegations are accepted as true at this stage, legal conclusions are not, *id.* at 555, nor are allegations that are contradicted by judicially noticeable documents or the documents referenced in the complaint.[4]  *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001);*Tobias v. Nvidia Corp.*, No. 20-CV-06081-LHK, 2021 U.S. Dist. LEXIS 173539, at *16 (N.D. Cal. Sept. 13, 2021).  A plaintiff cannot get past a motion to dismiss with only "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action," *Twombly*, 550 U.S. at 555 (citation omitted); or if it demonstrates only a "mere possibility of misconduct"; or where there is an "obvious alternative explanation" for the challenged conduct.  *Ashcroft v. Iqbal*, 556 US 679, 682 (2009) (quoting *Twombly*, 550 U.S. at 567).   Especially for ERISA cases, a motion to dismiss serves as an "important mechanism for weeding out meritless claims," and "requires careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently."  *In re Disney ERISA Litig.*, No. CV 16-2251 PA (JCx), 2017 U.S. Dist. LEXIS 61202, at *9 (C.D. Cal. Apr. 21, 2017) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)).

---

[4] Contemporaneous with the Motion to Dismiss, Defendants have filed a Request for Judicial Notice.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1
2

## <u>ARGUMENT</u>

## I.     <u>PLAINTIFFS LACK STANDING TO SUE UNDER ERISA.</u>

3          ERISA limits the categories of plaintiffs who may sue to recover a plan's

4    losses after an ERISA fiduciary's breach.  29 U.S.C. §1109; §1132(a)(2).  Only a

5    participant, beneficiary, or fiduciary of a plan can initiate such an action.  29

6    U.S.C. § 1132(a)(2).  *See also Steen v. John Hancock Life Ins. Co.,* 106 F.3d 904,

7    917 (9th Cir. 1997) ("[Section 502(a)(2) of ERISA] limits eligibility for civil

8    enforcement of ERISA to plan participants, beneficiaries, and fiduciaries.").

9          Plaintiff Pension Fund fits none of these categories.  It is not a participant, a

10   fiduciary or a beneficiary of an ERISA plan, and thus it has no standing.  *See Local*

11   *159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 981-83 (9th Cir. 1999) (holding a

12   trust fund that is not a fiduciary, a participant or a beneficiary of a plan has no

13   standing to sue for breach of fiduciary duty under ERISA); *see also Pressroom*

14   *Unions-Printers League Income Sec. Fund v. Continental Assur. Co.*, 700 F.2d

15   889, 893 (2d Cir. 1983) (denying pension fund standing to sue under ERISA for

16   breach of fiduciary duty).

17         Moreover, the Pension Fund is plainly an ERISA-covered plan.  As the

18   Ninth Circuit has stated, an ERISA "[p]lan itself does not have standing to sue" for

19   breach of fiduciary duty.[5]  *Steen*, 106 F.3d at 917;  *see also Nor-Cal Plumbing,*

20   *Inc.*, 185 F.3d at 983 ("[The Ninth Circuit] ha[s] previously held that an ERISA

21   plan itself does not have standing to sue under § 502(a) of ERISA because it is not

22   a plan participant, beneficiary or fiduciary."); *Bowles v. Reade*, 198 F.3d 752, 761

23   (9th Cir. 1999) ("ERISA plans[] are not fiduciaries entitled to sue under ERISA").

24         The Board lacks ERISA standing too.  The Board is not a participant or

25   beneficiary, and, importantly, the Complaint never expressly alleges that the

26
27
28

---

[5] *See* Compl. ¶¶15-16; Ex. 3 (naming "Construction Laborers Pension Trust Fund for Southern California" as the "Name of plan").

10

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1   Board—as a collective body—is a fiduciary of the Plan.  *See, e.g.*, Compl. ¶¶15-

2   16.  But assuming that is what Plaintiffs meant to allege, the relevant "fiduciaries"

3   would be the individual trustees themselves as *persons*, not the Board as a

4   collective.  *See* 29 U.S.C. §1002 (stating that "a *person* is a fiduciary with respect

5   to a plan to the extent . . . he exercises any discretionary authority or discretionary

6   control respecting managing of such a plan") (emphasis added).  Since the Board is

7   not a "person" as defined in ERISA § 3(9), it is "appropriate for the Trustees to be

8   named individually in the caption and for internal references within the complaint

9   to specify the Trustees are actually the plaintiffs."  *Boilermaker-Blacksmith Nat'l*

10  *Pension Tr. V. Reed*, Nos. 02-10109-7, 02-6028, 2004 Bankr. LEXIS 1429, at *6

11  (Bankr. D. Kan. Sept. 14, 2004) (granting motion to amend the ERISA complaint

12  to change the complaint from the "collective 'Trustees'" to include the Trustees'

13  "personal, individual names [] in the complaint"); *see also Trs. of Hotel Emps. &*

14  *Rest. Emps. Int'l Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp.

15  1180, 1184-85 (N.D. Ill. 1990) (same).

16        The Complaint names the "Board of Trustees" for the Pension Fund as a

17  Plaintiff, but the "personal, individual names" of the Trustees—the would-be

18  fiduciaries in this case—remain unaccounted for.  *See Boilermaker*, 2004 Bankr.

19  LEXIS 1429, at *6.  Without a proper party named, Count I may not stand, and

20  should be dismissed.[6]

21  ## II.   ERISA PREEMPTS PLAINTIFFS' STATE LAW CLAIMS.

22        ERISA packs a "powerful preemptive force."  *Cleghorn v. Blue Shield*, 408

23  F.3d 1222, 1225 (9th Cir. 2005); *Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095

24  (9th Cir. 1985) ("The ERISA preemptive provision is to be broadly construed.").

25

26

27  _____

28  [6] During the 11/10/23 conference pursuant to L.R. 7-3, undersigned counsel raised this standing issue with Plaintiffs' counsel.  *See* 11/17/23 Notice of Motion, filed herewith, at 1.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

It knocks out any state law claim that has a "'connection with' or a 'reference to' an ERISA governed benefit plan." *Wise v. Verizon Comms., Inc.*, 600 F. 3d 1180, 1190 (9th Cir. 2010); *see* 29 U.S.C. § 1144(a). Under the Ninth Circuit's "relationship test," a state law claim has a "connection with" an ERISA plan if it "bears on an ERISA-regulated relationship." *In re Out of Network Substance Use Disorder Claims Against Unitedhealthcare*, No. SACV 19-2075 JVS (DFMx), 2020 U.S. Dist. LEXIS 153773, at *12 (C.D. Cal. July 29, 2020) (quoting *Paulsen v. CNF, Inc.,* 559 F.3d 1061, 1082 (9th Cir. 2009), 1172 (9th Cir. 2004)). ERISA regulates the relationship between an ERISA plan and its fiduciaries, *see* 29 U.S.C. § 1104, and accordingly, when a state law claim encroaches on that relationship, ERISA preempts that claim. *Gen. Am. Life Ins. Co. v. Castonguay*, 984 F.2d 1518, 1522 (9th Cir. 1993) (holding that ERISA regulates the "trust-trustee" relationship where the trust is an ERISA plan, and the trustee is a plan fiduciary); *Wells Fargo Bank v. Bourns, Inc.*, 860 F. Supp. 709, 713 (N.D. Cal. 1994) (citing *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1467 (5th Cir. 1986) ("[A]ctions [are] often preempted by ERISA where they affect 'relations among the principal ERISA entities—the employer, the plan, the plan fiduciaries, and the beneficiaries. . .").

Plaintiffs allege that Defendants were ERISA fiduciaries of the Pension Fund, and each of Plaintiffs' state law claims complains of Defendants' alleged conduct toward the Pension Fund as ERISA fiduciaries. Compl. ¶2 ("PCA was an ERISA fiduciary"); *see also id.* ¶¶14, 78, 81, 83, 85, 86. Because each state law claim bears on the relationship between the Pension Fund and its ERISA fiduciary—*i.e.*, an ERISA-regulated relationship—ERISA preempts each.

Moreover, keeping state law Counts III and IV alive would force this Court to apply state law fiduciary standards to ERISA fiduciaries. *See* Compl. ¶¶102, 111. ERISA does not allow that. *See Cox v. Eichler*, 765 F. Supp. 601, 606-07 (N.D. Cal. 1990) ("[S]tate law standards of care as applied to the conduct of

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

ERISA fiduciaries are preempted.").  For example, in *Cox*, trustees of an ERISA pension plan sued the plan's fiduciaries, alleging state breach of fiduciary duty and breach of contract claims for imprudently investing the plan's funds.  *Cox*, 765 F. Supp. at 604.  ERISA preempts those claims, said the court, because they would require "[t]he application of a state law standard of care for fiduciaries to an ERISA fiduciary," which "would be an attempt to indirectly regulate the conduct of ERISA fiduciaries" through state law.  *Id.* at 606.

Counts III (breach of fiduciary duty) and IV (negligence/gross negligence) insist that Defendants owed state law duties of "loyalty" and "care" to the Pension Fund.  Compl. ¶¶102, 111.  But "ERISA establishes a standard of care for ERISA fiduciaries," *Cox*, 765 F. Supp. at 606.  Letting Plaintiffs enforce state law standards on ERISA fiduciaries "risk[s] the imposition of inconsistent standards and remedies" on the administration of ERISA plans.  *Id.  See also Retired Indep. Guards Ass'n of Nev. v. Bd. of Trs.*, No. 2:08-cv-00849-RLH-LRL, 2009 U.S. Dist. LEXIS 149466, at *21 (D. Nev. May 29, 2009) ("ERISA is 'expressly concerned with fiduciary responsibility, and preempts claims based on fiduciary duty. . . .").

Finally, ERISA also preempts state law claims that "require[] examination and interpretation of the ERISA plan documents."  *North Am. Tool & Die v. Blue Cross*, No. 92-16903, 1994 U.S. App. LEXIS 10351, at *2 (9th Cir. Apr. 28, 1994).  Count II (breach of contract) would require an examination and interpretation of an ERISA plan document because Count II asserts that the Consulting Agreement required Defendants to "ensure [Onset's] compliance" with the Policy, an alleged Plan document.  *See North Am. Tool*, 1994 U.S. App. LEXIS 10351, at *2;  Compl. ¶¶96, 83.  For this Court to determine Count II's merit—and, as explained below, it has none—the Court must review the Policy.  The contours of an ERISA plan document are a subject for ERISA, not state law.  *See Korman v. ILWU-PMA Claims Office*, No. 2:18-cv-07516-SVW-JPR, 2019 U.S. Dist. LEXIS 58646, at *45 (C.D. Cal. Mar. 19, 2019) ("To recover under a contract theory . . .

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

would require the Court to analyze the terms of the ERISA Plan[.] . . . Therefore, Plaintiff's state law claim[] for breach of contract. . . [is] clearly pre-empted by ERISA").

Other plaintiffs have tried and failed—as Plaintiffs do here—to "obtain relief by dressing up an ERISA[] claim in the garb of a state law tort." *Dishman v. UNUM Life Ins. Co. of Am.*, 269 F.3d 974, 983 (9th Cir. 2001). That is not permitted under ERISA's preemption provision, and so Plaintiffs' state law claims—Counts II, III and IV—must be dismissed.

## III. ERISA TIME-BARS PLAINTIFFS' VETTING CLAIM.

### A. All Conduct Related to the Alleged Imprudent Vetting Occurred Over Six Years Ago.

ERISA imposes a six-year statute of repose on plaintiffs. 29 U.S.C. § 1113. Plaintiffs must "commence [their ERISA] action within six years from the date of the last transaction giving rise to [the] claim, unless [they] can demonstrate 'fraud or concealment.'" *Albin v. Reynolds Fin. Grp.*, No. 96-55816, 1997 U.S. App. LEXIS 28885, at *5 (9th Cir. Oct. 17, 1997).

Whenever the Complaint asserts that Defendants breached their fiduciary duties by failing "to identify, interview, and conduct due diligence on prospective Infrastructure Fund managers," it describes an alleged breach that occurred more than six years ago.[7] *See* Compl. ¶¶5, 12, 82. Per the Complaint's timeline, Defendants agreed to vet asset manager options in November 2014, Defendants presented the options in March 2015, and Plaintiffs executed the LPA with Onset

---

[7] While the parties executed judicially-noticeable tolling agreements, those agreements do not cover the period six or more years prior to March 2, 2022 (*i.e.*, March 2, 2016). *See* Defendants' Request for Judicial Notice at 6-8. Further, the Board is not a party to any of the tolling agreements, thus its claims are time-barred to the extent any of the alleged violations occurred outside the application limitations periods under ERISA or state law.

14

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

in January 2016.  Compl. ¶¶26, 42-47, 49.  Thus, by Plaintiffs' own admission, whatever actions—or inactions—Defendants took to "identify, interview, and conduct due diligence on prospective" asset managers necessarily occurred no later than January 2016, when Plaintiffs chose to execute the LPA with Onset.  Compl. ¶49.  ERISA §413 thus "create[s] 'an absolute bar on [Defendants'] temporal liability,'" and Plaintiffs' imprudent vetting claims are simply too late.  *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 507 (2017).[8]

### B.  Plaintiffs Fail to Allege Any Imprudent Conduct Related to Defendants' Vetting of Potential Asset Managers.

Even assuming, *arguendo*, that Plaintiffs timely filed the Complaint, the imprudent vetting claim still fails because the Complaint points to nothing imprudent about Defendants' process to vet prospective managers.  On the contrary, the Complaint and the March 2015 presentation it references confirm that Defendants "reviewed eight prospective investment managers," Compl. ¶46, presented those eight options to the Fund, *id.*, and provided the Fund information on each options' background, investment approach and key parameters like geographic focus, investment type and sector.  Ex. 4.  As with Plaintiffs' other insufficient duty of prudence claims—explained below—Plaintiffs' mere "naked assertions" of imprudent vetting "unaccompanied by 'further factual enhancement'" could not state a claim, even if they were timely (and they are not).

---

[8] No "fraud or concealment" exception applies here. 29 U.S.C. §1113.  In the case of "fraud or concealment," ERISA §413 permits plaintiffs to file within six years of the "date of discovery of the breach or violation." However, that exception "only applies when a *defendant*" takes "steps to hide its breach of fiduciary duty." *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1052, 1057 (9th Cir. 2020) (emphasis added) (no "fraud or concealment" exception applies, absent evidence that the defendant "knowingly [made] false misrepresentations with the intent to defraud"). Plaintiffs assert that Onset committed fraud, *not* Defendants. *See* Compl. ¶¶8, 9, 55, 57-65, 67.

15

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

*Wise*, 600 F.3d at 1189 (quoting *Twombly*, 550 U.S. at 557). *See also infra* Section IV.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF THE DUTY OF PRUDENCE.

ERISA § 404 requires plan fiduciaries to act prudently, *i.e.*, with "care, skill, prudence, and diligence under the circumstances then prevailing." 29 U.S.C. § 1104(a). The duty of prudence is a "context specific" standard, *Bracalente v. Cisco Sys.*, No. 5:22-cv-04417-EJD, 2023 U.S. Dist. LEXIS 140678, at *9 (N.D. Cal. Aug. 11, 2023) (quoting *Fifth Third Bancorp*, 573 U.S. at 425), and a plaintiff—unhappy with a fiduciary's decision—may not simply declare that decision imprudent and drag the fiduciary through ERISA litigation's "costly" discovery. *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt*, 712 F.3d 705, 719 (2d Cir. 2013) [hereinafter "*St. Vincent*"]. To the contrary, the plaintiff must allege either "direct allegations of the fiduciary's 'knowledge, methods, or investigations at the relevant times,'" *or* "circumstantial factual allegations [from which the Court] may reasonably 'infer from what is alleged that the process was flawed.'" *Bracalente*, 2023 U.S. Dist. LEXIS 140678, at *9 (quoting *St. Vincent*, 712 F.3d at 718).

Count I's ERISA duty of prudence claim asserts that Defendants were required to "supervise" or "oversee" Onset's conduct, and that they did so imprudently. Compl. ¶¶41, 52-56, 58, 60, 67. But the Complaint's conclusory imprudence allegations are contradicted by documents referenced in the Complaint, judicially noticeable documents, and sometimes even the Complaint's own allegations. Count I fails to state a claim.

16

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

### A.   Documents Referenced in the Complaint and Judicially Noticeable Documents Confirm that Defendants Had No Authority to Supervise Onset.

Courts must accept all factual allegations in a complaint *except* those "contradicted by documents referred to in the complaint" or judicially noticeable facts.[9] *Wright*, 360 F.3d at 1096; *Tobias*, 2021 U.S. Dist. LEXIS 173539, at *16 ("[A] court need not accept as true allegations contradicted by judicially noticeable facts.").

For example, this Court need not accept the Complaint's conclusory assertion that Defendants were obligated to "supervise" Onset's conduct because the Complaint and judicially noticeable documents refute that assertion. Defendants agreed to "oversee the Program Manager[]" with "investment discretion" of the "Infrastructure Investment Program." Compl. Ex. A at 3. But Onset was never named as a "Program Manager" of an "Infrastructure Investment Program" that Defendants were empowered to "oversee," and Plaintiffs do not and cannot allege otherwise. Compl. ¶49. Instead, as the Complaint explains, and the LPA confirms, the Pension Fund and Onset "created a limited partner entity," naming Onset as the Partnership's General Partner, and vesting in Onset the "exclusive[]" power over the "management and operation of the Partnership and the formulation of [the] investment policy" in its "sole discretion." *Id.*; Ex. 1 at §2.1.1. That structure freed Onset from any obligation to submit to Defendants' "supervision" and limited what Defendants could do to "oversee" Onset. It blocked Defendants from any supervision of—*i.e.*, direction, correction or control over—"Onset's strategy, investment selection process, deal pipeline and

---

[9] As explained in Defendants' Request for Judicial Notice, Plaintiffs attached the LPA with Onset to their publicly filed complaint against Onset. "[P]ublicly filed documents are proper subjects of judicial notice." *Tobias*, 2021 U.S. Dist. LEXIS 173539, at *13.

17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

investment process."  Compl. ¶¶105,112.  With respect to Onset's conduct, the LPA structure limited Defendants to reviewing Onset's presentations on the Partnership's portfolio, and then reporting on those presentations to the Board, which Plaintiffs concede Defendants did.  *See* Compl. ¶67.  Nothing in the LPA prohibited the Pension Fund from establishing a Program consistent with the Consulting Agreement, *i.e.*, by appointing a Program Manager with investment discretion but required to submit to Defendants' oversight.  As the Complaint alleges and the LPA confirms, however, Plaintiffs chose not to do that with Onset. Compl. ¶49.  This lawsuit tries, but fails, to fit the square peg of the LPA into the round hole of the Consulting Agreement.

The Complaint also (nakedly) asserts that Defendants should have "ensure[d] [Onset's] compliance with [the Policy]."[10]  Compl. ¶41.  But again, Plaintiffs' LPA with Onset eliminated any power Defendants might have had under the Consulting Agreement to ensure Onset's compliance with anything, including the Policy.  Compl. ¶49; *id.* Ex. A at 3.

And, while the Complaint alleges that Defendants were beholden to the Policy as a plan document, Onset undeniably was not.  Compl. ¶¶38, 39, 41; Ex. 1 at §2.1.1.  Nowhere does the LPA require Onset to comply with the Policy adopted by the Board.  Instead, the LPA granted Onset "exclusive[]" power over "the formulation of investment policy" for the Partnership.  Ex. 1 at §2.1.1.  An

---

[10] In fact, the Policy only required the "General Consultant or Infrastructure Consultant, *if retained*" to "monitor the investment process for compliance with [the Policy]."  Compl. Ex. A at 12 (emphasis added).  Nothing in the Policy names Defendants as the intended General Consultant or Infrastructure Consultant. Rather, the Complaint identifies Merrill Lynch as the Pension Fund's "investment adviser," putting Merrill Lynch—not defendants—in the best position to monitor investments made with Pension Fund money.  Compl. ¶69.  As the Complaint alleges, in 2020, the Pension Fund's new investment adviser, NEPC, vetted at least one of the Partnership's planned investments.  Compl. ¶70.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

investment policy created by any party *other* than Onset—like the Infrastructure Investment Policy—could not constrain Onset when it commanded the power to form its own. *Id.*  Nor could any other plan documents—or indeed ERISA standards at all—govern the relationship between the Pension Fund and Onset. *Id.* Instead, the LPA bound Onset to a "general fiduciary duty standard" under Delaware law, and expressly prohibited anyone from "expand[ing], reduc[ing] or modif[ying]" that standard "in any manner."[11]  *Id.*

As the Second Circuit recognized, whether a complaint states a plausible claim is a matter of "common sense," and common-sense requires the conclusion that Defendants had no responsibility for ensuring Onset's compliance with standards to which Onset had no obligation to adhere and that Defendants had no power to enforce. *St. Vincent*, 712 F.3d at 718 (quoting *Ashcroft*, 556 U.S. at 679).

## B. The Complaint Includes No Facts to Demonstrate Imprudent Conduct by Defendants.

The Complaint also offers no "context specific" facts about Defendants' alleged "supervision" of Onset to conclude that it was imprudent. *Bracalente*, 2023 U.S. Dist. LEXIS 140678, at *9 (quoting *Fifth Third Bancorp*, 573 U.S. at 425).  The Complaint makes some conclusory assertions that Defendants failed to "alert[] the Pension Fund," failed to "properly monitor[] Onset," "took no steps to correct" Onset, failed to "exercis[e] adequate oversight over Onset," and "provided no meaningful oversight" over Onset.  *See* Compl. ¶¶52-56, 58, 60, 67.[12]  But

---

[11] Meanwhile, in state court, Plaintiff Pension Fund has sued Onset for, among other claims, breach of fiduciary duty under Delaware law for fraudulent conduct identical to Onset's alleged actions in this case.  Any mention of ERISA is conspicuously absent from Plaintiff's complaint in that suit.  *See generally* Ex. 1.

[12] Context is especially important here because exactly *what* methods could Defendants have used to "properly monitor" or "correct" or "question" or

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1  those feeble recitations are not "direct allegations" of Defendants' "knowledge,
2  methods, or investigation," and thus cannot defeat a motion to dismiss.  *St.*
3  *Vincent*, 712 F.3d at 718.

4       With no "direct allegations," the Complaint at least should have provided
5  "circumstantial factual allegations" to permit a reasonable inference of
6  imprudence.  *Bracalente*, 2023 U.S. Dist. LEXIS 140678, at *9; *St. Vincent*, 712
7  F.3d at 718.  It did not.  Distilled, the Complaint essentially says that Onset's
8  conduct lost the Pension Fund's money, and therefore Defendants' supervision of
9  Onset was imprudent.  *See, e.g.*, Compl. ¶60 ("Onset's fraud was only possible
10  because Defendants abandoned their fiduciary and contractual duties to review and
11  monitor Onset's investment program."); *see also id.* ¶¶5, 8, 12, 13, 52, 67.
12  Hindsight analysis like that does not demonstrate imprudence.  *See St. Vincent*, 712
13  F.3d at 718.

14       For example, in *St. Vincent*, the Second Circuit affirmed the dismissal of an
15  ERISA plan administrator's duty of prudence claim against plan fiduciaries
16  because the claim relied on hindsight.  *Id.*  The plan administrator argued that the
17  plan fiduciaries' selected investments suffered "large losses," and therefore, their
18  investment selection process must have been imprudent.  *Id.*  at 716-718.  Not so,
19  said the Second Circuit, because ERISA "requires prudence, not prescience."  *Id.*
20  at 716.  While the administrator alleged some general "warning signs" available to
21  the fiduciaries when they selected the investments, the administrator failed to
22  "connect the alleged 'warning signs' to any specific characteristics of the
23  securities" at issue.  *Id.* at 721-22.

24       There were *no* warning signs of Onset's alleged misconduct available to
25  Defendants—nor does the Complaint allege any.  Plaintiffs assert that Defendants
26
27  _____
28  "inquir[e]" into Onset's processes, when Onset *did not answer* to Defendants.  *See*
   *supra* Section IV. A.

20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

"never alerted the Pension Fund" to the "issues with . . . Onset's egregious valuation tactics," but they never allege any facts to demonstrate that Defendants even knew or could have known what those "egregious valuation tactics" were. *See* Compl. ¶67; *See, e.g.*, *Anderson v. Intel Corp. Inv. Policy Comm.*, No. 19-CV-04618-LHK, 2021 U.S. Dist. LEXIS 12496 (N.D. Cal. Jan. 21, 2021) (selecting risky investments was not imprudent where plaintiffs did not allege the fiduciaries "had access to information that demonstrated the risks" of the investments).

Moreover, according to the Complaint, Onset committed *fraud*.  Compl. ¶¶50-67, 72.  And though the Complaint speciously concludes that Onset's fraud "would have been obvious," the Complaint also alleges that Onset "hid," "manipulated" and "intentionally overstated" the status of the Partnership, and the Complaint acknowledges that the Pension Fund only figured that out eight months *after* it terminated Defendants, *after* it hired "additional professional advisors" to "independently review the financial condition of the Infrastructure Fund" and *after* those advisors conducted an "independent valuation of the portfolio."  Compl. ¶¶55, 58, 60-61,74-75.

And while Plaintiffs assert that an "independent[] review [of] the financial condition of the Infrastructure Fund" is "what Defendants should have been doing," nothing in the Complaint (or in law) establishes that Defendants had authority or responsibility under the Consulting Agreement or the LPA to conduct such an independent financial review of the Partnership.  Compl. ¶74.  Indeed, the Consulting Agreement expressly disclaims any obligation for Defendants to "perform comprehensive due diligence" or "provide written recommendation[s]" on the underlying investments or managers.  Compl. Ex. A at 3.  And nowhere does the Complaint explain how Defendants were supposed to independently review the underlying financial condition of a Limited Partnership to which they were not a party, to which they had no independent access and over which they had no authority.  *See supra* Section IV.A.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Moreover, the Complaint itself confirms that not even the Pension Fund's investment advisers—Merrill Lynch and NEPC, the companies *actually* hired to vet the Pension Fund's investments—could have uncovered Onset's alleged fraud. NEPC, for example, was retained for almost two years—including eight months without Defendants—before Onset's alleged misconduct was revealed. Compl. ¶¶69-70. Though NEPC vetted at least one of Onset's investments for the Pension Fund and disagreed with Onset's valuation of that investment, NEPC *still* failed to discover any fraud. Compl. ¶¶69-70.

In fact, according to the Complaint, the curtain only lifted on Onset's alleged scheme in May 2021—over eight months *after* the Pension Fund terminated Defendants—when Onset requested an additional $11 million from the Pension Fund for the Partnership to invest. Compl. ¶71-72. The "tension" between that request and Onset's "portrait" of the Partnership's success led the Pension Fund to hire additional professional advisors—beyond even NEPC—to conduct an independent review of the Partnership's financial condition, which "ultimately lead[] the Pension Fund to replace Onset as general partner." Compl. ¶¶73-74. That long road to the alleged truth undermines any assertion that "at the relevant time," Defendants "reasonably could have predicted" Onset's fraud or "the outcome that followed" for the Pension Fund. *St. Vincent*, 712 F.3d at 717-718.

## C. The Complaint and its Attachments Demonstrate that Defendants Fulfilled their Responsibilities Under the Consulting Agreement.

With no factual leg to stand on, the Complaint's prudence claim collapses, leaving the inescapable conclusion that Defendants fulfilled their duties to the Pension Fund. Defendants agreed to "assist" the Pension Fund with its Infrastructure Investment Program. Though the Complaint races to say that assistance was inadequate, *see* Compl. ¶¶105,112, it trips over its own attached documents. *See* Compl. Ex. A; Ex. B. For example, the Policy, which Defendants helped draft and the Board adopted, delivered to the Pension Fund the key support

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1  that Defendants had agreed to provide, including strategies, goals, policies,

2  procedures, processes, risk profiles, benchmarks, portfolio target allocation,

3  ranges, and advice on investment structuring, commitment pacing, and portfolio

4  construction.  *See* Compl. Ex. A.  Defendants also undertook to attend Board

5  meetings, educate the Board, provide the Board with market research, and notify

6  the Board of key market changes.  Compl. Ex. A .  Plaintiffs do not—nor could

7  they—allege that Defendants failed these responsibilities.

8         In the end, it was Plaintiffs—not Defendants—who moved away from the

9  Consulting Agreement and the Policy and decided instead to grant Onset exclusive

10  authority and sole discretion over the Infrastructure Fund and the Pension Fund's

11  $30 million investment.  Plaintiffs cannot blame Defendants for that, especially

12  when the Complaint, the documents it references, and judicially noticeable

13  documents confirm that Defendants continued to perform their applicable duties

14  under the Consulting Agreement.

15  **V.     THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.**

16         Even though Plaintiffs have filed only one Complaint, this Court may still

17  dismiss it with prejudice if further amendment would be futile.  *See Kopelev v.*

18  *Boeing Co.*, No. 21-55937, 2022 U.S. App. LEXIS 34042, at *2 (9th Cir. Dec. 9,

19  2022) ("Dismissal with prejudice was not an abuse of discretion because any

20  amendment of the ERISA claims would have been futile.").

21         This Complaint is fraught with defects—lack of standing, preempted claims,

22  time-barred allegations—only one of which (standing) is possibly curable on a next

23  go-round (and even if cured, would not salvage the Complaint).  *See supra*

24  Sections I, II, II.  Worse, no amended set of facts could transform Onset's alleged

25  misconduct—while operating within its exclusive authority and sole discretion,

26  with no obligation to submit to Defendants' oversight—into Defendants' fault.  *See*

27  *supra* Section IV.  As demonstrated by Plaintiffs' own eight-count state court

28  lawsuit against Onset and the over 40 paragraphs they devote to detailing Onset's

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

delinquency in this action, Plaintiffs' quarrel is with Onset.  *See* Compl. ¶¶5-10, 12-13, 43-47, 49, 50, 52, 54-67, 69-70, 72-75, 81, 93, 95, 96, 98, 105, 106, 112. *See also* Ex. 1.  Plaintiffs have no legal basis for dragging Defendants into the dispute and leave to amend should be denied.

## **CONCLUSION**

The Complaint, the documents it references, and judicially noticeable documents confirm that Plaintiffs have no standing to sue Defendants under ERISA, and otherwise fail to state a claim.  The Complaint should be dismissed with prejudice.


Dated:  November 17, 2023

*/s/  Robyn C. Crowther*
Robyn Crowther (SBN 193840)
**STEPTOE & JOHNSON LLP**
633 West 5th Street, Suite 1900
Los Angeles, CA 90071

Diana K. Lloyd (*Pro hac vice pending*)
Caroline Trusty (*Pro hac vice pending*)
Alexander L. Bevans (*Pro hac vice pending*)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA  02110

Eric G. Serron (*Pro hac vice pending*)
**STEPTOE & JOHNSON LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036

*Attorneys for Defendants*
MEKETA INVESTMENT GROUP, INC. and JUDY CHAMBERS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

1

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1</u>

The undersigned, counsel of record for Defendant Meketa Investment Group, Inc. and Defendant Judy Chambers, certifies that this brief contains 6,987 words, which complies with the word limit of L.R. 11-6.1.

Dated:  November 17, 2023

*/s/ Robyn C. Crowther*
Robyn Crowther

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT**