F:\GP\2840.017 - SRZ - Meketa\Pleadings\2840.017.opp.mtd.(c.i.f.).docx

1

DANIELS, FINE, ISRAEL,
SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807
Paul R. Fine, State Bar No. 053514
*fine@dfis-law.com*
Geronimo Perez, State Bar No. 223657
*gperez@dfis-law.com*

OF COUNSEL:
SCHULTE ROTH & ZABEL LLP
919 THIRD AVENUE
NEW YORK, NY 10022
TELEPHONE: 212.756.2000
Ronald E. Richman (Admitted *PHV*)
*ronald.richman@srz.com*
William H. Gussman, Jr (Admitted *PHV*)
*bill.gussman@srz.com*
Frank W. Olander (Admitted PHV)
*frank.olander@srz.com*
Andrew B. Lowy (Admitted *PHV*)
*andrew.lowy@srz.com*

Attorneys For Plaintiffs

CONSTRUCTION LABORERS
PENSION TRUST FOR SOUTHERN
CALIFORNIA, and JON PRECIADO,
SERGIO RASCON, ADRIAN
ESPARZA, ALEX ARTIAGA,
MICHAEL DEA, HERTZ RAMIREZ,
PETER SANTILLAN, JEROME DI
PADOVA, CATHERINE
MONCADA, ALAN LUDWIG, JEFF
STEWART, LANCE BOYER, BILL
BOYD, and JOHN COOPER, as
TRUSTEES OF THE
CONSTRUCTION LABORERS
PENSION TRUST FOR SOUTHERN
CALIFORNIA, on behalf of the
Construction Laborers Pension Plan for
Southern California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

1

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' AMENDED COMPLAINT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA and
the BOARD OF TRUSTEES FOR THE
CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA each
on behalf of the Construction Laborers Pension
Plan for Southern California,

        Plaintiffs,

vs.

MEKETA INVESTMENT GROUP, INC. and
JUDY CHAMBERS,

        Defendants.

Case No. 2:23-cv-07726-CAS-PVC

MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT

**Hearing Information**
Judge:  Christina A. Snyder
Hearing Date:  March 18, 2024
Hearing Time:  10:00 a.m.
Courtroom:  8D

2

F:\GP\2840.017 - SRZ - Meketa\Pleadings\2840.017.opp.mtd.(c.i.f.).docx

# TABLE OF CONTENTS

Contents

I.     **PRELIMINARY STATEMENT** ................................................................. 1

II.    **FACTUAL BACKGROUND** ................................................................. 3

    A.   *The Pension Fund Retains Defendants as Investment Consultants and ERISA Fiduciaries* ................................................................. 3

    B.   *The Pension Fund Retains Onset on Defendants' Recommendation* ..................... 5

    C.   *Defendants Fail to Prudently Monitor Onset* ............................ 5

III.   **ARGUMENT** ................................................................. 7

IV.   Plaintiffs' Imprudent Vetting/Recommendation Claim is Timely ..................... 7

V.   The Complaint States a Claim For Breach of Fiduciary Duties ..................... 11

    A.   *The Structure of the Infrastructure Fund Does Not Absolve Defendants of Their Duty to Monitor Onset* ................................................................. 12

    B.   *The Complaint Adequately Alleges That Defendants Acted Imprudently* ............. 15

VI.   The Pension Fund Has Standing to Sue Pursuant to Section 502(a)(2) of ERISA ........... 18

VII.  Plaintiffs' State Law Claims Are Pled in the Alternative ..................... 21

VIII.  Alternatively, the Court Should Grant Plaintiffs Leave to Amend ................... 22

IX.   **CONCLUSION** ................................................................. 23

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

### TABLE OF AUTHORITIES

**Cases**

*Anderson v. Intel Corp. Investment Policy Committee*, No. 19-CV-04618-LHK, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021) ................................................................................................... 17

*Asner v. SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018 (C.D. Cal. 2021) ........................... 7, 22

*Bazuaye v. INS*, 79 F.3d 118 (9th Cir. 1996) .............................................................................. 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 7

*Buccino v. Cont'l Assurance Co.*, 578 F. Supp. 1518 (S.D.N.Y. 1983) ......................................... 8

*Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116 (E.D. Cal. 2003) ............................... 22

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995) ...................................................................... 15

*Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982) .................................................................. 11

*Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043 (9th Cir. 2020) ......................................... 11

*Howard v. Shay*, 100 F.3d 1484 (9th Cir. 1996) ......................................................................... 11

*Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2018 WL 3372752 (C.D. Cal. July 9, 2018) ................................................................................................................. 17

*ILWU-PMA Welfare Plan Bd. of Trs. v. Conn. Gen. Life Ins. Co.*, No. C 15-02965 WHA, 2015 WL 9300519 (N.D. Cal. Dec. 22, 2015) ...................................................................... 22

*Local 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978 (9th Cir. 1999) .......................................... 19

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) .......................................................................... 22

*Pressroom Union-Printers League Income Security Fund v. Continental Assurance Co.*, 700 F.2d 889 (2d Cir. 1983). ..................................................................................................... 20

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ..................... 22

*Solis v. Couturier*, No. 2:08-cv-02732-RRB (GGH), 2009 WL 1748724 (E.D. Cal. June 19, 2009) ............................................................................................................................... 17

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ............................................... 7

*Steen v. John Hancock Mutual Life Insurance Co.,* 106 F.3d 904 (9th Cir. 1997) ...................... 19

*Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057 (N.D. Cal. 2017) .............................................. 15

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

*Tibble v. Edison Int'l*, 575 U.S. 523 (2015) ........................................................................ 8

*Tibble v. Edison Int'l*, 843 F.3d 1187 (9th Cir. 2016) .......................................................... 8

*United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117 (C.D. Cal. 2000) ................... 12

*Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004) ..................................... 14

Statutes

29 U.S.C. § 1104 .................................................................................................................. 11

29 U.S.C. § 1113 .................................................................................................................. 10

Fed R. Civ. P. 8 ................................................................................................................... 22

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

F:\GP\2840.017 - SRZ - Meketa\Pleadings\2840.017.opp.mtd.(c.i.f.).docx

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Construction Laborers Pension Trust for Southern California (the "Pension Fund") and Jon Preciado, Sergio Rascon, Adrian Esparza, Alex Artiaga, Michael Dea, Hertz Ramirez, Peter Santillan, Jerome Di Padova, Catherine Moncada, Alan Ludwig, Jeff Stewart, Lance Boyer, Bill Boyd, and John Cooper, as Trustees of the Construction Laborers Pension Trust for Southern California (the "Trustees"), each on behalf of the Construction Laborers Pension Plan for Southern California (the "Plan"), respectfully submit their Opposition to the Motion to Dismiss filed by Defendants Meketa Investment Group, Inc. ("Meketa") and Judy Chambers (the "Motion") (ECF No. 53).

## PRELIMINARY STATEMENT[1]

In this action, Plaintiffs seek redress for Defendants' serial breaches of their duties as fiduciaries under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which have caused substantial harm to the retirement savings of construction laborers in Southern California.  Defendants breached their fiduciary duties by, among other things, (i) advising the Pension Fund to enter into an inappropriate infrastructure investment program, (ii) failing to adequately vet potential managers for that investment program, (iii) recommending Onset Capital Partners, LLC ("Onset") as the manager of the infrastructure investment program, while failing to disclose critical information about Onset's formation, experience, and principals, and (iv) failing to prudently monitor Onset's strategy, investment selection process, deal pipeline, investment process, and compliance with the applicable investment policy (which Defendants drafted) despite expressly agreeing to do so.

In an attempt to evade liability, Defendants advance a panoply of arguments

---

[1]  Capitalized terms not otherwise defined have the meanings ascribed to them in the Amended Complaint ("Complaint" or "Compl.").

1

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

for dismissal under Federal Rule of Civil Procedure 12(b)(6).  None have any merit.

*First*, Defendants argue that Plaintiffs' claims for imprudent vetting of potential managers and recommendation of Onset are time-barred because those claims accrued no later than January 2016, more than six years before this action was commenced.  Defendants ignore the allegations in the Complaint that they continued to recommend Onset and to champion Onset and its performance to the Board for *years* after it was originally retained.  In fact, Defendants recommended that the Pension Fund invest additional funds with Onset as recently as 2020—just months before the Pension Fund terminated Defendants' services.  Those continuing breaches occurred well within the six-year limitations period.

*Second*, Defendants argue that they were somehow absolved of their fiduciary duties by virtue of the governing documents for the Infrastructure Fund (defined below).  That argument is belied by Defendants' own actions.  Defendants were actively involved in overseeing Onset's investment activities and regularly reported to the Pension Fund on the status of the Infrastructure Fund's investments.  Defendants plainly had the ability to exercise oversight—indeed, they were paid $75,000 per year to do so.  They failed to exercise that oversight in a prudent manner.

Moreover, if Defendants thought the structure of the Infrastructure Fund prevented them from exercising oversight over Onset, they had an obligation to so inform the Pension Fund, especially given that the Pension Fund was paying Defendants to monitor Onset.  Defendants never raised any such issue with the Pension Fund.

*Third*, contrary to Defendants' argument, the Complaint alleges that Defendants failed to prudently monitor Onset.  It includes detailed allegations that (i) Defendants knew (or should have known) that Onset was making investments in the Infrastructure Fund that violated the applicable investment policy but failed to

take any action or even disclose those violations to the Pension Fund, (ii) Defendants ignored numerous red flags that alerted, or should have alerted, them that Onset did not have the ability to serve as the general partner of the Infrastructure Fund and was engaging in misconduct to hide its failures.

*Fourth*, the Pension Fund, as a fiduciary of the Plan, has standing to sue pursuant to Section 502(a)(2) of ERISA and is therefore a proper plaintiff in this action.

*Fifth*, Plaintiffs' state law claims are not subject to dismissal because they were pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d)(2).

The Court should deny Defendants' Motion in its entirety.

## FACTUAL BACKGROUND

The Pension Fund is a Taft-Hartley pension fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act.  (Compl. ¶20.)  The Pension Fund is governed by the Agreement and Declaration of Trust Establishing the Construction Laborers Pension Trust for Southern California (as amended to March 1, 1991) (the "Trust Agreement").  (*See* Exhibit B.)  The Pension Fund, through its Board of Trustees (the "Board"), sponsors and administers the Plan.  (*Id.* ¶21.)  The Plan is a multiemployer pension plan within the meaning of Section 3(37) of ERISA.  (*Id.* ¶21.)  The individual plaintiffs are Trustees of the Pension Fund.  (*Id.* ¶22.)

### A.    *The Pension Fund Retains Defendants as Investment Consultants and ERISA Fiduciaries*

In mid-2014, the Pension Fund decided to diversify its portfolio by investing in infrastructure projects within the State of California.  (Compl. ¶29.)

In September 2014, Chambers traveled to El Monte, California to pitch PCA's consulting services to the Pension Fund.  (*Id.* ¶30.)  PCA touted its "years of experience providing advice and insight on infrastructure programs for leading

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

3

pension plan investors" and pitched a number of consulting services to the Pension Fund.  (*Id.*)  PCA's presentation stated that PCA, if retained, would "[s]erve as a fiduciary to the pension plan."  (*Id.*)

On November 14, 2014, the Pension Fund formally retained PCA to provide investment consulting services related to a potential Pension Fund investment in an infrastructure fund in which the Pension Fund would be the sole investor.  (*Id.* ¶31.) The agreement memorializing the terms of PCA's engagement (the "PCA Agreement") expressly provided that PCA "would contract as a fiduciary on behalf of the [Pension Fund]."  (*Id.* ¶32.)

In the PCA Agreement, PCA agreed, *inter alia*, to (1) assist the Pension Fund in developing an infrastructure investment program and (2) perform a program manager search and due diligence.  (*Id.* ¶¶34–36.)  Of relevance here, the PCA Agreement obligated PCA to (i) "identify, interview and conduct due diligence on potential Program Manager(s) who will have investment discretion"; (ii) "negotiate terms with the Program Manager on behalf of the [Pension Fund]"; and (iii) "oversee the Program Manager's strategy, investment selection process, deal pipeline and investment process."  (*Id.* ¶¶35–36.)

The Pension Fund paid PCA (i) a one-time fee of $50,000 for "Phase I," which included "program development and policies related to the program" and (ii) an annual fee of $75,000 for "Phase II," which included "on-going program manager due diligence, program monitoring and reporting."  (*Id.* ¶37.)  All told, the Pension Fund paid PCA a total of at least $575,000 between 2014 and 2020.  (*Id.* ¶¶33, 37.)

In accordance with the PCA Agreement, Defendants developed the Infrastructure Investment Policy (the "Policy") for the Pension Fund.  (*Id.* ¶38.)  On December 9, 2014, the Pension Fund adopted the Policy, which outlined investment objectives that would guide the infrastructure fund's manager.  (*Id.* ¶¶39–44.)  The

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Policy obligated PCA, as the General Consultant, to "monitor the investment process for compliance with this policy." (*Id*. ¶¶45–48.)

**B.** ***The Pension Fund Retains Onset on Defendants' Recommendation***

On March 10, 2015, Defendants presented the Pension Fund with their preliminary assessment of potential investment managers to implement the Policy and manage the Infrastructure Fund (the "March 2015 Presentation"). (*Id*. ¶49.) Among the eight potential managers Defendants identified in the March 2015 Presentation was Onset. (*Id*. ¶50.) The March 2015 Presentation recommended that the Pension Fund's Board meet *only* with Onset. (*Id*. ¶56.)

The March 2015 Presentation painted a deliberately misleading picture of Onset by failing to disclose, among other things, that (i) Onset's three "partners" had never worked together before, (ii) Chambers had a direct role in Onset's creation, (iii) Onset had previously been an entity wholly owned by Wendell McCain that did not focus on infrastructure investments, and (iv) McCain's driver's license had been suspended or revoked for unknown reasons and he had been cited in North Carolina on numerous occasions over a ten-year-period for driving without a license. (*Id*. ¶¶51–54.) Defendants also failed to advise the Pension Fund that the proposed initial investment of $30 million would be inadequate to accomplish the goals outlined in the Policy. (*Id*. ¶¶58–59.)

At Defendants' recommendation, the Pension Fund chose Onset as the Program Manager responsible for managing the infrastructure investment. (*Id*. ¶60.) On January 12, 2016, the Infrastructure Fund was formed, with Onset as the general partner and an entity created by the Pension Fund as the sole limited partner. (*Id*.)

**C.** ***Defendants Fail to Prudently Monitor Onset***

Between March 2016 and October 2018, Onset invested the $30 million contributed by the Pension Fund in nine Portfolio Companies. (*Id*. ¶62.) Those investments were inconsistent with the terms of the Policy. Specifically, the Policy

Daniels, Fine, Israel, Schonbuch & Lebovits, llp
1801 Century Park East, Ninth Floor
Los Angeles, California 90067
Telephone (310) 556-7900
Facsimile (310) 556-2807

5

1    required, among other things, that (i) the portfolio be "appropriately diversified

2    according to life cycle" (*i.e.*, that it contain a blend of companies at different stages

3    of their life cycle) and (ii) funds "be allocated to infrastructure projects located in

4    California." (*Id.* ¶¶41, 43.)  The Portfolio Companies were all early stage

5    companies and at least three of them focused, in part, on infrastructure investments

6    located outside California. (*Id.* ¶63.)

7        Notwithstanding their duty to monitor Onset's investments, Defendants never

8    informed the Pension Fund that Onset had violated the terms of the Policy or took

9    any action to remedy those violations.  To the contrary, Defendants affirmatively

10   endorsed at least one investment in a Portfolio Company despite implicitly

11   acknowledging that the investment was inconsistent with the Policy. (*Id.* ¶66.)

12       Defendants also ignored or failed to recognize numerous red flags that

13   alerted, or should have alerted, them to serious problems with Onset's

14   investments—specifically, that Onset placed values on the Infrastructure Fund's

15   investments that did not bear any resemblance to true market values to cover up the

16   fact that the Infrastructure Fund's investments were dropping in value. (*Id.* ¶¶69–

17   70.) Specifically, Onset: (i) employed flawed valuation metrics that deviated from

18   industry standards (*id.* ¶72); (ii) used inconsistent methodologies in its valuation

19   memoranda (*id.* ¶76); (iii) treated certain loans to Portfolio Companies as fully

20   collectible despite the fact that the Portfolio Companies were in payment default on

21   the loans (*id.* ¶¶78–79); and (iv) hid loans in deep payment default by rolling them

22   into new loans and treating the new loans as fully collectible (*id.* ¶¶80–83).

23       In the Spring of 2020, Meketa—the successor to PCA—requested an

24   additional $1 million from the Pension Fund for Onset to invest in one of the

25   Portfolio Companies. (*Id.* ¶¶85–87.)  The Pension Fund's investment advisor vetted

26   the investment and found no support for the valuation claimed by Meketa and Onset.

27   (*Id.* ¶87.)  The Pension Fund shortly thereafter terminated Meketa's services and

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' AMENDED COMPLAINT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

hired additional professional advisors to determine the financial condition of the Infrastructure Fund.  (*Id.* ¶¶88–91.)  An independent valuation of the portfolio concluded that, as of December 31, 2020, the Portfolio Companies were worth less than a third of what Onset claimed.  (*Id.* ¶92.)

## ARGUMENT

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them."  *Asner v. SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018, 1030 (C.D. Cal. 2021).  A court must read the complaint in the light most favorable to the non-moving party.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  To withstand a motion to dismiss under Rule 12(b)(6), a complaint need only allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Plaintiffs' Imprudent Vetting/Recommendation Claim is Timely**

At the outset, Defendants argue that portions of Plaintiffs' ERISA claim are barred by the statute of limitations but fail to mention that the parties entered into a series of agreements tolling the running of all statutes of limitations and repose from (i) December 13, 2021 through January 15, 2023 and (ii) April 5, 2023 through the date Plaintiffs commenced this action (the "Tolling Agreements").[2]  (*See* Exhibit A.)  Consequently, Defendants' breaches occurring after March 6, 2016 cannot be time-barred.

Defendants argue that the Complaint's claims for breach of fiduciary duty arising from Defendants' imprudent vetting and recommendation of Onset "are time-barred under ERISA because the alleged breaches occurred over six years ago." (Mot. at 10.)  That argument fails for two reasons:  (i) Defendants breached a

---

[2]  Notably, Defendants attached the Tolling Agreements as exhibits to their first motion to dismiss.  (*See* ECF No. 32.)

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

continuing duty to advise the Pension Fund to remove Onset as the general partner and (ii) Defendants fraudulently concealed their breach.

*First*, Defendants' argument incorrectly presumes that Plaintiffs' improper vetting/recommendation claims accrued "no later than January 2016." (*Id.*) Defendants, as fiduciaries, had "a continuing obligation to advise the [Pension Fund] to divest itself of unlawful or imprudent investments." *Buccino v. Cont'l Assurance Co.*, 578 F. Supp. 1518, 1521 (S.D.N.Y. 1983); *see also Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015) ("In short, under trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones."). When Defendants initially recommended the Pension Fund invest with Onset, they took on a continuing obligation to advise the Pension Fund if the investment was imprudent. The Ninth Circuit has held that, "regardless of when an investment was initially selected, 'a fiduciary's allegedly imprudent retention of an investment' is an event that triggers a new statute of limitations period." *Tibble v. Edison Int'l*, 843 F.3d 1187, 1192 (9th Cir. 2016). Consequently, Plaintiffs' claim is timely "so long as the alleged breach of the *continuing* duty occurred within six years of suit." *Tibble*, 575 U.S. at 530 (emphasis added).

The Complaint contains detailed allegations demonstrating that Defendants, by their actions, continued to recommend and support Onset as an appropriate party to be the general partner of the Infrastructure Fund from the time Onset became the general partner in January 2016 right up to the time the Pension Fund terminated Defendants' services in 2020.

Each act taken by Onset as the general partner provided further evidence that Defendants' initial and continued recommendation of Onset was imprudent. For instance, Onset invested the Pension Fund's capital contribution between March 2016 and October 2018 (*i.e.*, indisputably within the limitations period) in nine Portfolio Companies that were incompatible with the Policy. (Compl. ¶¶62–63.) It

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

should have become apparent to Defendants by no later than October 2018 that Onset had no intention of complying with the guidelines set forth in the Policy because the Portfolio Companies were not "appropriately diversified according to life cycle" and at least three of them focused, in part, on projects outside of California.  (*Id.* ¶¶41, 43.)

Moreover, numerous other developments involving McCain, one of Onset's principals, should have caused Defendants to reconsider their continued recommendation of Onset.  McCain faced significant financial difficulties during the period in which Onset was the general partner, resulting in hundreds of thousands of dollars in state and federal tax liens and the foreclosure of a property he owned in Massachusetts in or around 2017.  (*Id.* ¶55.)  Further, Onset and McCain participated in other time-consuming commercial activities during that time— including a failed scheme in early 2020 to distribute personal protective equipment in partnership with a known felon—thereby limiting the time available to devote the Infrastructure Fund.  (*Id.*)

Nevertheless, Defendants continued to recommend and support Onset's retention as the general partner.  Throughout Defendants' tenure as fiduciaries to the Plan, Defendants attended more than twenty-five Board meetings at which Onset either presented to the Board or discussed the Infrastructure Fund's investments (*id.* ¶67); reviewed and approved capital call requests on numerous occasions, including at least four times in 2018 (*id.* ¶¶14, 33); and regularly reported to the Pension Fund on the Infrastructure Fund's "progress" (*id.* ¶13).  Yet at no point did Defendants advise the Pension Fund to remove, or even consider removing, Onset as the general partner based on the information Defendants knew, or should have known, about Onset.

To the contrary, Defendants stood by their initial recommendation that the Pension Fund should invest with Onset by painting the false picture that Onset was

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

succeeding as the general partner. Indeed, in their periodic reports to the Pension Fund on the Infrastructure Fund's "progress," Defendants adopted and repeated Onset's artificially inflated valuations of the Portfolio Companies, thereby falsely representing that the Infrastructure Fund's portfolio was increasing in value. (*Id.* ¶13.) And, as late as the Spring of 2020—just months before the Pension Fund terminated Defendants' services—Defendants went so far as to recommend that the Pension Fund invest *additional funds* with Onset. (*See, e.g.*, *id.* ¶¶33, 87.)

Accordingly, because Defendants repeatedly breached their continuing duty after March 2016—and as recently as 2020—Plaintiffs' imprudent vetting and recommendation claim is timely.

*Second*, even assuming, *arguendo*, that Plaintiffs' claim otherwise would be untimely, the Complaint adequately pleads that Defendants engaged in fraud or concealment sufficient to toll the six-year limitations period. *See* 29 U.S.C. § 1113.

The Complaint alleges that Defendants' recommendation to retain Onset was imprudent because Onset lacked the "experience or track record" to serve as the manager of the Infrastructure Fund. (Compl. ¶53.) In an attempt to hide that imprudent recommendation, Defendants deliberately concealed numerous material facts from the Pension Fund, including, among other things, that: (i) Onset's three "partners" had never worked together before, (ii) Chambers had a direct role in Onset's creation, (iii) Onset was an entity wholly owned by McCain that did not focus on infrastructure investments, and (iv) McCain's driver's license had been suspended or revoked for unknown reasons and he had had been cited in North Carolina on numerous occasions over a ten-year-period for driving without a license. (*Id.* ¶¶51–54.)[3]

---

[3] Defendants half-heartedly argue that the Complaint fails to allege that Defendants' vetting and recommendation of Onset was imprudent. (Mot. at 11–12.) But Defendants ignore key allegations demonstrating that Defendants painted a misleading picture in their March 2015 Presentation of Onset's experience (or lack thereof), both as an entity and in connection with infrastructure investments. (*See* Compl. ¶¶50–53.) Defendants also downplay the Complaint's allegations about McCain and his relationship with Chambers, which support an inference that Defendants were

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

Those omissions were "affirmative conduct upon the part of [Defendants] which would, under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief."  *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1057 (9th Cir. 2020).  As such, the six-year limitations period should be tolled.

## II. The Complaint States a Claim For Breach of Fiduciary Duties

ERISA imposes duties on plan fiduciaries that "are 'the highest known to the law.'"  *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 273 n.8 (2d Cir. 1982)).  Under ERISA, a fiduciary must, among other things, discharge its duties (i) "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use," 29 U.S.C. § 1104(a)(1)(B), and (ii) "in accordance with the documents and instruments governing the plan," 29 U.S.C. § 1104(a)(1)(D).

At the outset, while Defendants argue that the Complaint fails to state a claim for breach of the duty of prudence under ERISA Section 404 (a)(1)(B), their motion is devoid of ***any*** argument challenging the Complaint's allegation that Defendants breached their duty to act in accordance with the plan documents under ERISA Section 404(a)(1)(D).  (*See* Compl. ¶100 ("Defendants further breached their fiduciary duties by violating the terms of the Infrastructure Investment Policy which, following adoption by the Board, is a plan document within the meaning of ERISA Section 404(a)(1)(D).").)  Accordingly, Defendants have waived their right to seek dismissal of that claim, and any such arguments raised for the first time on reply should be disregarded.  *See, e.g.*, *United States ex rel. Giles v. Sardie*, 191 F. Supp.

---

conflicted in their recommendation of Onset.  (*See id.* ¶¶53–54.)  Finally, Defendants argue, without any support, that because the information Defendants failed to disclose to the Pension Fund about Onset was not disclosed in the LPA between Onset and the Pension Fund, it was not material.  (Mot. at 12.)  To the contrary, that fact merely shows that Onset, like Defendants, failed to disclose material information to the Pension Fund.  The Complaint plainly states a claim against Defendants for imprudent vetting and recommendation of Onset.

11

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers."); *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").  Therefore, under no circumstances are Defendants entitled to dismissal of the Complaint in its entirety.

Defendants argue that the Complaint fails to state a claim for breach of fiduciary duty under ERISA Section 404(a)(1)(B) because (i) Defendants allegedly had no authority to supervise Onset and (ii) the Complaint purportedly lacks sufficient facts to plausibly allege that Defendants' supervision of Onset was imprudent.

Those arguments are unmerited.  *First,* the structure of the Infrastructure Fund did not (and could not) absolve Defendants of their independent duty to monitor Onset.  *Second*, the Complaint adequately alleges that Defendants breached their fiduciary duties by, among other things, (i) failing to ensure that Onset adhered to the requirements of the Policy and/or failing to inform the Pension Fund that Onset was violating the Policy and (ii) ignoring red flags that should have alerted them to Onset's misconduct.

A.   ***The Structure of the Infrastructure Fund Does Not Absolve Defendants of Their Duty to Monitor Onset***

PCA expressly agreed to act "as a fiduciary on behalf of the [Pension Fund]" to assist the Pension Fund in setting up and carrying out an infrastructure investment program.  Among other things, PCA was responsible for (i) developing "investment strategy, policies, procedures, goals and objectives" for the infrastructure investment program (*i.e.*, developing and drafting the Policy), (ii) "identify[ing], interview[ing] and conduct[ing] due diligence on potential Program Manager(s) who will have investment discretion," and (iii) "oversee[ing] the Program Manager's [*i.e.*, Onset's] strategy, investment selection process, deal pipeline and investment process."

DANIELS, FINE, ISRAEL, SCHONBUCH & LEOBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

1  (Compl. Ex. B, at 2.)  PCA received an ***annual fee of $75,000*** for "on-going

2  program manager due diligence, program monitoring and reporting."  (*Id.* at 3.)

3  Thus, PCA had a fiduciary obligation to monitor Onset and the infrastructure

4  investment program, and it was paid to do so.

5  Defendants argue that, because the Infrastructure Fund was structured as a

6  limited partnership with Onset as the general partner, Defendants lacked the

7  authority to monitor Onset and were therefore absolved of ***any*** duty to do so.[4]  (Mot.

8  at 14–16.)  That argument fails, for numerous reasons.

9  *First*, Defendants' argument that they lacked any authority to monitor Onset

10  is belied by Defendants' own actions over the course of their retention.  As alleged

11  in the Complaint, Defendants were actively involved in overseeing Onset's

12  investment activities and regularly reported to the Board on the status of the

13  Infrastructure Fund's investments.  For instance, Defendants:  (i) wrote letters to the

14  Board providing advice on specific investments Onset proposed (Compl. ¶33);[5] (ii)

15  reviewed and approved Onset's capital call requests (*id.*);[6] (iii) reviewed and

16  approved Onset's draft presentations to the Board regarding the Infrastructure

17  Fund's portfolio and performance (*id.* ¶67); (iv) attended more than twenty-five

18  Board meetings at which Onset presented to the Board (*id.*); (v ) provided the

19  Pension Fund with "Portfolio Reviews" that included valuations of Portfolio

20

21  [4]  Defendants also suggest that, because the Policy does not expressly identify Defendants as the "General Consultant

22  or Infrastructure Consultant," the duty to monitor Onset should fall on Merrill Lynch, the Pension Fund's investment adviser.  (Mot. at 15 n.8.)  But the Complaint expressly alleges that PCA was the "General Consultant" under the

23  Policy.  (Compl. ¶¶38, 45.)  In any case, it is reasonable to infer that the term "General Consultant" in the Policy (which Defendants drafted) referred to Defendants—Defendants were retained for the express purpose of setting up

24  and overseeing an infrastructure investment program.  (*See id.*, Ex. B.)  Merrill Lynch had no involvement in that program.

25  [5]  Defendants take issue with this allegation, noting that the Complaint does not allege that Chambers' advice was imprudent.  (Mot. at 17.)  Defendants miss the point—the fact that Chambers communicated directly with the Pension

26  Fund on certain investments demonstrates both that Defendants were acting in a fiduciary capacity and that Defendants could have fulfilled their contractual and fiduciary duty to monitor Onset by communicating issues directly to the Pension Fund.

27  [6]  While Defendants argue that the LPA did not authorize Chambers to approve capital call requests submitted by Onset, they do not dispute that Chambers did, *in fact*, review and provide her approval of such requests on at least *four*

28  separate occasions.  (*See* Mot. at 15 n.7; Compl. ¶33.)

13

Companies (*id.* ¶84); and (vi) directly requested that the Pension Fund approve an additional $1 million investment (*id.* ¶87).

Thus, Defendants were not, as a practical matter, rendered unable to perform their duties by the structure of the Infrastructure Fund.  They simply chose not to do so with respect to Onset's inflated valuations, failure to follow the Infrastructure Investment Policy, and other misconduct.

Defendants, who touted their expertise in "new investment vehicle development" and "manager due diligence and partnership selection," never raised ***any*** objection to the structure of the Investment Fund.  Nevertheless, if Defendants believed that the structure of the Infrastructure Fund hampered or prevented them from exercising oversight over Onset, they had a duty to inform the Pension Fund of that fact—especially given that they were being paid $75,000 per year to do just that—and propose alternative structures that would have allowed them to exercise oversight over Onset.  *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004) (fiduciary has a duty to "employ[] the appropriate methods to investigate the merits of the investment and to structure the investment").  Indeed, the PCA Agreement obligated Defendants to develop "a unique investment platform that captures objectives of the [Pension Fund]" and "negotiate terms with the Program Manager on behalf of the [Pension Fund]."[7]  (Compl. Ex. B, at 2.) Defendants' obligation to "negotiate terms" with Onset on behalf of the Pension Fund plainly encompassed a duty to structure the Pension Fund's investment in a way that enabled Defendants to exercise their fiduciary duties.

*Second*, even assuming Defendants are correct that the LPA governing the Infrastructure Fund did not grant Defendants any direct authority or control over

---

[7] Defendants claim that Onset was "never named as a 'Program Manager' of an 'Infrastructure Investment Program' that Defendants were empowered to 'oversee.'"  (Mot. at 14.)  However, the Complaint expressly alleges that "the Pension Fund chose Onset as the ***Program Manager responsible for managing the infrastructure investment***."  (Compl. ¶60 (emphasis added).)  That allegation must be accepted as true at the pleading stage.

14

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

Onset, it does not follow that the LPA prevented Defendants from exercising their duty to monitor Onset's strategy, investment selection process, deal pipeline, investment process, and compliance with the Policy.  As noted, Defendants had extensive access to information concerning the Infrastructure Fund, the Portfolio Companies, and Onset's actions as the Program Manager.  Regardless of whether Defendants had any direct control over Onset, they could have—and a prudent fiduciary would have—reported issues with Onset's performance as the Program Manager to the Pension Fund.  Defendants consistently failed to do so, thereby breaching their fiduciary duties.  (*See, e.g.*, Compl. ¶11.)

**B.**    ***The Complaint Adequately Alleges That Defendants Acted Imprudently***

Defendants next argue that the Complaint fails to allege sufficient facts about "Defendants' alleged "supervision" of Onset to conclude that it was imprudent. That argument, too, misses the mark.

"To state a claim for breach of fiduciary duty, a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017) (citing *Pension Benefit Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013)).  Rather, "the court may be able to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Id.*  Indeed, "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).

The Complaint includes detailed factual allegations from which the Court could reasonably infer that Defendants imprudently failed "to review and monitor Onset's investment program." (Compl. ¶75.)  It alleges that Defendants knew (or

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

should have known) that Onset was making investments in the Infrastructure Fund that violated the Policy, yet failed to take any action or even disclose those violations to the Pension Fund. (*Id.* ¶¶63–66.)  Specifically, the Policy required, among other things, that (i) the portfolio be "appropriately diversified according to life cycle" (*i.e.*, that it contain a blend of companies at different stages of their life cycle) and (ii) funds "be allocated to infrastructure projects located in California." (*Id.* ¶¶41, 43.)  Onset failed to adhere to those requirements.  Instead, it invested in nine early stage Portfolio Companies, at least three of which focused, in part, on infrastructure projects located outside California. (*Id.* ¶63.)  On at least one occasion, Defendants affirmatively endorsed an investment in a Portfolio Company despite implicitly acknowledging that the investment was inconsistent with the Policy. (*Id.* ¶66.)

Those allegations amply support an inference that Defendants breached their duty of prudence by either (i) failing to identify investments that were inconsistent with the Policy or (ii) failing to notify the Pension Fund that Onset was making investments that were inconsistent with the Policy despite knowing that Onset was doing so.

The Complaint also alleges that Defendants ignored numerous red flags that alerted, or should have alerted, them to Onset's fraudulent conduct.  Contrary to Defendants' argument (Mot. at 18), the Complaint details numerous such red flags, including:

- Onset's use of flawed valuation metrics that deviated from industry standards (Compl. ¶72);

- Onset's inconsistent use of valuation methodology in its valuation memoranda (*id.* ¶76);

- Onset's decision to treat certain loans to Portfolio Companies as fully collectible despite the fact that the

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSMILE (310) 556-2807

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Portfolio Companies were in payment default (*id.* ¶¶78–79);

- Onset's attempt to hide loans in deep payment default by rolling them into new loans and treating the new loans as fully collectible (*id.* ¶¶80–83); and

- A request (by Defendants) in the Spring of 2020 for an additional $1 million investment in GeoGenCo despite the fact that the Pension Fund's new investment adviser (NEPC) could find no support for the claimed valuation of that company.[8]

Taken together, those red flags, at a minimum, should have alerted Defendants to the possibility that Onset was engaging in misconduct. A prudent fiduciary faced with those red flags would have investigated further and/or conveyed its concerns to the Pension Fund. Defendants did nothing of the sort. Instead, they uncritically accepted Onset's fraudulently inflated valuations and repeated them in periodic reports to the Pension Fund. (*Id.* ¶13.)

The Complaint sets forth sufficient facts to show that Defendants "knew or should have known about [Onset's] misconduct and failed to remedy the situation." *Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2018 WL 3372752, at *13 (C.D. Cal. July 9, 2018) (quoting *Solis v. Couturier*, No. 2:08-cv-02732-RRB (GGH), 2009 WL 1748724, at *7 (E.D. Cal. June 19, 2009)). Therefore, the Complaint states a claim against Defendants for breach of the duty of prudence. *Id.*

Defendants' reliance on *Anderson v. Intel Corp. Investment Policy Committee*, No. 19-CV-04618-LHK, 2021 WL 229235 (N.D. Cal. Jan. 21, 2021), is

---

[8] Defendants point to the purported inability of Merrill Lynch and NEPC to "uncover Onset's fraud" (Mot. at 19), but unlike Defendants, neither Merrill Lynch nor NEPC were responsible for monitoring the Infrastructure Fund during the period in which Defendants were retained by the Pension Fund.

17

misplaced. (Mot. at 18.) There, the court concluded that "[m]aterials published *after 2011* do not support Plaintiffs' claim that a prudent fiduciary *in 2011* had access to information" demonstrating that certain investments were risky. *Anderson*, 2021 WL 229235, at *10 (emphasis added). The unremarkable proposition that a fiduciary cannot be charged with knowledge of information that is not yet available to them has no bearing here. The Complaint alleges that, based on information available to them at the time, Defendants should have recognized "numerous red flags that should have indicated to them that there was a serious problem with Onset's investments." (Compl. ¶70; *see also id.* ¶¶68, 77.)

Defendants' claim that they did not act imprudently because it took an "independent valuation of the portfolio" by "additional professional advisers" to uncover Onset's fraud (Mot. at 18) similarly misses the point. Had Defendants conducted appropriate oversight and conveyed the numerous red flags raised by Onset's conduct to the Pension Fund in a timely manner, the Pension Fund could have conducted an independent valuation of the portfolio or taken other actions that would have prevented, or at least limited, its losses.

### III. The Pension Fund Has Standing to Sue Pursuant to Section 502(a)(2) of ERISA

The Pension Fund, as the administrator the Plan, and thus a fiduciary, has standing to sue pursuant to Section 502(a)(2) of ERISA and is therefore a proper plaintiff in this action. In the Motion, Defendants argue that the Pension Fund does not have standing to bring an ERISA claim (*i.e.*, Count I in the Complaint). (Mot. at 20.) According to Defendants, the Pension Fund lacks standing because it is the same entity as the Plan. (*Id.*)

To the contrary, the Ninth Circuit acknowledged (in one of the cases Defendants cite) that a Taft-Hartley trust fund can have standing under Section 502(a) of ERISA. *See Local 159 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 982 (9th

18

Cir. 1999). In *Local 159*, the Ninth Circuit held that the *particular* trust fund in that case did not have standing to sue under Section 502(a) of ERISA because the trust fund was the same as the pension plan in that case. *Id.* The Ninth Circuit held that the trust fund therefore could not be a fiduciary of the pension plan with standing to sue under Section 502(a) of ERISA. *Id.* The Ninth Circuit specifically stated, however, that when trust funds are separate from the pension plan, the trust fund can be a fiduciary with standing to sue under Section 502(a) of ERISA. *Id.* at 982 ("a trust fund could qualify as a fiduciary of a separate ERISA plan so long as it exercises discretionary authority over the management or administration of the plan or its assets.").

Defendants do not point to any facts in support of their conclusion that "[t]he Pension Fund is an ERISA-covered plan" and therefore not a "fiduciary of an ERISA plan." (Mot. at 20.) The Trust Agreement established the Pension Fund and Plan separately. (*See* Ex. B at 7.) For example, pursuant to the Trust Agreement, "the Board of Trustees shall have the power to administer the [Pension] Fund and to administer and maintain the Pension Plan . . . ." (*See id.* at 11.) Accordingly, the Complaint refers to the Pension Fund and Plan separately. (Compl. ¶¶1, 3–5, 13, 16, 19, 21–22, 95–97, 102–103.) Further, the named plaintiffs in the Complaint are the Pension Fund and the Trustees, *on behalf of the Plan*. (*See id.* at 1.) If the Pension Fund and Plan were the same, the Complaint would not state that the Pension Fund was bringing this suit *on behalf of the Plan*.

Aside from the *Local 159* case, Defendants cite to two other cases for the proposition that the Pension Fund does not have standing to bring an ERISA claim. (Mot. at 20.) Neither case is applicable here. In the first, *Steen v. John Hancock Mutual Life Insurance Co.,* the Ninth Circuit held that an ERISA *plan* does not have standing to sue for breach of fiduciary duty. 106 F.3d 904, 917 (9th Cir. 1997). The Plan is not a plaintiff in this case. (*See* Compl. at 1.) The second case, *Pressroom*

19

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

*Union-Printers League Income Security Fund v. Continental Assurance Co.*, is from the Second Circuit. 700 F.2d 889 (2d Cir. 1983). It is not binding on this Court and is the very case the Ninth Circuit declined to follow in *Local 159*. *See* 185 F.3d at 982 ("We therefore disagree with the Second Circuit's contrary dicta that it is 'difficult to imagine a situation in which a fund could fulfill' the role of a fiduciary and thus bring an ERISA suit in its own name.") (citing *Pressroom*, 700 F.2d at 893 n.8).

Even assuming, *arguendo*, that the Pension Fund does not have standing to bring an ERISA claim (which it does), none of the claims in the Complaint are subject to dismissal, for two reasons. *First*, in addition to the Pension Fund, the Trustees are individually named as plaintiffs in their capacity as fiduciaries of the Plan. (*See* Compl. at 1.) Defendants do not dispute that the Trustees are proper plaintiffs for each of the counts in the Complaint, including the ERISA claim in Count I.

*Second*, Defendants do not dispute that the Pension Fund is a proper plaintiff for the non-ERISA claims in the Complaint. (*See* Mot. at 20.) Instead, Defendants argue that the Pension Fund "has no cognizable claims to pursue in this case" because, according to Defendants, all of Plaintiffs' state law claims are preempted. (*Id.* at 20 n.12.) For the reasons discussed *infra* at Section IV, the state law claims are properly asserted.

Given that dismissing the Pension Fund would not dispose of any of the claims in the Complaint, Defendants' argument amounts to nothing more than a cynical attempt to invalidate the Tolling Agreements and further insulate Defendants from their own misconduct. Specifically, the Tolling Agreements were entered into by the Pension Fund and California Infrastructure Fund I Investor LLC, the limited partner in the Infrastructure Fund. (*See* Ex. A.) If the Pension Fund is dismissed from this action, Defendants are likely to argue that the Tolling Agreements are

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

20

inapplicable, even though the individual Trustees of the Pension Fund will remain parties to the action.  That argument is meritless, as the Trust Agreement specifically provides that "[t]he name of the [Pension] Fund may be used to designate the Trustees collectively and all instruments may be effected by the Board of Trustees in such name."  (*See* Ex. B at 35.)

## IV. Plaintiffs' State Law Claims Are Pled in the Alternative

Defendants argue that Counts II through IV of the Complaint are preempted by ERISA and should be dismissed.  (Mot. at 20–23.)  As Defendants acknowledge, that argument is premised on Plaintiffs' allegation in the Complaint that "Defendants were ERISA fiduciaries of the Pension Fund."  (*Id.* at 21.)

Plaintiffs are confident that both the PCA Agreement, which expressly provides that Defendants "would contract as a fiduciary on behalf of the [Pension Fund]," and the parties' course of conduct establish beyond any reasonable question that Defendants were ERISA fiduciaries.  (*See, e.g.*, Compl. ¶¶30, 32–33.)  Nevertheless, in discussions prior to the commencement of this action, Defendants took the position that they were *not* ERISA fiduciaries but rather fiduciaries under state law.

Assuming, *arguendo*, that Defendants were not ERISA fiduciaries (which they were), then state law would provide the proper avenue for Plaintiffs to seek relief from Defendants.  Consequently, out of an abundance of caution, Plaintiffs asserted both an ERISA claim and, *in the alternative*, state law claims.[9]  (*See id.* ¶¶106–131.)

While Defendants assume, for purposes of the Motion, that they are ERISA fiduciaries, they have not expressly conceded that issue.  As such, Plaintiffs are

---

[9] Plaintiffs expressly pled Counts III and IV in the alternative.  (*See* Compl. ¶¶118, 127.)  While Count II does not include similar language, Plaintiffs are not required to expressly state they are pleading in the alternative to do so.  *See Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003) ("Under Rule 8, plaintiff 'need not use particular words to plead in the alternative' as long as 'it can be reasonably inferred that this is what [he was] doing.'") (quoting *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000)).

21

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

entitled to plead state law claims in the alternative. *See* Fed R. Civ. P. 8(d)(2); *see also ILWU-PMA Welfare Plan Bd. of Trs. v. Conn. Gen. Life Ins. Co.*, No. C 15-02965 WHA, 2015 WL 9300519, at *8 (N.D. Cal. Dec. 22, 2015) (holding that "plaintiffs may pursue their state law claims for the time being *even to the extent they may ultimately be preempted*" (emphasis in original)); *Coleman v. Standard Life Ins. Co.*, 288 F. Supp. 2d 1116, 1120 (E.D. Cal. 2003) ("ERISA preemption often presents the sort of situation for which Rule 8's alternative pleading provision is designed.").

**V. Alternatively, the Court Should Grant Plaintiffs Leave to Amend**

As set forth above, the Complaint states timely claims against Defendants, and Defendants' Motion should be denied in its entirety. However, if the Court concludes that the Complaint is deficient, it should grant Plaintiffs leave to amend pursuant to the liberal standards set forth in Rule 15 of the Federal Rules of Civil Procedure.

"As a general rule, leave to amend a complaint which has been dismissed should be granted freely." *Asner*, 557 F. Supp. 3d at 1031. "Leave to amend should be granted if it appears at all possible that the plaintiff can correct the defect." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted). Defendants have not shown "that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Accordingly, leave to amend is appropriate.

///
///
///
///
///

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendants' Motion in its entirety.

Dated: February 13, 2024

DANIELS, FINE, ISRAEL,
SCHONBUCH & LEBOVITS, LLP

By:  */s/Paul R. Fine*
Paul R. Fine
Geronimo Perez
Attorneys for Plaintiffs
CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,
and JON PRECIADO, SERGIO RASCON,
ADRIAN ESPARZA, ALEX ARTIAGA,
MICHAEL DEA, HERTZ RAMIREZ,
PETER SANTILLAN, JEROME DI
PADOVA, CATHERINE MONCADA,
ALAN LUDWIG, JEFF STEWART,
LANCE BOYER, BILL BOYD, and JOHN
COOPER, as TRUSTEES OF THE
CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,
on behalf of the Construction Laborers
Pension Plan for Southern California

OF COUNSEL:

SCHULTE ROTH & ZABEL LLP
Ronald E. Richman (Admitted *PHV*)
William H. Gussman, Jr. (Admitted *PHV*)
Frank W. Olander (Admitted *PHV*)
Andrew B. Lowy (Admitted *PHV*)

919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000

Attorneys for Plaintiffs

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Daniels, Fine, Israel, Schonbuch & Lebovits, LLP
1801 Century Park East, Ninth Floor
Los Angeles, California 90067
Telephone (310) 556-7900
Facsimile (310) 556-2807

CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, and JON PRECIADO, SERGIO RASCON, ADRIAN ESPARZA, ALEX ARTIAGA, MICHAEL DEA, HERTZ RAMIREZ, PETER SANTILLAN, JEROME DI PADOVA, CATHERINE MONCADA, ALAN LUDWIG, JEFF STEWART, LANCE BOYER, BILL BOYD, and JOHN COOPER, as TRUSTEES OF THE CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, on behalf of the Construction Laborers Pension Plan for Southern California

24

1

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

2    The undersigned, counsel of record for Plaintiffs, certifies that this brief contains

3 6996 words, which complies with the word limit of L.R. 11-6.1.

4

5 Dated: February 13, 2024

*/s/Geronimo Perez*
Geronimo Perez

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' AMENDED COMPLAINT

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

DANIELS, FINE, ISRAEL, SCHONBUCH & LEBOVITS, LLP
1801 CENTURY PARK EAST, NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE (310) 556-7900
FACSIMILE (310) 556-2807

# **CERTIFICATE OF SERVICE**

I certify that on February 13, 2024, a copy of MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT was served electronically through the Court's electronic filing system upon all parties appearing on the Court's ECF service list.

Dated:        February 13, 2024

*/s/ Yvett Espinoza*
Yvett Espinoza

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' AMENDED COMPLAINT