1  Robyn C. Crowther (SBN 193840)
2  *rcrowther@steptoe.com*
   **STEPTOE LLP**
3  633 West 5th Street, Suite 1900
4  Los Angeles, CA 90071
   Telephone:  (213) 439-9400; Facsimile:  (213) 439-9599
5  (*Additional counsel listed on next page*)

6
7  *Attorney for Defendants* MEKETA INVESTMENT
   GROUP, INC. and JUDY CHAMBERS
8

9              **UNITED STATES DISTRICT COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11

| | |
|---|---|
| 12  CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, and JON PRECIADO, SERGIO RASCON, ADRIAN ESPARZA, ALEX ARTIAGA, MICHAEL DEA, HERTZ RAMIREZ, PETER SANTILLAN, JEROME DI PADOVA, CATHERINE MONCADA, ALAN LUDWIG, JEFF STEWART, LANCE BOYER, BILL BOYD, and JOHN COOPER, as TRUSTEES OF THE CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, on behalf of the Construction Laborers Pension Plan for Southern California, | Case No.: 2:23-cv-07726-CAS-PVC  **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**  Judge:  Christina A. Snyder  Hearing Date: August 5, 2024  Hearing Time: 10:00 a.m.  Courtroom:  8D |
| Plaintiffs, | |
| vs. | |
| MEKETA INVESTMENT GROUP, INC. and JUDY CHAMBERS, | |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Diana K. Lloyd (*admitted pro hac vice*)
Caroline Trusty (*admitted pro hac vice*)
Alexander L. Bevans (*admitted pro hac vice*)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA 02110
*dlloyd@choate.com*
*ctrusty@choate.com*
*abevans@choate.com*
Telephone: (617) 248-5000
Facsimile:  (617) 248-4000


Eric G. Serron (*admitted pro hac vice*)
*eserron@steptoe.com*
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

*Attorneys for Defendants* MEKETA INVESTMENT
GROUP, INC. and JUDY CHAMBERS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# <u>TABLE OF CONTENTS</u>

<u>Page Nos.</u>

INTRODUCTION ...............................................................................1

BACKGROUND·..............................................................................4

    A.    Over Six Years Ago Defendants Identified Eight Potential Program Managers for the Program, Including Onset. ........................4

    B.    The Pension Fund Created a Limited Partnership, Vesting Exclusive Authority and Sole Discretion Over the Partnership's Investments and Investment Policy in Onset. ......................................5

    C.    Plaintiffs' Claims .........................................................7

LEGAL STANDARD..........................................................................8

ARGUMENT .....................................................................................9

I.    COUNT I FAILS TO STATE A CLAIM UNDER ERISA...........................9

    A.    Plaintiffs' ERISA Claim as to Defendants' Conduct Prior to March 2, 2016 Remains Time-Barred.................................................9

    B.    Plaintiffs' New Allegations Further Undermine Their Breach of ERISA Duties Claim. ...............................................................15

II.    ERISA PREEMPTS PLAINTIFFS' STATE LAW CLAIMS.....................18

III.    THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE........19

CONCLUSION..................................................................................21

CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1....................................22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004) .......................................................................16

6

7

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*,
   No. 23-1073, 2024 U.S. App. LEXIS 9802 (7th Cir. Apr. 23, 2024) ..........11, 12

8

9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................17

10

11

*Barker v. Am. Mobil Power Corp.*,
   64 F.3d 1397 (9th Cir. 1995) .........................................................................14

12

13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..............................................................................4, 8, 17

14

15

*Bracalente v. Cisco Sys.*,
   No. 5:22-cv-04417-EJD, 2023 U.S. Dist. LEXIS 140678 (N.D.
   Cal. Aug. 11, 2023).........................................................................................15

16

17

*Cox v. Eichler*,
   765 F. Supp. 601 (N.D. Cal. 1990)..................................................................18

18

19

*DCD Programs, Ltd. v. Leighton*,
   833 F.2d 183 (9th Cir. 1987) ..........................................................................20

20

21

*Dutro v. Cty. of Contra Costa*,
   No. 12-cv-02972 NC, 2013 U.S. Dist. LEXIS 142920 (N.D. Cal.
   Sept. 30, 2013)................................................................................................20

22

23

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014) .......................................................................................15

24

25

*Guenther v. Lockheed Martin Corp.*,
   972 F.3d 1043 (9th Cir. 2020) ...............................................................*passim*

26

27

*Harris v. Koenig*,
   602 F. Supp. 2d 39 (D.D.C. 2009)...................................................................17

28

*Kopelev v. Boeing Co.*,
No. 21-55937, 2022 U.S. App. LEXIS 34042 (9th Cir. Dec. 9, 2022) ..................................................................................................19

*Landwehr v. Dupree*,
72 F.3d 726 (9th Cir. 1995) ...................................................................20

*Lee v. City of Los Angeles*,
250 F.3d 668 (9th Cir. 2001) ...................................................................8

*McKeown v. Pac. Bell Directory*,
No. C-97-0427 MHP, 1999 U.S. Dist. LEXIS 2281 (N.D. Cal. Feb. 26, 1999) ............................................................................................13

*In re Out of Network Substance Use Disorder Claims Against Unitedhealthcare*,
No. SACV 19-2075 JVS (DFMx), 2020 U.S. Dist. LEXIS 153773 (C.D. Cal. July 29, 2020) ..................................................................18

*Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*,
712 F.3d 705 (2d Cir. 2013) ...................................................................14

*Ranke v. Sanofi-Synthelabo Inc.*,
436 F.3d 197 (3d Cir. 2006) ...................................................................12

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ...............................................................19

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*,
806 F.2d 1393 (9th Cir. 1986) ...............................................................19

*Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*,
733 F.3d 1251 (9th Cir. 2013) .................................................................8

*Thomas v. Mundell*,
572 F.3d 756 (9th Cir. 2009) ...............................................................14

*Tobias v. Nvidia Corp.*,
No. 20-CV-06081-LHK, 2021 U.S. Dist. LEXIS 173539 (N.D. Cal. Sept. 13, 2021) ...........................................................................16

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

iii

*In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*,
   242 F.3d 497 (3d Cir. 2001) ............................................................................12

*Wright v. Or. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ..........................................................................8

*Yamauchi v. Cotterman*,
   84 F. Supp. 3d 993 (N.D. Cal. 2015)........................................................*passim*

**Statutes**

29 U.S.C. § 1113.............................................................................................9, 20

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) .................................................................................4, 8

# INTRODUCTION

In their Second Amended Complaint, Plaintiffs tell almost the exact same story they told in their previous two attempts:  over six years ago, Plaintiffs executed a limited partnership agreement (the "LPA") with an investment manager, Onset Capital Partners, LLC ("Onset"), giving Onset exclusive authority and sole discretion over the Partnership's (or "Infrastructure Fund") investments.  With that exclusive authority and sole discretion, Onset allegedly defrauded Plaintiffs.  Onset allegedly selected investments ill-suited for the Partnership, failed to manage those investments appropriately, and then lied to the Pension Fund about the success of those investments.  In February 2023, Plaintiffs filed a lawsuit against Onset in state court accusing them of fraud.

In *this* federal court lawsuit, through their Complaint, their First Amended Complaint (the "FAC"), and now their Second Amended Complaint (the "SAC"), Plaintiffs seek to blame Defendants—not Onset—for Onset's allegedly fraudulent conduct.  Plaintiffs assert:  in November 2014, Defendants agreed to vet, recommend, and oversee an investment manager for the Pension Fund's infrastructure investment program; in March 2015, Defendants recommended Onset as an investment manager; in January 2016, Plaintiffs accepted that recommendation and hired Onset; and from March 2016 to August 2021, Defendants failed to oversee Onset with the prudence required of an ERISA fiduciary.  This failure to oversee, Plaintiffs claim, enabled Onset to commit fraud against the Pension Fund.

Plaintiffs have told this story three times now.  While the basic allegations have not changed, with each turn Plaintiffs have tweaked their language, hoping to plead around the legal requirements of ERISA to make their meritless claims for breach of fiduciary duty stick.  Not only does Plaintiffs' artful pleading continue to fail, this time, the SAC's amendments actually weaken Plaintiffs' claims.

*First*, this Court already dismissed Plaintiffs' untimely claim that the vetting and recommendation of Onset were imprudent, as that conduct occurred outside of

the ERISA statute of limitations period.  The SAC alleges nothing new to overcome this absolute time-bar.  Instead, Plaintiffs contort their old allegations in an attempt to qualify for the fraud and concealment exception to ERISA's statute of limitations. But while Plaintiffs sprinkle words like "concealed" or "hid" or "actively mislead" throughout the SAC, they still fail to allege affirmative steps that Defendants took to hide their 2014-2015 alleged imprudent vetting or recommendation.  At most, Plaintiffs rehash their allegations of fiduciary breaches or mischaracterize alleged non-disclosures as "concealment."  None of those allegations demonstrate *knowing* misrepresentations intended to deceive or affirmative steps intended to conceal that could toll the statute of limitations under applicable case law.  Thus, this third iteration of Plaintiffs' untimely ERISA claims based upon Defendants' conduct prior to March 2, 2016, should be dismissed with prejudice.

*Second*, Plaintiffs' SAC confirms that even Plaintiffs' timely allegations fail to state a claim for a breach of fiduciary duty under ERISA.[1]  As with the FAC, Plaintiffs' SAC makes no direct allegations of imprudent conduct by Defendants. Instead, as they did in their FAC, Plaintiffs continue to rely upon Onset's allegedly fraudulent conduct and ask this Court to infer that Onset's fraud would have been impossible but for Defendants' imprudent oversight.  However, Plaintiffs' SAC now includes additional allegations that show Defendants *did* in fact oversee Onset as best they could given the LPA structure Plaintiffs chose.  Far from pleading Defendants' imprudent oversight, these new allegations of oversight further

---

[1] Defendants recognize that the Court declined to dismiss the FAC's ERISA breach of fiduciary duty claim for conduct *after* March 2, 2016, ECF No. 68 ("Order"). However, Defendants seek to dismiss all of the SAC's claims—including the post-March 2, 2016 ERISA breach of fiduciary duty claim—because Plaintiffs' new allegations strengthen Defendants' arguments for dismissal.  *See infra* Section I, B. As set forth below, Plaintiffs' new allegations in the SAC confirm that Meketa exercised oversight over Onset, consistent with the Consulting Agreement, and to the extent possible, under the LPA.  *See id.*

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

2

demonstrate that Onset's exclusive authority and sole discretion over the Partnership enabled it to hide its alleged misconduct from both the Pension Fund *and* the Defendants, notwithstanding Defendants' close attention to Onset's actions and fulfillment of their contractual obligations.

*Third*, though Plaintiffs have reasserted their state law claims in the SAC, they have made no changes to save those claims from ERISA preemption.  In fact, this Court already dismissed Plaintiffs' state law claims as preempted because they bear on the relationship between an ERISA plan and its fiduciaries.  The Court will permit Plaintiffs to reallege the preempted state law claims *only if later* in the litigation Defendants are found not to be ERISA fiduciaries.  That has not occurred yet, and thus the state law claims should be, yet again, dismissed.

Like the FAC, this amended pleading confirms that Plaintiffs' claims cannot be salvaged by further amendment, especially those claims that are time-barred.  To avoid a wasteful, burdensome, and unduly prejudicial *fourth* round of motion practice on the *same* allegations, Plaintiffs' Second Amended Complaint should be dismissed with prejudice.

# BACKGROUND[2,]

## A.  Over Six Years Ago Defendants Identified Eight Potential Program Managers for the Program, Including Onset.[3]

Pension Consulting Alliance, Inc., or "PCA,"[4] was an independent investment consulting firm that provided "investment advisory services to pension plans and institutional investors . . . ."  SAC Ex. B at 2.  Defendant Judy Chambers served as a Managing Director of PCA.  *Id. ¶* 29; Ex. B.  Plaintiff Construction Laborers Pension Trust for Southern California (the "Pension Fund") is a multiemployer pension fund within the meaning of ERISA Section 3(37) and is administered by the members of the Pension Fund's Board of Trustees (the "Board").  *Id. ¶¶* 24-25.

Nearly ten years ago in November 2014, Chambers executed a consulting agreement with the Pension Fund on behalf of PCA (the "Consulting Agreement").  *Id. ¶* 36; Ex. B.  Under the Consulting Agreement, PCA agreed to assist the Pension Fund in developing an infrastructure investment program (the "Program") and identifying, vetting and recommending an investment manager to manage the Program.  *Id.* Ex. B at 3.   PCA also agreed to "oversee" the manager and conduct "annual portfolio review and monitoring," including by attending Board meetings.  *Id.*

---

[2] Pursuant to Fed. R. Civ. P. 12(b)(6), solely for purposes of this Motion to Dismiss, this Memorandum accepts the Complaint's well-pleaded allegations as true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

[3] As the parties and Court are aware of the allegations in this case from the parties' prior Motion to Dismiss briefing, the background is only restated to the extent relevant to the instant motion.  A full recitation of the background is contained in Defendants' Motion to Dismiss Memorandum, which Defendants incorporate by reference herein.  ECF No. 53-1 ("Mot. to Dismiss").

[4] Defendant Meketa Investment Group, Inc. is the successor to PCA.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Consistent with the Consulting Agreement, Chambers worked with the Board to draft an Infrastructure Investment Policy (the "Policy"), which the Board adopted in December 2014. *Id.* 6, 43, Ex. C. In March 2015, Defendants identified, vetted and discussed eight potential program managers with the Plaintiffs. *Id.* ¶¶ 54-55; Ex. D. Defendants summarized their due diligence and provided the Pension Fund with each manager's background, investment approach, geographic focus, investment type and sector focus. *Id.* Ex. D. After presenting the review of each of the eight potential Program Managers, Defendants suggested that the Pension Fund—and its investment adviser, Merrill Lynch—meet with Onset. *Id.* at 12. As the Presentation from March 2015 makes clear, Defendants recommended Onset, the only potential Program Manager that would focus its investment in California, a priority for Plaintiffs. *Id.* Ex. D.

### B. The Pension Fund Created a Limited Partnership, Vesting Exclusive Authority and Sole Discretion Over the Partnership's Investments and Investment Policy in Onset.

By January 2016, nearly a year after Defendants concluded their vetting and recommendation of Onset, the Pension Fund created a Limited Partnership. *Id.* ¶ 71; Ex. 1. Onset as the "General Partner," and the Pension Fund as the sole "Limited Partner," committed $303,030.30 and $30 million in capital, respectively, to the Partnership. *Id.* ¶ 71; Ex. 1 Schedule A. Instead of appointing a fiduciary "investment manager" as defined in ERISA § 3(38) to manage an infrastructure portfolio within the Pension Fund, the Pension Fund created a separate legal entity for the express purpose of ensuring that Onset would *not* be treated as a fiduciary under ERISA, thereby absolving Onset of any ERISA duty to comply with the Policy. *See* Mot. to Dismiss at 5-6.

The Limited Partnership Agreement ("LPA") governing the Partnership established two objectives: (1) to generate returns by investing in infrastructure company securities, and (2) to create opportunities for the Pension Fund's

beneficiaries "to obtain jobs providing labor, construction or other services" to those infrastructure companies. Ex. 1 § 1.9.1.[5]   To meet those objectives, the LPA vested *exclusive authority* and *sole discretion* in Onset to manage and operate the Partnership. *Id.* § 2.1.1.   Specifically, the LPA provided:

> The **management and operation** of the Partnership **and the formulation of investment policy** shall be **vested exclusively** in the General Partner. The General Partner shall, **in its sole discretion**, exercise those powers . . . on behalf and in the name of the Partnership as may be necessary and convenient for the purposes of the Partnership.

*Id.* (emphasis added).

Defendants also had no authority under the LPA to supervise Onset's conduct, significantly limiting what Defendants could do under the Consulting Agreement. *See* Ex. 1.   Moreover, the LPA did not contractually obligate Onset to comply with the Policy adopted by the Board in December 2014.  *Id.*   Instead, it granted Onset "exclusive[]" power over "the formulation of [the] investment policy" for the Partnership.  *Id.* § 2.1.1.

The Pension Fund terminated the Consulting Agreement with Defendants in September 2020. SAC ¶¶ 78, 122.   Onset served as General Partner of the Partnership from January 2016 to January 2022.  *Id.* ¶¶ 71, 127.   In the Spring of 2020, "NEPC, now serving as the investment adviser for the Pension Fund, vetted [a Partnership] investment" and advised on its valuation.  *Id.* ¶ 120.   Even though NEPC "was unable to find support for the valuation" of that investment, the Pension Fund did not negotiate Onset's removal as General Partner for over another year.  *Id.* ¶¶ 120, 127.

In May 2021—eight months *after* the Pension Fund terminated the Consulting Agreement with Defendants—Onset asked the Pension Fund to contribute an

---

[5] Numbered exhibits correspond to the accompanying Request for Judicial Notice.

additional $11 million to use for Partnership investing. *Id.* ¶¶ 122, 123. The Amended Complaint alleges that there was "tension" between Onset's request for "so much new funding" and Onset's claims that the Partnership was worth $54.9 million, leading the Pension Fund to hire "additional professional advisors" to "independently review the financial condition" of the Partnership. *Id.* ¶¶ 123-25. An "independent valuation" of the Partnership determined that its worth was at least $35 million *less* than what Onset had reported, "ultimately leading the Pension Fund to replace Onset as general partner." *Id.* ¶ 128.

### C.   Plaintiffs' Claims

Plaintiffs' SAC asserts the same four counts as the FAC. Count I, breach of fiduciary duty under ERISA, alleges that Defendants failed to: employ a prudent process to identify potential Infrastructure Fund managers; prudently recommend Onset; supervise Onset; and ensure Onset complied with the Policy. *Id.* ¶¶ 129-143. Those failures, Count I alleges, also breached Defendants' fiduciary duty to adhere to the Policy, a plan document under ERISA § 404(a)(1)(D). *Id.* ¶ 137.

Count II, breach of contract, which is asserted "only to the extent the Court finds that ERISA does not govern the relationship between the Pension Fund and Defendants," alleges that Defendant Meketa breached the Consulting Agreement by failing to oversee Onset and to alert the Pension Fund that Onset was not complying with the Policy. *Id.* ¶¶ 144-56.

Counts III, common law breach of fiduciary duty, and IV, negligence/gross negligence, which are also asserted "only to the extent the Court finds that ERISA does not govern the relationship between the Pension Fund and Defendants," each allege that Defendants breached duties of loyalty or care, by failing to: oversee Onset; propose a benchmark and risk measures; assist with portfolio target allocation and ranges; appropriately advise on investment structuring and commitment pacing; advise on portfolio construction; and "adequately identify, interview and conduct

due diligence on Onset or any other prospective managers for the Infrastructure Fund." *Id.* ¶¶ 157-71.

As explained below, each of these Counts fail to state a plausible claim for relief, and all should be dismissed with prejudice.

## <u>LEGAL STANDARD</u>

Rule 12(b)(6) requires dismissal of any complaint that fails to allege "a plausible entitlement to relief." *Twombly*, 550 U.S. at 559. Although factual allegations are accepted as true on a motion to dismiss, legal conclusions are not, (*Id.* at 555), nor are allegations that are contradicted by judicially noticeable documents or the documents referenced in the complaint. *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1096 (9th Cir. 2004); *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001). A complaint cannot escape dismissal with only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Yamauchi v. Cotterman*, 84 F. Supp. 3d 993, 1003, 1008 (N.D. Cal. 2015) (quoting *Twombly,* 550 U.S. at 555). Further, "a plaintiff fails to state a claim, and therefore dismissal is appropriate, where his failure to comply with the applicable statute of limitations is evident from the allegations of the complaint." *Id.* (citing *Seven Arts Filmed Ent. Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013)).

1

## **ARGUMENT**[6]

2

### **I.    COUNT I FAILS TO STATE A CLAIM UNDER ERISA.**

3

#### **A.    Plaintiffs' ERISA Claim as to Defendants' Conduct Prior to March 2, 2016 Remains Time-Barred.**

4

5      Under ERISA's six-year statute of repose, a plaintiff *cannot* recover for a

6    breach of fiduciary duty that occurred over six years ago unless it can demonstrate

7    that the defendant took affirmative steps to hide the breach.  29 U.S.C. § 1113; Order

8    at 10 ("To toll the six-year period through the fraud or concealment exception,

9    plaintiffs must allege that defendants took 'steps to hide [their] breach of fiduciary

10   duty'") (quoting *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1057 (9th Cir.

11   2020)).

12      In their SAC, Plaintiffs bring the same untimely imprudent vetting and

13   recommendation claims that this Court dismissed in the FAC:  Plaintiffs again assert

14   that Defendants failed to (1) "identify, interview, and conduct due diligence on

15   prospective" Program Managers; and (2) "act prudently in recommending Onset as

16   manager." SAC ¶¶ 21, 136.  These claims again fail because, according to the SAC,

17   Defendants vetted and recommended Onset in 2015, and Plaintiffs accepted that

18   vetting and recommendation *no later than* January 2016.  SAC ¶¶ 68, 71.  As this

19   Court concluded, "statements made and conduct by defendants earlier than March

20   2, 2016, are barred by the statute of limitations, unless tolling applies."[7]  Order at

21   10.

22

_____

23

[6] Defendants incorporate by reference all of the arguments asserted in their Motion

24   to Dismiss the First Amended Complaint, and waive none.  "Mot. to Dismiss; ECF

25   No. 64 ("Mot. to Dismiss Reply").

26   [7] Plaintiffs newly assert that Chambers approved of Onset managing an

27   inappropriate investment in February 2016.  SAC ¶ 77.  That conduct, like any

28   conduct that allegedly occurred before March 2, 2016, is also time-barred.  SAC ¶¶ 71, 77.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Plaintiffs have also failed to allege specific facts demonstrating that the "narrow" fraud or concealment exception applies here. *Yamauchi*, 84 F. Supp. 3d at 1006. Like its two predecessors, the SAC still lacks any allegations that Defendants "[took] steps to hide" a fiduciary breach. *Guenther*, 972 F.3d at 1057. Plaintiffs' allegation that Defendants' "presentations, advice, and recommendations []" concerning Onset" somehow "concealed" their allegedly imprudent vetting (SAC ¶¶ 116-17) falls far short of establishing "a separate affirmative act of concealment." *Id*. at 1057 n.10. To the extent those conclusory allegations rest on anything more than a supposed continuing duty to disclose allegedly material information about Onset, they are indistinguishable from the facts constituting Plaintiffs' breach of fiduciary duty claim. Order at 10 (quoting *Guenther*, 972 F.3d at 1058, n.10) ("the facts constituting the claim for breach of fiduciary duty alone cannot also serve as the basis for fraud or concealment—otherwise, the exception would swallow the rule").

Specifically, Plaintiffs assert that when Chambers "endorsed" Onset's proposal to invest in Repower Capital, Chambers *both* concealed the imprudent vetting and recommendation of Onset *and* breached her fiduciary duty to ensure Onset's compliance with the Policy. *See, e.g.*, SAC ¶¶ 76, 81-84. Similarly, per Plaintiffs, Defendants' "approval" of Onset's presentations *both* "concealed the fact that Onset did not meet the standards . . . set forth in the . . . Policy," *and* "breached [Defendants'] fiduciary duties to monitor Onset." *Id.* ¶ 85.[8] Likewise, Plaintiffs claim that when Defendants "recommended" Onset to the Pension Fund, they *both* "led the Pension Fund to believe that Defendants [] had prudently vetted Onset" *and* "failed to act prudently in recommending Onset." SAC ¶¶ 11, 21. Again, Plaintiffs

---

[8] *See also* SAC ¶ 101 ("Defendants approved Onset's presentations to the Board . . . breached their fiduciary duties **and** continued to conceal Onset's lack of qualifications and ability to carry out its role as the general partner of the Infrastructure Fund.") (emphasis added).

state that when Defendants "failed to disclose these facts" about Onset's manager to the Pension Fund, they *both* "hid[] their failure to vet Onset properly" *and* "breached their fiduciary duties" to recommend prudently.  *Id.* ¶¶ 66, 75, 82.

Where, as here, "plaintiffs have not alleged facts beyond those related to defendants' breaches of their fiduciary duties to toll the six-year period," their claims related to Defendants' pre-March 2016 conduct must be dismissed.  Order at 10; *Yamauchi*, 84 F. Supp. 3d at 1006 ("[O]ffering proof of the underlying breach of fiduciary duty is not enough . . . [to] establish the 'fraud or concealment' exception to the statute of limitations").

Guided by these same principles, the Seventh Circuit recently affirmed the dismissal of time-barred ERISA prudence claims in *Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*, No. 23-1073, 2024 U.S. App. LEXIS 9802, at *3 (7th Cir. Apr. 23, 2024).  *Appvion* concerned the sale of a company by its officers to its employees.  *Id.* at *3-4.  On behalf of the employees, plaintiff alleged that the officer defendants hired conflicted investment bankers who misrepresented the fair market value of the company.  *Id.* at *14-15.  Those misrepresentations, plaintiff claimed, tricked the employees into buying company shares under an ERISA plan at an inflated price.  *Id.*

Though the misconduct occurred outside of the statute of limitations, the *Appvion* plaintiff argued that the fraud or concealment exception should apply because the defendant officers "concealed" their breaches from plaintiff by: repeating and approving the allegedly fraudulent valuations; claiming that the investment banker was independent; and failing to disclose the investment banker's alleged conflict of interest.  *Id.* at *14-15.  The Seventh Circuit disagreed, finding that the plaintiff's allegations claiming an ERISA breach "[were] the same as his allegations of fraudulent concealment."  *Id.* at *15.[9]  As the Seventh Circuit

---

[9] Notably, the Seventh Circuit has an even broader view of ERISA's fraud or concealment exception than this Circuit.  While both Circuits require "affirmative

explained, to meet the fraud or concealment exception, the plaintiff had to—and failed to—allege "some trick or contrivance" to conceal the breach that was "separate" from the underlying breach. *Id.* at *14-15.[10]

Likewise, here Plaintiffs cannot use allegations that Defendants "recommended" Onset, "endorsed" Onset's qualifications, "approved" Onset's conduct, or "repeated" Onset's fraudulent valuations to plead fraud or concealment because that alleged conduct already serves as the basis for the alleged underlying breach of fiduciary duty. *See Appvion,* 2024 U.S. App. LEXIS 9802*,* at *13 (fraud or concealment "refers to 'steps taken by wrongdoing fiduciaries to cover their tracks'—that is, it focuses on 'steps taken by the defendant to hide the fact of the breach, rather than . . . the underlying nature of plaintiffs' claim'").

Moreover, even as amended, Plaintiffs' purported "concealment" allegations continue to allege, at most, that Defendants failed to disclose material facts about Onset to the Pension Fund. *See* SAC ¶¶ 15, 22, 58, 64-66, 69, 70, 80-82, 93, 97, 113. Specifically, Plaintiffs mischaracterize as "concealment" the following alleged

---

acts of concealment" to toll the statute of limitations, the Seventh Circuit permits a plaintiff to plead "self-concealing acts" or "genuine acts of concealment committed in the course of the underlying wrong." *Appvion*, 2024 U.S. App. LEXIS 9802, at *14. Conversely, the Ninth Circuit declined to extend the fraud or concealment exception to "self-concealing acts" and instead requires "that the facts constituting the claim for breach of fiduciary duty" be separate from those serving "as the basis for fraud or concealment[.]" *Guenther*, 972 F.3d at 1058 n.10. Without any "affirmative acts of concealment" at all, Plaintiffs here fail to plead the fraud or concealment exception under *either* standard.

[10] *See also In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig.*, 242 F.3d 497, 503 n.5 (3d Cir. 2001) ("We do not regard the fact that the alleged misrepresentations were repeated (as opposed to isolated) as satisfying the requirement that there be affirmative steps to conceal beyond the misrepresentations themselves."); *Ranke v. Sanofi-Synthelabo Inc.*, 436 F.3d 197, 204 (3d Cir. 2006) (holding even if fiduciaries "knew they made misrepresentations but decided to withhold that information from [plaintiffs], such conduct . . . is not 'fraud or concealment'").

non-disclosures:   that Onset was unqualified to manage the Partnership's investments; that Onset was violating the Policy; that Onset was misrepresenting investment valuations; and that Onset's manager was mired in financial difficulties. *See, e.g.*, SAC ¶ 101 (asserting Defendants' failure to inform Plaintiffs of fraudulent valuation metrics "conceal[ed] Onset's lack of qualifications"); *see also* SAC ¶¶ 81-82, 85-87.   None of these allegations can toll the statute of limitations because, as the Ninth Circuit makes plain, "fail[ure] to disclose material information . . . does not rise to the level of 'fraud or concealment'" under ERISA.   *See Guenther*, 972 F.3d at 1057; *see also Yamauchi*, 84 F. Supp. 3d at 1007 (quoting *McKeown v. Pac. Bell Directory*, No. C-97-0427 MHP, 1999 U.S. Dist. LEXIS 2281, at *5 (N.D. Cal. Feb. 26, 1999) ("At most, this is evidence of the underlying breach of misinformation itself, rather than intentional steps to hide the breach.").[11]

Of course, the SAC accuses Onset of fraud.   *See, e.g.*, SAC ¶¶ 98, 101, 104, 107, 110, 113.   *See also* Ex. 1.   Oddly enough, Plaintiffs also appear to allege that *Onset's* fraudulent conduct concealed Defendants' fiduciary breaches.   *See, e.g.*, SAC ¶ 85 (alleging "Onset presented to the Board . . . . presentations [that] contained material misrepresentations," and the "material misrepresentations concealed the fact that Onset did not meet the standards . . . set forth in the . . . Policy").   But

---

[11] Notably, Plaintiffs do not—nor could they—allege that Defendants *knew* any of this information they allegedly failed to disclose.   Instead, Plaintiffs allege that Defendants *knew or would have known* the information had they acted prudently. *See, e.g.*, SAC ¶ 17 ("**Either** Defendants prudently monitored Onset . . . and therefore **knew** Onset's valuations were false, or Defendants **did not know** those valuations were false because Defendants breached their fiduciary duties to monitor Onset prudently.").   Thus, under Plaintiffs' own theory of this case, the fraud or concealment exception cannot apply because no fiduciary could logically "take steps to hide" information the fiduciary *does not actually have*.   *See Yamauchi*, 84 F. Supp. 3d at 1006 (to show fraud or concealment, "affirmative steps" or "misrepresentations" must be done "knowingly" with "the intent to defraud" or "conceal").

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

*Onset's* fraud and misrepresentations cannot toll ERISA's statute of limitations over claims *against Defendants*. *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995) ("the [fraud or concealment] exception applies only when the defendant himself has taken steps to hide his breach of fiduciary duty").

Ultimately, Plaintiffs have no allegations with which to plead fraud or concealment by Defendants.[12] Plaintiffs conceded as much when they indicated their hope to fish for that evidence by subjecting Defendants to burdensome ERISA discovery.[13] *See* Apr. 15 Hearing Tr. 17:12-16 ("And with respect to the issue of **concealment** . . . it's the very nature of concealment that **we didn't have access to all of the facts, and those facts will become available in connection with discovery**…") (emphasis added). But, as this Court recognized, where the complaint on its face reveals that a claim is barred by the statute of limitations, the plaintiff must "plead facts" demonstrating affirmative acts of concealment. Apr. 15 Hearing Tr. 17:17-23.[14] *See also Guenther*, 972 F.3d at 1057; *Yamauchi*, 84 F. Supp. 3d at 1008. On the face of the SAC, Plaintiffs have no well-pled allegations that

---

[12] Predictably, Plaintiffs littered the SAC with conclusory assertions like "Defendants . . . continually concealed this breach from the Pension Fund," "Defendants actively misled the Pension Fund," and "Defendants . . . continued to hide their failure to vet Onset properly." *See, e.g.*, SAC ¶¶ 8, 82, 83. Such "conclusory allegations are not sufficient to withstand a motion to dismiss," *Thomas v. Mundell*, 572 F.3d 756, 763 (9th Cir. 2009) (citation omitted), especially when the fraud or concealment exception "has to be plead with particularity." Apr. 15 Hearing Tr. 18:8; *see also Yamauchi*, 84 F. Supp. 3d at 1010 (conclusory allegations of "affirmative steps of concealment" cannot satisfy Rule 8 or Rule 9 and thus do not toll ERISA's statute of limitations).

[13] *See Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt.*, 712 F.3d 705, 719 (2d Cir. 2013) ("[T]he prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests.").

[14] *See also Yamauchi*, 84 F. Supp. 3d at 1003, 1008.

---

Defendants "made *knowingly* false misrepresentations with the intent to defraud" or "undertook 'affirmative steps' to conceal any alleged fiduciary breaches." *Yamauchi*, 84 F. Supp. 3d at 1006 (emphasis added).  Accordingly, the statute of limitations is not tolled, and Plaintiffs' untimely claims concerning Defendants' pre-March 2016 conduct should be dismissed with prejudice. [15]

### B.   Plaintiffs' New Allegations Further Undermine Their Breach of ERISA Duties Claim.

ERISA §404's fiduciary duties are "context specific." *Bracalente v. Cisco Sys.*, No. 5:22-cv-04417-EJD, 2023 U.S. Dist. LEXIS 140678, at *9 (N.D. Cal. Aug. 11, 2023) (quoting *Fifth Third Bancorp v. Dudenhoeffer,* 573 U.S. 409, 425 (2014)).

In the specific context of this case, Plaintiffs do not and cannot dispute that the LPA granted Onset sole discretion and exclusive authority over the Infrastructure Fund and its investments. Ex. 1 § 2.1.1.  That undisputed fact—one that is appropriate for this Court to consider on a motion to dismiss—forecloses Plaintiffs' ERISA claim.  *See* Mot. to Dismiss at 14-16.  Given the undisputed LPA, Defendants had no authority (much less a legal mechanism) to require Onset to comply with the Policy, nor could they force Onset to submit to Defendants' oversight or supervision. *See* SAC ¶¶ 129-43; *id.* Ex. C at 12.  Thus, the fraudulent way in which Onset managed the Infrastructure Fund cannot be blamed on Defendants.  *See* Mot. to Dismiss at 16-19.

To the extent Defendants could and did oversee Onset, the SAC—like the FAC—provides no "direct allegations" that this oversight was imprudent. *Bracalente*, 2023 U.S. Dist. LEXIS 140678, at *9.  In fact, when the SAC describes

---

[15] Further, even if Plaintiffs' assertions concerning Defendants' pre-March 2, 2016 conduct were timely—and they are not—none of them state a claim for imprudence, as none of the alleged non-disclosures in Defendants' initial vetting and recommendation of Onset bear on Onset's "knowledge, skill, and expertise necessary to manage" the Infrastructure Fund.  Mot. to Dismiss at 11-12.

---

Defendants' conduct, it portrays Defendants performing their responsibilities under the Consulting Agreement and the Policy, within the confines of the LPA. *See* SAC ¶¶ 85-92, 113, 115-17. Specifically, Plaintiffs allege that Defendant Chambers "regularly reviewed and approved draft Board presentations prepared by Onset," attended Board meetings where Onset presented, and "made presentations to the Board" about Onset. *Id.* ¶¶ 85, 115. As Plaintiffs allege, all these tasks were those that Defendants had agreed to undertake in the Consulting Agreement and under the Policy. *Id.* ¶¶ 5-7, 37-38, 53.

Thus, the SAC itself alleges that Defendants *were* monitoring Onset, and it never explains *how* Defendants could have known of Onset's misconduct through that monitoring. For example, the SAC alleges that in October 2018, Chambers approved Onset's capital call for an investment in one of the Portfolio Companies, "ITL". *Id.* ¶ 95. Far from alleging imprudent supervision, the SAC acknowledges that Chambers approved the capital call *after* reviewing Onset's memorandum, which described ITL, its strengths and prospects. *See id.* In other words, according to the SAC's allegations and contrary to Plaintiffs' legal conclusions, Chambers did not blindly—*i.e.*, imprudently—sign off on Onset's capital call requests. *See id.* ¶¶ 38, 93-95.[16] Nor did Chambers blindly let Onset make its presentations to the Board without her input. *Id.* ¶ 38. As the SAC alleges, Chambers "routinely reviewed and

---

[16] Plaintiffs' allegations that Chambers "approved" capital call requests are inconsistent with the judicially noticeable, undisputed, plain terms of the LPA. *See* Mot. to Dismiss at 15, n.7; *Tobias v. Nvidia Corp.*, No. 20-CV-06081-LHK, 2021 U.S. Dist. LEXIS 173539, at *16 (N.D. Cal. Sept. 13, 2021) ("a court need not accept as true allegations contradicted by judicially noticeable facts . . . . [m]ere 'conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss'") (internal citation omitted) (quoting *Adams v. Johnson*, 355 F.3d 1179,1183 (9th Cir. 2004)). Under the LPA, the Pension Fund was required to fulfill every capital call request reviewed by Chambers or not. Mot. to Dismiss at 15, n.7.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

approved Onset's fund performance summaries and presentations *before* Onset made its presentations to the Board." *Id.*

That Onset's memoranda or presentations allegedly contained misrepresentations does not render Chambers' review or approval of them imprudent. *See id.* ¶¶ 16, 85. To the contrary, as Plaintiffs now concede, Defendants *were not* responsible for performing valuations or calculating the internal rate of revenue for the Infrastructure Fund. *Id.* ¶¶ 112-13. If those valuations and IRR calculations were false or misleading, as the SAC claims, Plaintiffs fail to allege any facts demonstrating that Chambers knew or could have known of those misrepresentations, especially when PCA had disclaimed any obligation to perform comprehensive due diligence on the Infrastructure Fund's investments. *See id.* Ex. B at 3. The SAC also fails to explain *what* monitoring Chambers could have undertaken to force Onset—who did not answer to Defendants—to confess to those misrepresentations. In sum, the SAC makes plain that even with the supervision set forth in the Consulting Agreement and the Policy, within the confines of the LPA, nothing arose to prompt Defendants to suspect that Onset was defrauding the Pension Fund.[17] Indeed, the only reasonable inference that can be drawn here is that Onset, with the exclusive authority and discretion it had under the LPA, was able to—and allegedly did—lie to Defendants about the status of the Infrastructure Fund. *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 682 (2009) (quoting *Twombly*, 550 U.S. at

---

[17] If Plaintiffs intend to accuse Defendants of *knowing* Onset was committing fraud and failing to report it, they must—and fail to—do so with well-plead, non-conclusory allegations; the rote recitations in the SAC that Defendants "knew or would have known" of Onset's fraud had they "monitor[ed] Onset prudently in accordance with their fiduciary duties" do not suffice. *See, e.g.*, SAC ¶¶ 20, 85, 97, 101, 104; *Harris v. Koenig*, 602 F. Supp. 2d 39, 53 (D.D.C. 2009) (Rule 9(b) does not permit a plaintiff to rely on "wholly conclusory allegations of fraud, or contentions that [D]efendants '**knew or should have known**' facts that were supposedly misrepresented or not disclosed") (emphasis added).

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

567).  Defendants were as much a victim of Onset's fraud as Plaintiffs were, and thus the remainder of Plaintiffs' ERISA claim should be dismissed with prejudice. *See* Apr. 15 Hearing Tr. at 6:6-7.

## II.   ERISA PREEMPTS PLAINTIFFS' STATE LAW CLAIMS.

ERISA preempts any state law claim that "bears on an ERISA-regulated relationship." *In re Out of Network Substance Use Disorder Claims Against Unitedhealthcare*, No. SACV 19-2075 JVS (DFMx), 2020 U.S. Dist. LEXIS 153773, at *12 (C.D. Cal. July 29, 2020).  For that reason, this Court has already dismissed Plaintiffs' three state law claims, as each bears on the relationship between an ERISA plan and its fiduciaries.  Order at 11 ("[A]ll three of plaintiffs' state law claims . . . concern the relationship between the Pension Fund and defendants in their capacity as ERISA fiduciaries of the Pension Fund.").

In the SAC, Plaintiffs have asserted their state law claims yet again.  The state law claims in the SAC are essentially copied and pasted from the FAC, except the Plaintiffs emphasize that these claims are brought in the alternative.  SAC ¶¶ 144-171.  But, as this Court already held, "regardless of whether plaintiffs plead their claims in the alternative, ERISA preempts plaintiffs' state law claims because they bear on an ERISA-regulated relationship."  Order at 11 (citing *Cox v. Eichler*, 765 F. Supp. 601, 605 (N.D. Cal. 1990)).

Further, while the Court dismissed Plaintiffs' state law claims without prejudice, this Court also made clear that Plaintiffs could only reassert their preempted state law claims *if*, *later* in the litigation, Defendants are found not to be fiduciaries.  Apr. 15 Hearing Tr. at 20:5-8 ("I believe the state law claims are preempted . . . *if*, in fact, down the road, it turned out that [Defendants] were not a fiduciary, [Plaintiffs] would certainly have the right to allege those state law claims.") (emphasis added).  Unless and until that occurs—which it has not[18]—

---

[18] Plaintiffs' SAC plainly alleges that Defendants were ERISA fiduciaries of an ERISA-regulated plan, SAC ¶¶ 1, 4, 6, 7, 23, 25, 26, 81, 130, and Defendants

1  Plaintiffs should not be allowed to pursue their preempted state law claims.[19]  This

2  Court should dismiss those claims again.

3  ## III.   THE COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

4  As this Court noted, "leave to amend may be denied when 'the court

5  determines that the allegation of other facts consistent with the challenged pleading

6  could not possibly cure the deficiency.'"  Order at 6 (quoting *Schreiber Distrib. Co.*

7  *v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  Moreover, now

8  that Plaintiffs have amended their complaint multiple times, this Court's "discretion

9  to deny leave to amend is 'particularly broad.'"  *See Salameh v. Tarsadia Hotel*, 726

10  F.3d 1124, 1133 (9th Cir. 2013).

11  Plaintiffs cannot change the chief allegations of their case.  Instead, they have

12  tried—three times now—to manipulate those allegations to rescue their untimely

13  ERISA claims, and they have failed on each go-round.  Worse, on their most recent

14  attempt, Plaintiffs' amended allegations weakened the remainder of their ERISA

15  claim that survived Defendants' last Motion to Dismiss.  Plaintiffs have proven—

16  three times now—that further amendment would be futile.  *Kopelev v. Boeing Co.*,

17  No. 21-55937, 2022 U.S. App. LEXIS 34042, at *2 (9th Cir. Dec. 9, 2022)

18  ("Dismissal with prejudice was not an abuse of discretion because any amendment

19  of the ERISA claims would have been futile.").

20

21  _____

22  acknowledge that they were ERISA fiduciaries to the extent they rendered

23  "investment advice for a fee," had discretionary authority of administration in the

24  plan, or exercised any "discretionary authority or discretionary control" over the plan

    or its assets.  Mot. to Dismiss Reply at 16 n.6.

25  [19] Indeed, as this Court noted, depending upon the progress of this litigation, the

26  Court may lack jurisdiction over the state law claims.  Apr. 15 Hearing Tr. at 20:9-

27  10 ("Whether, in fact, there is jurisdiction [over the state law claims] is a different

    issue which would have to be reserved for a later day.").  Defendants reserve all

28  rights with respect to Plaintiffs' preempted state law claims and waive none.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

19

Dismissal with prejudice is particularly warranted for Plaintiffs' time-barred ERISA claims.  Plaintiffs know that Defendants' conduct prior to March 2016 is both outside of the statute of limitations period and uncovered by any tolling agreements between the parties.  *See* 29 U.S.C. § 1113; Order at 10 ("the parties[] agree[] that March 2, 2016, is the last date on which claims could accrue that fall within both the statute of limitations and the confines of the 2023 Tolling Agreements").  Moreover, this Court has already instructed Plaintiffs that those claims are not viable without allegations to toll the statute of limitations.  Order at 10.  Yet, even with the Court's guidance, Plaintiffs have failed to plead any non-conclusory allegations that Defendants "took 'steps to hide'" a fiduciary breach.  *Id.* That is because—as Plaintiffs themselves concede—they do not have any such allegations.   Apr. 15 Hearing Tr. 17:12-16 (insisting that "facts will become available in connection with discovery").  Even more so than for the rest of the SAC, further amendment of these time-barred claims would be futile.  *Dutro v. Cty. of Contra Costa*, No. 12-cv-02972 NC, 2013 U.S. Dist. LEXIS 142920, at *19 (N.D. Cal. Sept. 30, 2013) (dismissing with prejudice time barred claims because further amendment "would be futile and unduly prejudicial to … defendants").

Further amendment would also be unduly prejudicial to Defendants.  *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987) (leave to amend is "subject to the qualification that amendment of the complaint does not cause the opposing party undue prejudice").  Each time Plaintiffs have amended their time-barred allegations, Defendants "have been forced to defend against claims based on alleged conduct that occurred many years ago." *Dutro*, 2013 U.S. Dist. LEXIS 142920, at *19.  The purpose of ERISA's statute of limitations is to grant Defendants repose from the exact type of untimely, near decade-old claims Plaintiffs keep trying to advance in this case. *Landwehr v. Dupree*, 72 F.3d 726, 733 (9th Cir. 1995) ("[The] six-year outer limit on most ERISA actions should adequately protect

1 | defendants from untimely claims"). Leave to amend for the *fourth* time should be
2 | denied.

### CONCLUSION

4 | For the foregoing reasons, the Second Amended Complaint should be
5 | dismissed with prejudice.

8 | Dated: May 29, 2024

*/s/ Robyn C. Crowther*
Robyn C. Crowther (SBN 193840)
**STEPTOE LLP**
633 West 5th Street, Suite 1900
Los Angeles, CA 90071

Diana K. Lloyd (*admitted pro hac vice*)
Caroline Trusty (*admitted pro hac vice*)
Alexander L. Bevans (*admitted pro hac vice*)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA 02110

Eric G. Serron (*admitted pro hac vice*)
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036

*Attorneys for Defendants*
MEKETA INVESTMENT GROUP,
INC. and JUDY CHAMBERS

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Defendant Meketa Investment Group, Inc. and Defendant Judy Chambers, certifies that this brief contains 6,340 words, which complies with the word limit of L.R. 11-6.1.

Dated:   May 29, 2024                       _/s/ *Robyn C. Crowther*
                                            Robyn C. Crowther