SCHONBUCH HALLISSY LLP
11999 San Vicente Boulevard
Suite 300
Los Angeles, California 90049
Telephone (310) 556-7900
Facsimile (310) 556-2807
Paul R. Fine, State Bar No. 053514
*fine@schonbuchhallissy.com*
Geronimo Perez, State Bar No. 223657
*gperez@schonbuchhallissy.com*

OF COUNSEL:
SCHULTE ROTH & ZABEL LLP
919 THIRD AVENUE
NEW YORK, NY 10022
TELEPHONE: 212.756.2000
Ronald E. Richman (Admitted *PHV*)
*ronald.richman@srz.com*
Taleah E. Jennings (Admitted *PHV*)
*taleah.jennings@srz.com*
Frank W. Olander (Admitted PHV)
*frank.olander@srz.com*
Andrew B. Lowy (Admitted *PHV*)
*andrew.lowy@srz.com*

Attorneys For Plaintiffs

CONSTRUCTION LABORERS
PENSION TRUST FOR SOUTHERN
CALIFORNIA, and JON PRECIADO,
SERGIO RASCON, ADRIAN
ESPARZA, ALEX ARTIAGA,
MICHAEL DEA, HERTZ RAMIREZ,
PETER SANTILLAN, JEROME DI
PADOVA, CATHERINE
MONCADA, ALAN LUDWIG, JEFF
STEWART, LANCE BOYER, BILL
BOYD, and JOHN COOPER, as
TRUSTEES OF THE
CONSTRUCTION LABORERS
PENSION TRUST FOR SOUTHERN
CALIFORNIA, on behalf of the
Construction Laborers Pension Plan for
Southern California

_____

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA and the BOARD OF TRUSTEES FOR THE CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA each on behalf of the Construction Laborers Pension Plan for Southern California, <br><br> Plaintiffs, <br><br> vs. <br><br> MEKETA INVESTMENT GROUP, INC. and JUDY CHAMBERS, <br><br> Defendants. | Case No. 2:23-cv-07726-CAS-PVC [Judge:  Christina A. Snyder, Dept. 8D] <br><br> MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT <br><br> Hearing Date:  August 5, 2024 <br> Hearing Time: 10:00 a.m. |

SCHONBUCH HALLISSY LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

RELEVANT FACTUAL ALLEGATIONS ............................................................. 3

    A.    The Pension Fund Retains Defendants as Investment Consultants and ERISA Fiduciaries ................................................................................. 3

    B.    The Pension Fund Retains Onset on Defendants' Recommendation........................... 5

    C.    Defendants Take Affirmative Steps to Conceal their Imprudent Vetting and Recommendation of Onset ...................................... 5

    D.    Defendants Fail to Prudently Monitor Onset ................................ 7

ARGUMENT .......................................................................................................... 8

I.    DEFENDANTS' CONCEALMENT OF THEIR (A) FAILURE TO PRUDENTLY VET ONSET, AND (B) KNOWINGLY IMPRUDENT RECOMMENDATION OF ONSET, TOLLS THE STATUTE OF LIMITATIONS .............................................. 9

II.    THE COURT SHOULD REJECT DEFENDANTS' ATTEMPT TO  REOPEN THE COURT'S DENIAL OF ITS MOTION TO DISMISS  FOR FAILURE TO STATE A CLAIM ............................................................................................ 15

    A.    As The Court Already Has Held, Plaintiffs Have Sufficiently Alleged That Defendants Breached Their Fiduciary Obligations Under ERISA ............................. 15

    B.    The Law of the Case Doctrine Bars Defendants From Relitigating Their Prior Unsuccessful Motion to Dismiss........................... 17

    C.    Defendants Have Not Articulated Any Legitimate Basis to Override the Law of the Case Doctrine ....................................... 17

III.    PLAINTIFFS REASSERTED THEIR STATE LAW CLAIMS TO PRESERVE THEIR RIGHTS........................................................................ 22

CONCLUSION ..................................................................................................... 22

SCHONBUCH
HALLISSY LLP

i

_____

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**CASES**                                                                                    **Page(s)**

*Abrams v. Blackburne & Sons Realty Cap. Corp.*,
   No. 2:19-cv-06947-CAS (AS), 2019 WL 8640656 (C.D. Cal. Dec. 2, 2019) .............. 9, 12, 14

*Appvion, Inc. Ret. Sav. & Emp. Stock Ownership Plan v. Buth*,
   99 F.4th 928 (7th Cir. 2024) ............................................................................ 13, 14

*Asner v. SAG-AFTRA Health Fund*,
   557 F. Supp. 3d 1018 (C.D. Cal. 2021) .................................................................... 8

*Barker v. Am. Mobil Power Corp.*,
   64 F.3d 1397 (9th Cir. 1995) .................................................................................. 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................... 9

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995) ..................................................................... 14, 15, 22

*Guenther v. Lockheed Martin Corp.*,
   972 F.3d 1043 (9th Cir. 2020) ...................................................................... 9, 13, 14, 15

*Howard v. Shay*,
   100 F.3d 1484 (9th Cir. 1996) ............................................................................. 15

*Hurtado v. Rainbow Disposal Co.*,
   No. 8:17-cv-01605-JLS-DFM, 2018 WL 3372752 (C.D. Cal. July 9, 2018) ...................... 16

*Pit River Home & Agric. Coop. Ass'n v. United States*,
   30 F.3d 1088 (9th Cir. 1994) ........................................................................ 17, 18

*Solis v. Couturier*,
   No. 2:08-cv-02732-RRB-GGH, 2009 WL 1748724 (E.D. Cal. June 19, 2009) .................... 17

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) .................................................................................. 8

*Terraza v. Safeway Inc.*,
   241 F. Supp. 3d 1057 (N.D. Cal. 2017) .................................................................. 15

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015) ............................................................................................. 13

*United States v. Jingles*,
   702 F.3d 494 (9th Cir. 2012) ............................................................................... 17

ii

SCHONBUCH
HALLISSY LLP

*United States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) .................................................. 9

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ................................................ 18

**STATUTES**

29 U.S.C. §186(c)(5) .................................................................. 3

29 U.S.C. §1104(a)(1)(B) ......................................................... 15

29 U.S.C. §1104(a)(1)(D) ......................................................... 15

29 U.S.C. §1113 ..................................................................... 2, 9

Employee Retirement Income Security Act of 1974 ("ERISA")

    ERISA Section 3(37), 29 C.F.R. §2510.3-101(d) .................... 3

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................ 2, 8, 9

SCHONBUCH
HALLISSY LLP

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Construction Laborers Pension Trust for Southern California (the "Pension Fund") and Jon Preciado, Sergio Rascon, Adrian Esparza, Alex Artiaga, Michael Dea, Hertz Ramirez, Peter Santillan, Jerome Di Padova, Catherine Moncada, Alan Ludwig, Jeff Stewart, Lance Boyer, Bill Boyd, and John Cooper, as Trustees of the Pension Fund (the "Trustees"), each on behalf of the Construction Laborers Pension Plan for Southern California (the "Plan"), respectfully submit their Opposition to the Motion to Dismiss filed by Defendants Meketa Investment Group, Inc. ("Meketa") and Judy Chambers (the "Motion") (ECF No. 72).

## PRELIMINARY STATEMENT[1]

In this action, Plaintiffs seek redress for Defendants' serial breaches of their duties as fiduciaries under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), which have caused substantial harm to the participants and beneficiaries of the Pension Fund. Defendants, in their Motion, seek to prevent Plaintiffs from proving their claims or even taking necessary discovery on issues specifically enumerated in the Second Amended Complaint ("SAC").

As the Court already has held, Plaintiffs' allegations are sufficient to state a claim that Defendants breached their fiduciary duties under ERISA by, *inter alia*: (i) advising the Pension Fund to enter into an inappropriate infrastructure investment program, (ii) failing to adequately vet potential managers for that investment program, (iii) recommending Onset Capital Partners, LLC ("Onset") to manage the investment program, while failing to disclose critical information about Onset's formation, experience, and principals, (iv) failing to prudently monitor and advise the Trustees on Onset's strategy, investment process, deal pipeline, and compliance with the applicable investment policy (which Defendants drafted) despite expressly agreeing to do so, and

---

[1] Capitalized terms not otherwise defined have the meanings ascribed to them in the Second Amended Complaint.

1

(v) repeatedly affirmatively misleading the Trustees into believing the investment was performing well.  Plaintiffs have added particularized allegations showing that Defendants actively concealed breaches that occurred outside of ERISA's six-year statute of limitations period, thereby tolling the statute of limitations.

Defendants advance two primary arguments for dismissal of the SAC under Federal Rule of Civil Procedure 12(b)(6).

*First*, Defendants argue that Plaintiffs' claims for imprudent vetting and recommendation of Onset are time-barred because those breaches occurred between November 2014, when Plaintiffs retained Defendants, and January 2016, when Plaintiffs' "accepted [Defendants'] recommendation and hired Onset."  (Mot. at 1.)  As detailed in the SAC, from the time Onset was retained until Defendants were fired in 2020, Defendants repeatedly and affirmatively misled Plaintiffs to believe that Onset was an experienced and capable steward of the Pension Fund's investment and was managing that investment well.  Plaintiffs' allegations of fraud or concealment are sufficient to toll the six-year limitations period under 29 U.S.C. §1113.

*Second*, Defendants argue, for the second time, that Plaintiffs have failed to state any claim for breach of ERISA fiduciary duties.  The Court already has rejected that argument, holding that Plaintiffs sufficiently "alleged that Defendants are ERISA fiduciaries of the Pension Fund and breached their fiduciary duties through several actions and inactions, such as by failing to supervise Onset, to follow the relevant governing documents, and to generally act prudently in their work."  (Minute Entry at 10.)  That decision is law of the case, and the Court should reject Defendants' attempt to reargue it.

Plaintiffs strengthened their allegations that Defendants failed to prudently monitor Onset in the SAC.  The SAC alleges, *inter alia*, that Defendants (i) knew (or should have known) that Onset was making investments that violated the applicable investment policy and (ii) were aware

2

SCHONBUCH
HALLISSY LLP

of numerous red flags that alerted (or should have alerted) them that Onset did not have the ability to manage the Infrastructure Fund and was engaging in misconduct to hide its failures. Defendants did not disclose any of these failings to the Trustees; instead, they regularly advised the Trustees that Onset was managing the Pension Fund's investment well.

The Court should deny Defendants' Motion in its entirety.

## RELEVANT FACTUAL ALLEGATIONS

The Pension Fund is a Taft-Hartley pension fund established and maintained pursuant to Section 302(c)(5) of the Labor Management Relations Act, 29 U.S.C. §186(c)(5).  (SAC ¶24.) The Pension Fund, through its Board of Trustees (the "Board"), sponsors and administers the Plan. (*Id.* ¶25.) The Plan is a multiemployer pension plan within the meaning of Section 3(37) of ERISA.  (*Id.*)  The individual plaintiffs are Trustees of the Pension Fund.  (*Id.* ¶26)

### A.  *The Pension Fund Retains Defendants as Investment Consultants and ERISA Fiduciaries*

In mid-2014, the Pension Fund wanted to diversify its portfolio by investing in infrastructure projects in California.  (SAC ¶34.)  In September 2014, Chambers pitched Pension Consulting Alliance Inc.'s ("PCA")[2] consulting services to the Pension Fund.  (*Id.* ¶35.)  Meketa touted its "years of experience providing advice and insight on infrastructure programs for leading pension plan investors."  (*Id.*)  Meketa's presentation stated that Meketa, if retained, would, *inter alia*:  (i) "[s]erve as a fiduciary to the pension plan," (ii) "[c]reate a comprehensive investment policy," and (iii) "[i]dentify and perform due diligence on potential program manager(s)."  (*Id.*)

On November 14, 2014, the Pension Fund retained Meketa to provide investment consulting services related to a potential infrastructure fund in which the Pension Fund would be

_____

[2]  PCA merged with Meketa in or around January 2019.  For ease of reference, PCA and/or Meketa shall be referred to herein as "Meketa."

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

SCHONBUCH HALLISSY LLP

the sole investor.  (*Id.* ¶¶4, 36–37.)  The agreement memorializing the terms of Meketa's engagement (the "Meketa Agreement") expressly provided that Meketa "would contract as a fiduciary on behalf of the [Pension Fund]."[3]  (*Id.* ¶37.)

In the Meketa Agreement, Meketa agreed, *inter alia*, to (1) assist the Pension Fund in developing an infrastructure investment program and (2) perform a program manager search and due diligence.  (*Id.* ¶¶39–42.)  The Meketa Agreement obligated Meketa to (i) "identify, interview and conduct due diligence on potential Program Manager(s) who will have investment discretion"; (ii) "negotiate terms with the Program Manager on behalf of the [Pension Fund]"; and (iii) "oversee the Program Manager's strategy, investment selection process, deal pipeline and investment process."  (*Id.* ¶41.)

The Pension Fund paid Meketa (i) a one-time fee of $50,000 for "Phase I," which included "program development and policies related to the program" and (ii) an annual fee of $75,000 for "Phase II," which included "on-going program manager due diligence, program monitoring and reporting."  (*Id.* ¶42.)  All told, the Pension Fund paid Meketa at least $575,000 between 2014 and 2020.  (*Id.*)

In accordance with the Meketa Agreement, Defendants developed the Infrastructure Investment Policy (the "Investment Policy") for the Pension Fund.  (*Id.* ¶43.)  On December 9, 2014, at Defendants' suggestion, the Pension Fund adopted the Investment Policy, which outlined investment objectives that would guide the infrastructure fund's manager.  (*Id.* ¶¶44–53.)  The Investment Policy obligated Meketa, as the General Consultant, to "***monitor the investment process for compliance with this policy***."  (*Id.* ¶¶50–53 (emphasis added).)

---

[3]  It is immaterial that Onset was not also an ERISA fiduciary (*see* Mot. at 5).  When, as here, pension funds make private equity investments in private entities, it is standard procedure for the general partner not to be subject to ERISA fiduciary duties as a result of the "VCOC exception."  That exception does not apply to Defendants.  *See* 29 C.F.R. §2510.3-101(d).

SCHONBUCH
HALLISSY LLP

B.    *The Pension Fund Retains Onset on Defendants' Recommendation*

On March 10, 2015, Defendants presented their assessment of potential investment managers to implement the Investment Policy and manage the Infrastructure Fund to the Board (the "March 2015 Presentation").  (*Id.* ¶54.)  The March 2015 Presentation identified eight potential managers but recommended that the Pension Fund's Board meet *only* with Onset.  (*Id.* ¶¶55, 67.)

The March 2015 Presentation painted a deliberately misleading picture of Onset by failing to disclose, *inter alia*, that (i) Onset's three "partners" had never before worked together, (ii) Chambers had a direct role in Onset's creation, (iii) Onset had previously been an entity wholly owned by Wendell McCain with no experience overseeing infrastructure investments, and (iv) McCain's driver's license had been suspended or revoked for unknown reasons and he had been cited in North Carolina on numerous occasions over a ten-year-period for driving without a license.  (*Id.* ¶¶56–66.)  Defendants also failed to advise the Pension Fund that the proposed initial investment of $30 million would be inadequate to accomplish the goals outlined in the Investment Policy.  (*Id.* ¶¶69–70.)

At Defendants' recommendation, the Pension Fund chose Onset as the Program Manager responsible for managing the infrastructure investment.  (*Id.* ¶71.)  On January 12, 2016, the Infrastructure Fund was formed, with Onset as the general partner and an entity created by the Pension Fund as the sole limited partner.  (*Id.* ¶71.)

C.    *Defendants Take Affirmative Steps to Conceal Their Imprudent Vetting and Recommendation of Onset*

Unbeknownst to Plaintiffs, Onset had no hope of running a successful infrastructure fund in accordance with the Investment Policy—it, and its principals, had **no experience** in infrastructure investments of the kind contemplated by the Pension Fund, **no established process** for conducting due diligence into potential investments, valuing investments, or monitoring

5

investments, and **no centralized recordkeeping system** or other infrastructure necessary to carry on a successful investment fund.  (*Id.* ¶¶55–61.)  Defendants knew that, if the Pension Fund became aware of those facts, it would question whether Defendants breached their fiduciary duties by either (i) failing to adequately vet Onset or (ii) recommending Onset despite knowing that Onset was incapable of managing the Infrastructure Fund.  (*Id.* ¶¶11, 55–64.)  In each of their interactions with Plaintiffs, from the time Onset was retained until Defendants were fired in 2020, Defendants concealed those facts by affirmatively misleading Plaintiffs into believing that Onset was a capable steward of the Infrastructure Fund that was managing the Pension Fund's investment well.  (*See, e.g.*, *id.* ¶¶15–18.)

For example, in February 2016, Chambers reviewed Onset's first proposed investment— which fell outside the parameters of the Investment Policy and required an amendment the LPA— and assured the Pension Fund she was comfortable with the "sector" of the proposed investment, the general deal terms, and the qualifications of Onset for making such an investment.  (*Id.* ¶¶73–77.)  Chambers "formally endorsed the investment at a March 8, 2016 Board meeting and distributed a letter with her endorsement."  (*Id.* ¶77.)  Approximately four years later, the investment was worth $0.  (*Id.* ¶84.)

As detailed in the SAC, during their tenure, Defendants continued to conceal their ongoing breaches by affirmatively misleading the Trustees to reasonably believe that Onset was a competent manager.  Specifically, Defendants, *inter alia*:  (i) advised the Pension Fund that Onset's investments were in accord with the Investment Policy that Defendants had created (*id.* ¶81); (ii) continued to actively support Onset despite facts that called into question the character of Onset's principals (*id.* ¶82); (iii) reviewed *and approved* Board presentations containing material misrepresentations and capital calls for investments that were inappropriate, speculative, and violated the Investment Policy (*id.* ¶¶85–96); and (iv) *approved and adopted* Onset's fraudulently

6

SCHONBUCH HALLISSY LLP

inflated valuations of the Portfolio Companies (*id.* ¶¶101–106). To conceal their breach in vetting and recommending Onset to the Trustees, Defendants intentionally misled Plaintiffs and turned a blind eye to red flags that were later quickly identified by an independent review. (*Id.* ¶¶101, 105–11, 120–21.)

### D. *Defendants Fail to Prudently Monitor Onset*

Between March 2016 and October 2018, Onset invested the Pension Fund's $30 million contribution in nine Portfolio Companies. (*Id.* ¶79.) Those investments were inconsistent with the terms of the Investment Policy. Specifically, the Investment Policy required, *inter alia*, that (i) the portfolio be "appropriately diversified according to life cycle" and (ii) funds "be allocated to infrastructure projects located in California." (*Id.* ¶80.) The Portfolio Companies were all early stage companies and at least three of them focused, in part, on investments located outside California. (*Id.*)

During this period, Defendants repeatedly approved Board presentations prepared by Onset regarding the Infrastructure Fund's portfolio and performance and attended Board meetings at which Onset delivered the presentations. (*Id.* ¶85.) Each of the presentations contained material misrepresentations concerning the Infrastructure Fund's investments and valuations, but Defendants failed to raise any concerns with the Board that Onset did not meet the standards of quality, stability, integrity, and experience set forth in the Infrastructure Investment Policy. (*Id.* ¶¶85–92.) By doing so, Defendants affirmatively misled the Trustees and concealed the fact that Onset was incapable of managing the Infrastructure Fund.

Defendants also ignored or failed to recognize numerous red flags that alerted, or should have alerted, them to serious problems with Onset's investments—specifically, that Onset placed inflated values on the Infrastructure Fund's investments to cover up the fact that those investments were declining in value. (*Id.* ¶¶98–100.) In particular, Onset: (i) employed flawed valuation

7

SCHONBUCH HALLISSY LLP

metrics that deviated from industry standards (*id.* ¶101); (ii) used inconsistent methodologies in its valuation memoranda (*id.* ¶105); (iii) treated certain loans to Portfolio Companies as fully collectible even though the Portfolio Companies were in default on the loans (*id.* ¶¶107–108); and (iv) hid defaulted loans by rolling them into new loans and treating the new loans as fully collectible (*id.* ¶¶110–111). Defendants should have recognized these problems, and advised the Trustees, if they had been prudently monitoring Onset. (*Id.* ¶112.) By failing to report these red flags to Plaintiffs and instead affirmatively endorsing Onset's valuations, Defendants affirmatively misled the Trustees and concealed the fact that Onset was not capable of managing the Infrastructure Fund.

In the spring of 2020, Meketa requested an additional $1 million from the Pension Fund for Onset to invest in one of the Portfolio Companies. (*Id.* ¶¶118–120.) The Pension Fund's investment advisor vetted the investment and found no support for the valuation claimed by Meketa and Onset. (*Id.* ¶120.) Had Defendants been fulfilling their obligations, they would have recognized this and advised the Trustees. (*Id.*) The Pension Fund shortly thereafter terminated Meketa's services and hired additional professional advisors to determine the financial condition of the Infrastructure Fund. (*Id.* ¶¶122–125.) An independent valuation of the portfolio concluded that, as of December 31, 2020, the Portfolio Companies were worth less than a third of what Onset claimed. (*Id.* ¶128.)

## ARGUMENT

On a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a court must accept as true all material allegations in the complaint, and all reasonable inferences to be drawn from them." *Asner v. SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018, 1030 (C.D. Cal. 2021). A court must read the complaint in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). To withstand a motion to

SCHONBUCH
HALLISSY LLP

dismiss under Rule 12(b)(6), a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## I.   DEFENDANTS' CONCEALMENT OF THEIR (A) FAILURE TO PRUDENTLY VET ONSET AND (B) KNOWINGLY IMPRUDENT RECOMMENDATION OF ONSET TOLLS THE STATUTE OF LIMITATIONS

Defendants argue that Plaintiffs' claims for breach of fiduciary duty arising from Defendants' imprudent vetting and recommendation of Onset "are time-barred under ERISA because the alleged breaches occurred over six years ago." (Mot. at 10.)  That argument fails because the SAC contains well-pleaded allegations that Defendants engaged in fraud or concealment sufficient to toll the six-year limitations period.  *See* 29 U.S.C. §1113.

To toll the statute of limitations on the basis of fraud or concealment, a plaintiff must show that "a defendant has 'taken steps to hide [its] breach of fiduciary duty.'"  *Guenther v. Lockheed Martin Corp.*, 972 F.3d 1043, 1057 (9th Cir. 2020) (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995)).  Thus, a plaintiff must demonstrate "affirmative conduct upon the part of the defendant" that would, "under the circumstances of the case, lead a reasonable person to believe that he did not have a claim for relief."  *Id.*

A complaint's allegations of fraudulent concealment are sufficient to survive a motion to dismiss where they are "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  *Abrams v. Blackburne & Sons Realty Cap. Corp.*, No. 2:19-cv-06947-CAS(AS), 2019 WL 8640656, at *5 (C.D. Cal. Dec. 2, 2019) (quoting *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016)).

Plaintiffs allege that Defendants' vetting of potential managers and subsequent recommendation to retain Onset was imprudent because, *inter alia*, (i) Onset and its principals had "no experience running an infrastructure fund and had no prior business relationship with each

9

SCHONBUCH HALLISSY LLP

other" (SAC ¶9) and (ii) Onset lacked any "established process for conducting diligence, investing, valuing, or monitoring the types of investments envisioned by the Pension Fund"— indeed, it "did not even have any centralized system or server to retain records or coordinate activity" (*id.* ¶10).

Plaintiffs allegations demonstrate that, both at the time they breached their fiduciary duties by imprudently vetting potential managers and recommending Onset and for years thereafter, Defendants affirmatively concealed their breaches by repeatedly portraying Onset as a capable steward of the Pension Fund's investment in the Infrastructure Fund.

For instance, in the March 2015 Presentation, Defendants painted a deliberately misleading picture of Onset by failing to disclose, *inter alia*, that (i) Onset's three "partners" had never worked together before, (ii) Chambers had a direct role in Onset's creation, (iii) Onset was an entity wholly owned by McCain that did not focus on infrastructure investments, and (iv) McCain's history of unlawful conduct. (*Id.* ¶¶63–67.)

Not only did Defendants fail to correct that false portrayal, but they repeatedly doubled down on it by affirmatively misrepresenting that Onset was a capable steward of the Pension Fund's investment and was managing the investment well.

For example, in February 2016, Chambers reviewed Onset's first proposed investment— which fell outside the parameters of the Investment Policy and required an amendment to the LPA—and assured the Pension Fund that she was "comfortable with the 'sector' of the proposed investment, the general deal terms, ***and the qualifications of the Onset team for making an investment of the type proposed***." (SAC ¶¶73–77 (emphasis added).) She knew, at that time, that Onset was not qualified and that Defendants did not properly vet Onset's qualifications, but concealed those facts by stating otherwise. (*Id.* ¶75.) Chambers "formally endorsed the investment at a March 8, 2016 Board meeting." (*Id.* ¶77.) Chambers' assurances were intended

to, and did, conceal from the Pension Fund Defendants' breaches of fiduciary duties in failing to prudently vet potential managers and recommending Onset to manage the Pension Fund's investment despite the fact that Onset and its principals lacked the skills, experience, or infrastructure necessary to do so.

The SAC is replete with additional detailed allegations about Defendants' subsequent attempts to conceal their breaches by repeatedly affirmatively portraying Onset as a capable and qualified manager to the Trustees.  In their interactions with Plaintiffs, Defendants took affirmative actions to, *inter alia*:

- Conceal from the Trustees that Onset was making long term, speculative investments in the Infrastructure Fund that violated the Investment Policy (*id.* ¶81);

- Conceal from the Trustees facts arising during Onset's tenure that called into question the character of Onset's principals and would have caused the Pension Fund to reconsider its ongoing relationship with Onset, including McCain's financial difficulties and Onset Capital's alleged scheme to distribute personal protective equipment in partnership with a known felon (*id.* ¶82);

- Conceal Onset's material misrepresentations concerning investments and valuations by reviewing and approving numerous presentations Onset made to the Board containing such misrepresentations— including presentations made on November 14, 2017, March 12, 2018, and May 14, 2019 (*id.* ¶¶85–92);

- Conceal Onset's failure to follow the Investment Policy by repeatedly reviewing and approving Onset's capital calls for investments that were inappropriate, speculative, and/or violated the Investment Policy (*id.* ¶¶93–96.);

- Conceal Onset's misconduct from the Trustees by approving Onset's fraudulently inflated valuations of the Portfolio Companies, (*id.* ¶¶101–106);

- Conceal from the Trustees that Onset's representations to the Pension Fund regarding the Infrastructure Fund's IRR were false—including the statement that the IRR had "been calculated by the [Infrastructure] Fund's independent accountants, Eisner Amper Fund Services, LLC" (*id.* ¶¶113); and

11

- Falsely represent that Onset was successfully managing the Infrastructure Fund's investments by making presentations to the Board that incorporated Onset's fraudulently inflated valuations (*id.* ¶¶115–116).

Those allegations are "specific enough to give [D]efendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge." *Abrams*, 2019 WL 8640656, at *5.

Defendants' central argument is that none of those allegations are sufficient to toll the statute of limitations because the "alleged conduct already serves as the basis for the alleged underlying breach of fiduciary duty." (Mot. at 12.) That argument fails to recognize that there are two different sets of breaches involved here. In the first set (pre-January 2016), Defendants breached their duties by failing to prudently vet Onset and by recommending Onset. In the second set (from January 2016 onward), Defendants failed to prudently monitor Onset and also concealed their earlier breaches. Defendants' concealment demonstrates that the statute of limitations should be tolled for the pre-2016 conduct **and** it demonstrates separate breaches that occurred after 2016. Thus, contrary to Defendants' arguments, their concealment does not "already serve[] as the basis for the alleged [pre-2016] breach of fiduciary duty." (*Id.*) Defendants' concealment involved different actions than the underlying breach and occurred after the underlying breach.

Put another way, Plaintiffs' allegations properly demonstrate **both** Defendants' (i) concealment of their fiduciary breaches arising from their imprudent recommendation and vetting **and** (ii) their fiduciary breaches arising from their failure to prudently monitor Onset. Defendants themselves highlight a number of such allegations, but fail to explain how allegations supporting one breach (failure to monitor) cannot also demonstrate concealment of a **separate** breach (imprudent vetting and recommendation). (*See, e.g.*, Mot. at 10 ("Plaintiffs assert that when Chambers 'endorsed' Onset's proposal to invest in Repower Capital, Chambers *both* concealed the imprudent vetting and recommendation of Onset *and* breached her fiduciary duty to

12

SCHONBUCH HALLISSY LLP

ensure Onset's compliance with the Policy.").)  Such a rule would lead to an absurd result.  The statute of limitations would be tolled when a defendant concealed its breach, ***except*** when that defendant committed ***another breach*** in connection with concealing its initial breach.

Even assuming, *arguendo*, that Plaintiffs asserted only a single breach and not separate vetting/recommendation and monitoring breaches (which is not the case), Plaintiffs' claim for that single breach would be timely "so long as the alleged breach of the continuing duty occurred within six years of suit." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015).  The allegations discussed above demonstrate that Defendants continued to recommend and support Onset as an appropriate manager of the Infrastructure Fund to the time the Pension Fund terminated Defendants' services in 2020.  Regardless of whether the SAC alleges two separate breaches or a single breach, Plaintiffs' claim is timely.

The authorities Defendants cite are not to the contrary.  *Guenther* holds that "facts constituting the claim for breach of fiduciary duty *alone* cannot also serve as the basis for fraud or concealment" and are thus insufficient to toll the statute of limitations.  *Guenther*, 972 F.3d at 1057 n.10 (emphasis added).[4]  Plaintiffs allege that Defendants affirmatively concealed their breach for *years* by committing other acts after they recommended Onset.  (*See, e.g.*, SAC ¶¶81–82, 85–92, 93–96, 100–106, 113, 115–116.)

Defendants' reliance on *Appvion, Inc. Retirement Savings & Employee Stock Ownership Plan v. Buth*, 44 F.4th 928 (7th Cir. 2024), is similarly misplaced.  There, the Seventh Circuit found, in a case involving the valuation of Appvion for an ESOP, that plaintiff had failed to demonstrate that the statute of limitations should be tolled on the basis of fraudulent concealment because the "same representations" formed the basis of both plaintiffs' concealment argument and

---

[4]  Notably, *Guenther* was decided on a motion for summary judgment and thus does not support dismissal on a motion to dismiss.  *Guenther*, 972 F.3d at 1051.

the underlying breach that allegedly was concealed.  *Id.* at *941–42.  The Seventh Circuit based its decision on the fact that the alleged fraud or concealment of the improper valuation of Appvion in government filings and the underlying breach of fiduciary duty by improperly valuing Appvion were both based on the same thing—the valuation of Appvion.  *Id.*  Meketa's alleged concealment in the SAC is based on a series of fiduciary breaches by Meketa that were different than Meketa's initial breach of failing to properly vet and recommend Onset.  Meketa's breaches that constituted concealment include Meketa's affirmative acts that caused the Trustees to reasonably believe that Onset was properly managing the Infrastructure Fund, which are set forth herein at pages 6-8.  *See Guenther*, 972 F.3d at 1057.

Finally, in an attempt to avoid what is likely to be damaging discovery, Defendants disingenuously contend that Plaintiffs "conceded" that they hoped to "fish for evidence by subjecting Defendants to burdensome ERISA discovery."  (Mot. at 14.)  Not so.  Plaintiffs have satisfied their obligation to allege facts that inform Defendants of "the particular misconduct which is alleged to constitute the fraud charged."  *Abrams*, 2019 WL 8640656, at *5.  Plaintiffs have not yet had an opportunity to conduct discovery, so certain information about Defendants' knowledge and conduct is unknown to them.  That is neither nefarious nor unusual, especially where, as here, Plaintiffs allege that Defendants affirmatively concealed information from them.[5]

In sum, the Complaint alleges "affirmative conduct upon the part of [Defendants] which would, under the circumstances of the case, lead a reasonable person to believe that he did not

---

[5]  Similarly, Defendants fault Plaintiffs for not alleging that "Defendants *knew* any of [the] information they allegedly failed to disclose."  (Mot. at 13 n.11.)  Plaintiffs do not—and, at this stage of the litigation, cannot—have complete visibility into what Defendants knew or did not know.  *See Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995) (even under Rule 9(b), plaintiffs "are not expected to plead with specificity the defendant's state of mind").  Plaintiffs' point is that, had Defendants prudently monitored Onset, Onset's misconduct would have been glaringly obvious.  Defendants, however, never disclosed any of that misconduct to Plaintiffs, so they either *knew* the information and failed to disclose it, or utterly failed to monitor Defendants and therefore did *not know* the information.  Either way, Defendants breached their duty.

14

SCHONBUCH HALLISSY LLP

have a claim for relief." *Guenther*, 972 F.3d at 1057. As such, the six-year limitations period should be tolled.

## II.   THE COURT SHOULD REJECT DEFENDANTS' ATTEMPT TO REOPEN THE COURT'S DENIAL OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

ERISA imposes duties on plan fiduciaries that "are the highest known to the law." *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) (internal quotation marks omitted). An ERISA fiduciary must, *inter alia*, discharge its duties (i) "with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use," 29 U.S.C. §1104(a)(1)(B), and (ii) "in accordance with the documents and instruments governing the plan," 29 U.S.C. §1104(a)(1)(D).

### A.   As the Court Already Has Held, Plaintiffs Have Sufficiently Alleged That Defendants Breached Their Fiduciary Obligations Under ERISA

"To state a claim for breach of fiduciary duty, a complaint does not need to contain factual allegations that refer directly to the fiduciary's knowledge, methods, or investigations at the relevant times." *Terraza v. Safeway Inc.*, 241 F. Supp. 3d 1057, 1070 (N.D. Cal. 2017). Rather, "the court may be able to reasonably infer from the circumstantial factual allegations that the fiduciary's decision-making process was flawed." *Id.* Indeed, "the circumstances surrounding alleged breaches of fiduciary duty may frequently defy particularized identification at the pleading stage." *Concha*, 62 F.3d at 1503.

To an even greater extent than was the case in the FAC (which survived a motion to dismiss), the SAC includes detailed factual allegations from which the Court could reasonably infer (and already has reasonably inferred) that Defendants imprudently failed "to monitor and review the Pension Fund's investment with Onset." (*See* SAC ¶20; *see also* Minute Entry at 10.) Specifically, Plaintiffs allege that Defendants knew (or should have known) that Onset was making investments in the Infrastructure Fund that violated the Investment Policy, yet failed to

15

SCHONBUCH HALLISSY LLP

take any action or disclose those violations to the Pension Fund. (*Id.* ¶¶80–84.) Those allegations support an inference that Defendants breached their duty of prudence by either (i) failing to identify investments that were inconsistent with the Investment Policy or (ii) failing to notify the Pension Fund that Onset was making investments that were inconsistent with the Investment Policy despite knowing that Onset was doing so. (Minute Entry at 10.)

Plaintiffs also allege that Defendants ignored numerous red flags that alerted, or should have alerted, them to Onset's fraudulent conduct, including:

- Onset's use of flawed valuation metrics that deviated from industry standards (SAC ¶101);

- Onset's inconsistent use of valuation methodology in its valuation memoranda (*id.* ¶105);

- Onset's decision to treat loans to Portfolio Companies as fully collectible despite the fact that the Portfolio Companies were in default (*id.* ¶¶107–108);

- Onset's attempt to hide loans in default by rolling them into new loans and treating the new loans as fully collectible (*id.* ¶¶110–111); and

- A request (by Defendants) in the spring of 2020 for an additional $1 million investment in GeoGenCo even though the Pension Fund's new investment adviser (NEPC) could find no support for the claimed valuation of that company (*id.* ¶¶120–121).

Taken together, those red flags, at a minimum, should have alerted Defendants to the possibility that Onset was engaging in misconduct. A prudent fiduciary faced with those red flags would have investigated further and/or conveyed its concerns to the Pension Fund. Defendants did nothing of the sort. Instead, they uncritically accepted Onset's fraudulently inflated valuations and repeated them in periodic reports to the Pension Fund. (*Id.* ¶17.)

The SAC sets forth sufficient facts to show that Defendants "knew or should have known about [Onset's] misconduct and failed to remedy the situation." *Hurtado v. Rainbow Disposal Co.*, No. 8:17-cv-01605-JLS-DFM, 2018 WL 3372752, at *13 (C.D. Cal. July 9, 2018) (quoting

16

SCHONBUCH
HALLISSY LLP

---

*Solis v. Couturier*, No. 2:08-cv-02732-RRB-GGH, 2009 WL 1748724, at \*7 (E.D. Cal. June 19, 2009)). Therefore, as the Court already has held, the SAC contains allegations sufficient to state a claim against Defendants for breach of the duty of prudence. *Id.*

**B.** ***The Law of the Case Doctrine Bars Defendants From Relitigating Their Prior Unsuccessful Motion to Dismiss***

"Under the 'law of the case' doctrine, a court [will not] reexamin[e] an issue previously decided by the same or higher court in the same case." *United States v. Jingles*, 702 F.3d 494, 499 (9th Cir. 2012) (citation omitted). Thus, a "decision on a factual or legal issue must be followed in all subsequent proceedings in the same case . . . unless the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice." *Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1096–97 (9th Cir. 1994) (internal quotation marks and citations omitted).

Defendants argue, as before, that Plaintiffs fail to state a claim for breach of ERISA fiduciary duties. That argument is a thinly veiled attempt to reframe the same arguments the Court already has rejected in the hopes of getting a different result this time.

Tellingly, Defendants purport to incorporate the *entirety* of their prior motion to dismiss into the Motion. (Mot. at 9 n.6.) As such, Plaintiffs also incorporate by reference all of the arguments raised in their opposition to that motion (ECF No. 61) and waive none. For the same reasons the Court rejected Defendants' arguments the first time around, it must do the same again. *See Jingles*, 702 F.3d at 499; *Pit River*, 30 F.3d at 1096–97.

**C.** ***Defendants Have Not Articulated Any Legitimate Basis to Override the Law of the Case Doctrine***

To disregard the law of the case, Defendants must show that "controlling authority has since made a contrary decision of the law" or that the Court's prior decision was "clearly

17

SCHONBUCH HALLISSY LLP

erroneous and would work a manifest injustice." *Pit River*, 30 F.3d at 1096–97.  Defendants do not make either of those arguments.  Instead, they assert that while Plaintiffs "basic allegations have not changed," the amendments contained in the SAC "weaken Plaintiffs' claims."  (Mot. at 2–3.)  That is not a basis to override the law of the case doctrine, nor is it true.

*First*, Defendants argue that "the LPA granted Onset sole discretion and exclusive authority over the Infrastructure Fund and its investments," which purportedly "forecloses Plaintiffs' ERISA claim."  (Mot. at 15.)  Defendants made a substantively identical argument in their prior motion to dismiss (*see* ECF No. 53-1, at 14–16), which the Court noted in its Minute Entry (*see* Minute Entry at 8 ("defendants claim that they lacked authority to monitor Onset due to the Infrastructure Fund's structure")).  The Court rejected that argument, holding that "plaintiffs have sufficiently pled the remainder of their breach of fiduciary duty claim to survive a motion to dismiss."  (Minute Entry at 10.)

Defendants make no effort to show that "additional allegations" in the SAC have strengthened their argument for dismissal, let alone strengthened it to such an extent that the law of the case doctrine would not apply.  Indeed, the SAC strengthens Plaintiffs' claim that Defendants acted imprudently by making clear that, contrary to Defendants' prior representations to the Court, "Defendants participated in the negotiation of the LPA by conferring with the Pension Fund's attorneys concerning the business terms in the LPA."  (SAC ¶72.)  Defendants were expressly obligated under the Meketa Agreement to "negotiate terms with the Program Manager on behalf of SoCal Laborers."  (*Id.*)  If Defendants believed that the structure of the Infrastructure Fund hampered or prevented them from exercising oversight over Onset, they had a duty to so inform the Pension Fund—especially given that they were paid $75,000 per year to do just that—and propose alternative structures that would have allowed them to exercise oversight over Onset.  *See Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004)

1   (fiduciary has a duty to "employ[] the appropriate methods to investigate the merits of the

2   investment and to structure the investment").  Defendants cannot absolve themselves of

3   responsibility by pointing to the Infrastructure Fund's structure and allocation of authority.

4       Much of Defendants' argument here rests on the same faulty reasoning Defendants

5   employed in their last motion.  Specifically, Defendants assert that they could not have breached

6   their fiduciary duties to monitor Onset because they lacked the power to *compel* Onset to take

7   certain actions.  (*See, e.g.*, Mot. at 15 (Defendants "had no authority … to require Onset to comply

8   with the Investment Policy, nor could they force Onset to submit to Defendants' oversight or

9   supervision").)  In sum, Defendants argue that, even though they were obligated to negotiate terms

10  with Onset and were paid $75,000 annually to monitor Onset, they were powerless to do *anything*.

11  That is a red herring.  Defendants had extensive access to information concerning the

12  Infrastructure Fund, the Portfolio Companies, and Onset's actions as the Program Manager.  (*See,*

13  *e.g.*, SAC ¶¶78–120.)  Regardless of whether Defendants had any direct control over Onset, they

14  should have—and a prudent fiduciary would have—reported issues with Onset's performance to

15  the Pension Fund, instead of repeatedly misleading the Trustees.  Defendants consistently failed to

16  do so, thereby breaching their fiduciary duties.  (*See, e.g.*, *id.* ¶11.)  Further, as set forth above (*see*

17  *supra*, Section I), the reason Defendants did not do so is because they sought to conceal their

18  earlier fiduciary breaches.

19      *Second*, Defendants argue that the SAC "portrays Defendants as performing their

20  responsibilities under the Consulting Agreement and the Policy" by alleging that Chambers

21  "'regularly reviewed and approved draft Board presentations prepared by Onset,' attended Board

22  meetings where Onset presented, and 'made presentations to the Board' about Onset."  (Mot. at

23  16.)  Those allegations are not "new"—they are virtually ***identical*** to those contained in the First

24  Amended Complaint ("FAC") which Defendants already moved (unsuccessfully) to dismiss.  (*See*

25

26

27

28

SCHONBUCH
HALLISSY LLP

FAC ¶67.)  The additional detail alleged, *i.e.*, that Chambers herself made two presentations to the Board, in which she "failed to raise any concerns about Onset's investments or performance" (SAC ¶115), increases Defendants' culpability.  It does not, as Defendants seem to suggest, demonstrate that Chambers prudently monitored Onset.  To the contrary, it shows that Chambers had the opportunity to identify and raise concerns.  Those concerns were quickly identified through a subsequent independent review.  (*Id.* ¶¶125–26.)

*Third*, Defendants seize on so-called "new" allegations regarding a capital call at Portfolio Company ITL to argue that Plaintiffs "acknowledge[] that Chambers approved the capital call *after* reviewing Onset's memorandum, which described ITL, its strengths and prospects."  (Mot. at 16.)  This allegation also was made in the FAC.  (*See* FAC ¶33 (alleging that Chambers "reviewed and approved" capital call requests).)[6]  The SAC merely adds particularized details regarding some of the instances in which Chambers approved capital call requests.  (SAC ¶¶90–96.)  That additional detail does not alter any of the facts that the Court considered in denying Defendants' motion to dismiss the FAC.  Further, the SAC does not contain any allegation that Chambers *reviewed* Onset's memorandum.  Plaintiffs allege that she approved two capital calls and infer that the second approval was "on the apparent strength of a memorandum from Onset."  (*Id.* ¶95.)

Even assuming, *arguendo*, Chambers actually reviewed the memorandum, it does not follow that she acted prudently in approving Onset's capital call requests.  (Mot. at 16.)  At the time she approved the ITL capital call, ITL's entire management team had left the company and the company had no commercial products.  (SAC ¶95.)  Instead of performing *any* independent evaluation of ITL, which would have uncovered those facts, Chambers uncritically accepted

---

[6]  Defendants argue, once again, that the LPA did not authorize Chambers to approve capital call requests submitted by Onset.  (Mot. at 16 n.16.)  But again, Defendants do not dispute that Chambers did, *in fact*, review and provide her approval of such requests on at least *four* separate occasions.  (*See* SAC ¶38.)

Onset's false representations about ITL. (*Id.* ¶¶95–96.) Indeed, the SAC details at least *three* instances (including the first capital call for ITL) in which Chambers approved capital calls totaling nearly $4 million with *no* indication that she received or reviewed any documentation. (*See id.* ¶¶94–96.) That is not prudent oversight.

The same is true with respect to Chambers' review and approval of "Onset's memoranda or presentations" (Mot. at 17), which Plaintiffs allege contained "material misrepresentations concerning investments and valuations" (SAC ¶85). Defendants cite no authority holding that an ERISA fiduciary can meet its duty of prudence by simply *reviewing* and accepting at face value memoranda or presentations that are false or misleading, and Plaintiffs are aware of none.

*Fourth*, Defendants assert that Plaintiffs "now concede[] Defendants *were not* responsible for performing valuations or calculating the internal rate of [return] for the Infrastructure Fund." (Mot. at 17 (citing SAC ¶¶112–113).) That assertion is misleading, at best. While Defendants were not charged with performing valuations, they were responsible for monitoring and overseeing Onset. (SAC ¶78.) Had Defendants carried out those responsibilities, they would have known that Onset's valuations were false. (*Id.* ¶101.) As alleged in Paragraph 112 of the SAC, Defendants acted imprudently by adopting Onset's baseless valuations and parroting them to the Pension Fund. (*Id.* ¶112.) Paragraph 113 of the SAC states only that Onset falsely represented to the Pension Fund that the Infrastructure Fund's IRR had been calculated by EisnerAmper Fund Services, LLC. (*Id.* ¶113.) Defendants would have known that was false had they prudently monitored Onset. Defendants know that Plaintiffs did not "concede" in those allegations that Defendants were not responsible for detecting irregularities in the valuations of the Infrastructure Fund's IRR.[7]

---

[7] Defendants wrongly imply that Rule 9(b)'s heightened pleading standard applies to Plaintiffs' breach of fiduciary duty claims. (Mot. at 17 n.17.) Plaintiffs do not allege that Defendants committed fraud; they allege that *Onset*

21

Accordingly, virtually all of the arguments Defendants raise in the instant motion have already been considered and rejected by the Court, and Defendants do not identify any "additional allegations" in the SAC that call the Court's prior decision into question.

## III. PLAINTIFFS REASSERTED THEIR STATE LAW CLAIMS TO PRESERVE THEIR RIGHTS

The SAC asserts three state law claims against Defendants "[i]n the alternative, and only to the extent the Court finds that ERISA does not govern the relationship between the Pension Fund and Defendants." (*See, e.g.*, *id.* ¶23.) Plaintiffs recognize that the Court already has dismissed the state law claims without prejudice (Minute Entry at 11) and re-assert those claims solely to preserve their rights to (i) revive them if the Court ultimately determines that Defendants were not ERISA fiduciaries and/or (ii) appeal the dismissal of those claims.[8]

## <u>CONCLUSION</u>

The Court should deny Defendants' Motion in its entirety.

Dated: June 28, 2024

SCHULTE ROTH & ZABEL LLP

By:  */s/ Ronald E. Richman*

Ronald E. Richman (Admitted *PHV*)
Taleah E. Jennings (Admitted *PHV*)
Frank W. Olander (Admitted *PHV*)
Andrew B. Lowy (Admitted *PHV*)

919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000

committed fraud, which Defendants either knew or would have known had they monitored Onset prudently. (*See, e.g.*, SAC ¶¶20, 85, 97, 101, 104.) That claim is not subject to Rule 9(b). *See Concha* 62 F.3d at 1502 ("[W]e have never applied Rule 9(b) in cases in which the plaintiffs allege a breach of fiduciary duty but do not allege fraud.").

[8] Defendants argue that the Court should deny Plaintiffs the opportunity to amend the SAC. (Mot. at 19-21.) Defendants fail to articulate any reason to preclude Plaintiffs from further amending their pleading, now or later in the case. Plaintiffs reserve the right to request leave to amend the SAC if necessary and appropriate.

SCHONBUCH HALLISSY LLP

SCHONBUCH
HALLISSY LLP

Attorneys for Plaintiffs
CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,
and JON PRECIADO, SERGIO RASCON,
ADRIAN ESPARZA, ALEX ARTIAGA,
MICHAEL DEA, HERTZ RAMIREZ,
PETER SANTILLAN, JEROME DI
PADOVA, CATHERINE MONCADA,
ALAN LUDWIG, JEFF STEWART,
LANCE BOYER, BILL BOYD, and JOHN
COOPER, as TRUSTEES OF THE
CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,
on behalf of the Construction Laborers
Pension Plan for Southern California

Paul R. Fine
Geronimo Perez
Attorneys for Plaintiffs
CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,
and JON PRECIADO, SERGIO RASCON,
ADRIAN ESPARZA, ALEX ARTIAGA,
MICHAEL DEA, HERTZ RAMIREZ,
PETER SANTILLAN, JEROME DI
PADOVA, CATHERINE MONCADA,
ALAN LUDWIG, JEFF STEWART,
LANCE BOYER, BILL BOYD, and JOHN
COOPER, as TRUSTEES OF THE
CONSTRUCTION LABORERS PENSION
TRUST FOR SOUTHERN CALIFORNIA,
on behalf of the Construction Laborers
Pension Plan for Southern California

23

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,955 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 28, 2024

_/s/ Ronald E. Richman_
Ronald E. Richman

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

## **CERTIFICATE OF SERVICE**

I certify that on June 28, 2024, a copy of MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT was served electronically through the Court's electronic filing system upon all parties appearing on the Court's ECF service list.

Dated: June 28, 2024

_/s/ Ronald E. Richman_
Ronald E. Richman

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT