1  SCHONBUCH HALLISSY LLP
   11999 San Vicente Boulevard
2  Suite 300
   Los Angeles, California 90049
3  Telephone (310) 556-7900
4  Facsimile (310) 556-2807
   Paul R. Fine, State Bar No. 053514
5  *fine@schonbuchhallissy.com*

6  OF COUNSEL:
   SCHULTE ROTH & ZABEL LLP
7  919 THIRD AVENUE
   NEW YORK, NY 10022
8  TELEPHONE: 212.756.2000
   Ronald E. Richman (Admitted *PHV*)
9  *ronald.richman@srz.com*
   Taleah E. Jennings (Admitted *PHV*)
10 *taleah.jennings@srz.com*
   Frank W. Olander (Admitted PHV)
11 *frank.olander@srz.com*
   Andrew B. Lowy (Admitted *PHV*)
12 *andrew.lowy@srz.com*

13 Attorneys For Plaintiffs

14 CONSTRUCTION LABORERS PENSION
   TRUST FOR SOUTHERN CALIFORNIA,
15 and JON PRECIADO, SERGIO RASCON,
16 ADRIAN ESPARZA, ALEX ARTIAGA,
   MICHAEL DEA, HERTZ RAMIREZ,
17 PETER SANTILLAN, JEROME DI
18 PADOVA, CATHERINE MONCADA,
   ALAN LUDWIG, JEFF STEWART,
19 LANCE BOYER, BILL BOYD, and JOHN
20 COOPER, as TRUSTEES OF THE
   CONSTRUCTION LABORERS PENSION
21 TRUST FOR SOUTHERN CALIFORNIA,
22 on behalf of the Construction Laborers
   Pension Plan for Southern California

23

24

25

26

27

28

JOINT RULE 26(f) REPORT

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, and JON PRECIADO, SERGIO RASCON, ADRIAN ESPARZA, ALEX ARTIAGA, MICHAEL DEA, HERTZ RAMIREZ, PETER SANTILLAN, JEROME DI PADOVA, CATHERINE MONCADA, ALAN LUDWIG, JEFF STEWART, LANCE BOYER, BILL BOYD, and JOHN COOPER, as TRUSTEES OF THE CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, on behalf of the Construction Laborers Pension Plan for Southern California,<br><br>Plaintiffs,<br><br>vs.<br><br>MEKETA INVESTMENT GROUP, INC. and JUDY CHAMBERS,<br><br>Defendants. | Case No. 2:23-cv-07726-CAS-PVC<br><br>[Judge: Hon. Christina A. Snyder, Dept. 8D]<br><br>**JOINT RULE 26(f) REPORT** |

Plaintiffs Construction Laborers Pension Trust for Southern California (the "Pension Fund"), Jon Preciado, Sergio Rascon, Adrian Esparza, Alex Artiaga, Michael Dea, Hertz Ramirez, Peter Santillan, Jerome Di Padova, Catherine Moncada, Alan Ludwig, Jeff Stewart, Lance Boyer, Bill Boyd, and John Cooper, as Trustees of the Construction Laborers Pension Trust for Southern California ("Plaintiffs") and Defendants Meketa Investment Group, Inc. ("Meketa") and Judy Chambers ("Chambers") (collectively, the "Defendants") (together with Plaintiffs, the "Parties"), submit this Joint Rule 26(f) Report in accordance with Rule 26(f) of the Federal Rules of Civil Procedure and Rule 26-1 of the Local Rules of the United States District Court for the Central District of California ("Rule 26-1").

**1. Statement of the Case.**

    a. **Plaintiffs' Statement:**

As set forth in further detail in Plaintiffs' Second Amended Complaint (Dkt. 69), Plaintiffs bring this action to hold Defendants accountable for multiple breaches of their fiduciary duties.

In 2014, the Pension Fund sought to make a $30 million investment in infrastructure and retained Defendants to, *inter alia*, (i) vet and recommend potential investment managers for the investment and (ii) monitor the investment manager for the duration of the investment. (SAC ¶¶ 4-5.) Defendants agreed to serve as an ERISA fiduciary. (*Id.* ¶ 4.)

Defendants recommended the Pension Fund retain Onset General Partner LLC ("Onset")—a group of three individuals, led by Chambers' friend from business school—to manage the Pension Fund's investment. (*Id.* ¶¶ 54-68.) None of Onset's principals had ever managed an infrastructure fund before or worked with any of the other Onset principals previously. (*Id.* ¶¶ 58-59.) Defendants either did not know that Onset was not equipped to manage Defendants' investment because Defendants failed to properly vet Onset, or Defendants knew Onset was not capable of managing the investment but recommended Onset anyway. Either way, Defendants breached their

fiduciary duty by recommending Onset and causing Plaintiffs to retain Onset to manage the investment. Defendants made the situation worse by taking additional affirmative actions, including by committing additional breaches of their fiduciary duties, to conceal the initial breaches they committed.

Following Onset's retention, with Defendants' assistance, the Pension Fund invested with Onset through a fund-of-one limited partnership. (*Id.* ¶¶ 71-72.) Through September 2020, the Pension Fund paid Defendants each year to monitor Onset. (*Id.* ¶ 78.) During that time, Defendants, *inter alia*: (i) routinely met with Onset to review and approve Onset's presentations to the Pension Fund's Board of Trustees, (ii) approved certain of Onset's investments, (iii) approved numerous capital calls Onset made to the Pension Fund, and (iv) affirmatively led the Pension Fund's Trustees to believe that Onset was doing an excellent job investing the Pension Fund's investment. (*See, e.g., id.* ¶¶ 84-117.) Through those acts, Defendants caused the Pension Fund to believe that Onset was performing well and that Onset was capable of managing the Pension Fund's investment. Unfortunately, that was not the case. In reality, Onset committed the Pension Fund's money to investments that violated the Infrastructure Investment Policy, which Defendants drafted, and then fraudulently inflated the valuations of those investments. (*Id.*)

Were it not for Defendants' wrongful behavior and manifest breaches of contractual and fiduciary duties in vetting prospective managers, Onset would never have been in a position to manage the Infrastructure Fund. Defendants failed to act prudently in recommending Onset as manager and, as a result, the Pension Fund suffered large losses. Moreover, had Defendants adequately monitored and reviewed the performance of the Infrastructure Fund, instead of imprudently turning a blind eye in derogation of their fiduciary duties, the Pension Fund would have discovered Onset's fraud and mismanagement years sooner, saving millions of dollars of hard-earned retirement savings of Southern California's construction workers.

b. **Defendants' Statement:**

This case arises from the allegedly fraudulent conduct of a third party: Onset. In 2016, Plaintiffs—a multiemployer Pension Fund and its Board of Trustees—executed a limited partnership agreement (the "LPA") with Onset to establish a partnership called the California Infrastructure Fund I, LP (the "Infrastructure Fund"). *See* Compl., at 2, 6, *Cal. Infrastructure Fund I Inc. LLC, v. Onset Gen. Partner, LLC*, 23SM-cv-00483 (Cal. Sup. Ct. Feb. 1, 2023). The LPA vested Onset with the exclusive authority and sole discretion to (i) identify potential investments, and (ii) invest the Pension Fund's $30 million commitment in securities that Onset determined to be in the best interest of the Partnership. *See id.* at 2, 6-7. Seven years later, Plaintiff Pension Fund filed an action against Onset in California state court, alleging that Onset breached the LPA, and defrauded the Pension Fund by intentionally making inappropriate investments and lying to the Pension Fund about the Infrastructure Fund's value and performance (the "Onset Litigation"). *See id.*

Plaintiffs brought this action against Defendants in September 2023, and filed their Second Amended Complaint on April 29, 2024 (the "SAC"). ECF No. 69. The SAC alleges that Onset engaged in the exact same fraud that is alleged in the Onset litigation. *See id.* Plaintiffs now claim, however, that Defendants should be held liable for the losses that Plaintiffs suffered due to Onset's alleged fraud. In particular, Plaintiffs allege that Defendants breached the fiduciary standards of the Employment Retirement Income Security Act of 1974 ("ERISA") by (i) imprudently recommending Onset as an investment manager for the Pension Fund in 2014; and (ii) imprudently monitoring Onset's performance after Plaintiffs executed the LPA.[1] *See id.* at 39-40. It is undisputed that Defendants' recommendation of Onset occurred outside ERISA's six-year statute of repose, but Plaintiffs allege that the claim is timely because Defendants knew of, and took affirmative steps to fraudulently conceal,

---

[1] This Court dismissed Counts II-IV of the SAC on August 5, 2024. ECF No. 79.

Onset's alleged fraud. In connection with their imprudent monitoring claim, Plaintiffs allege that Defendants knew or should have known of Onset's fraudulent conduct.

2. **Rule 26(f) Conference.** Pursuant to Fed. R. Civ. P. 26(f), an initial discovery and case management conference was held on October 8, 2024 and was attended by:
   a. Taleah E. Jennings, on behalf of Plaintiffs;
   b. Frank W. Olander, on behalf of Plaintiffs;
   c. Andrew B. Lowy, on behalf of Plaintiffs;
   d. Samuel N. Rudman, on behalf of Defendants;
   e. Eric G. Serron, on behalf of Defendants;
   f. Caroline Trusty, on behalf of Defendants.

3. **Initial Disclosures**. The Parties agree that no changes should be made to the form or requirement for disclosures under Federal Rule 26(a)(1) and that such disclosures will be made on or before **October 25, 2024**.

4. **Plan for Discovery**.
   a. **Timing of Discovery**. The parties agree that discovery should not be completed in phases but disagree on the time necessary to complete discovery. The parties' respective positions are as follows:
      i. **Plaintiffs' Proposal:**

Plaintiffs propose a deadline of **Friday, June 20, 2025** to complete fact discovery and a deadline of **Friday, September 19, 2025** to complete all discovery.

Contrary to Defendants' assertion, a schedule that provides the parties nearly a year to complete discovery is neither unrealistic nor unfair to Defendants. As is true in virtually all cases, some third party discovery will be necessary here, but Defendants fail to explain how it is unreasonable or impracticable for the parties to complete that discovery in eight months. Defendants identify a total of only four third parties below from whom they anticipate discovery will be necessary. Even if the actual number of

third parties turns out to be greater than four, Plaintiffs' proposed schedule affords the parties more than adequate time to complete that discovery.

Moreover, Defendants' contention that Plaintiffs' have a "16-month head start" on discovery has it backwards. This is a case about Defendants' misconduct and failure to fulfill their fiduciary duties, and the discoverable information necessary to prove Plaintiffs' claims is in Defendants' possession. While Plaintiffs engaged in some discovery in litigation with Onset, the party Defendants were charged with monitoring, they did not receive any documents, information, or testimony from Meketa or Ms. Chambers in that litigation. Indeed, both Onset and Plaintiffs' subpoenaed Meketa in that litigation, but Meketa flatly refused to produce a single document. Given the reality that virtually all of the relevant documents and communications are in Defendants' possession and the key witnesses are Ms. Chambers and other current or former employees of Meketa, if anyone has a head start on discovery, it is Defendants. In any case, an eight-month period to complete fact discovery affords Defendants more than ample time to conduct any necessary third party discovery of Onset.

    ii. **Defendants' Proposal:**

Defendants respectfully submit that the parties can prepare this case for trial promptly, but that Plaintiffs' proposal—which provides for less than eight months of fact discovery—is unrealistic and unfair to Defendants. For the reasons that follow, Defendants propose **January 22, 2026**, as the deadline for the parties to complete fact discovery, and **April 22, 2026**, as the deadline for the parties to complete all discovery.

Plaintiffs' proposal is unrealistic because the parties likely will engage in wide-ranging discovery from third parties, in addition to extensive party discovery. For example, the SAC's key allegations all concern what Defendants supposedly knew or should have known about how Onset—a third party—allegedly defrauded Plaintiffs. Similarly, the SAC alleges that Onset's fraud involved multiple other third parties, including, for example, an independent accounting firm who Onset allegedly falsely

claimed reviewed the valuations that Onset published to Plaintiffs and Defendants. The SAC also alleges that Onset's misconduct ultimately was uncovered through an investigation by an independent third-party valuation firm. Finally, and again, by way of example, Rocky Miller of Cox, Castle and Nicholson—another third party—negotiated the LPA, which gave Onset sole discretion and exclusive authority over the Infrastructure Fund's investment decisions. Defendants expect that Miller will have discoverable information concerning the Pension Fund's and Onset's negotiations, their intent concerning key provisions of the LPA, and how they expected that Onset would exercise its discretion under the LPA. Defendants therefore anticipate that significant third-party discovery will be required, both from the third parties identified above and from the multiple third-party service providers hired by the Pension Fund as alleged in the SAC, some of whom are unknown to Defendants. *See e.g.*, SAC ¶20 ("[T]he Pension Fund hired additional third-party advisors to conduct a review of the Infrastructure Fund's investments."); *id.* ("It quickly became apparent to the third-party advisors that at least three of the nine Portfolio Companies were worthless."). Defendants believe 15 months is a more realistic timeline for fact discovery, and one which is less likely to result in requests to amend the schedule.

  Plaintiffs' expedited schedule also is fundamentally unfair to Defendants. In the Onset Litigation, Plaintiffs were engaged in discovery with Onset from May 2023 to at least September 2024—a period of roughly 16 months. Plaintiffs thus have had a 16-month head start when it comes to discovery concerning the alleged misconduct that is at the heart of this case. Abbreviating fact discovery in this case would unfairly benefit Plaintiffs and disadvantage Defendants, as Defendants are not a party to the Onset Litigation and have not had the opportunity to evaluate Onset's conduct using Onset's documents. For these reasons, Defendants propose **January 22, 2026**, as the deadline for the parties to complete fact discovery, and **April 22, 2026**, as the deadline for the parties to complete all discovery.

 b. **Subjects of Discovery**.  The Parties anticipate conducting discovery concerning a wide range of issues covered by Plaintiffs' Second Amended Complaint,[2] including, without limitation:

- i. Meketa's retention by the Pension Fund;
- ii. Meketa's status as an ERISA fiduciary;
- iii. The Infrastructure Investment Policy;
- iv. The Infrastructure Fund;
- v. Meketa's due diligence and vetting of potential investment managers for the Infrastructure Fund;
- vi. The formation of Onset and/or Onset Capital;
- vii. Chambers' and/or Meketa's relationship with Onset, McCain, Perreca, and/or Snyder;
- viii. Meketa's recommendation that the Pension Fund retain Onset;
- ix. Meketa's monitoring of Onset;
- x. Meketa's and/or Onset's presentations to the Trustees;
- xi. Meketa's discussions with the Trustees and/or third-parties concerning Onset, the Infrastructure Fund, and/or the Portfolio Companies;
- xii. The Trustees' internal discussions regarding Meketa, Onset, the Infrastructure Fund, and/or the Portfolio Companies;
- xiii. The Pension Fund's termination of Meketa's services;
- xiv. Meketa's assumption of PCA's liabilities;
- xv. Onset's conduct;
- xvi. The Onset Litigation;
- xvii. The LPA;
- xviii. Plaintiffs' communications with Onset;

---

[2] Capitalized terms not otherwise defined have the meanings ascribed to them in the Second Amended Complaint.

   xix. Plaintiffs' investigation into Onset's alleged misconduct;

   xx. Any third-party investigation into Onset's alleged misconduct on behalf of Plaintiffs; and

   xxi. Plaintiffs' removal of Onset as General Partner of the Infrastructure Fund.

 c. **Discovery Scope and Limitations**.

   i. **Plaintiffs' proposal:**

Plaintiffs believe that each side should be afforded 10 fact depositions, consistent with Federal Rule of Civil Procedure 30(a)(2). Plaintiffs respectfully submit that Defendants' request for 10 additional depositions beyond the 10 depositions permitted by Federal Rule of Civil Procedure 30(a)(2) is premature. Plaintiffs submit that the deposition discovery in this action should be conducted efficiently, and that Defendants cannot at this point make the specific showing required to establish a need for 20 depositions, or establish that such depositions will not be unreasonably cumulative or duplicative. *See, e.g.*, *Acosta v. Southwest Fuel Mgmt., Inc.*, No. 2:16 CV 4547-FMO (AGRx), 2017 WL 8941165, at *7 (C.D. Cal. Sept. 19, 2017) ("Most courts hold that in order to make a 'particularized showing,' moving parties must, at a minimum, 'ordinarily exhaust their allowed number of depositions before making a request for additional' depositions."); *AuthenTec, Inc. v. Atrua Techs., Inc.*, No. C 08-1423 PJH, 2008 WL 5120767, at *1 (N.D. Cal. Dec. 4, 2008) ("A party seeking to exceed the presumptive number of depositions must make a particularized showing of the need for the additional discovery. To that end, courts will generally not grant leave to expand the number of depositions until the moving party has exhausted the ten depositions permitted as of right under Rule 30(a)(2).") (citations omitted).

Defendants argue that it is necessary to expand the deposition limit now by noting that there are "14 Trustee Plaintiffs" and "unknown number of former Trustees who served during the time period when Plaintiffs chose to retain Onset." Defendants, however, have not come close to meeting their burden of demonstrating that it is

necessary to depose each of those individuals. The vast majority of the Trustees have knowledge relevant to this matter only to the extent that they attended board meetings that other Trustees also attended. If, as is likely to be the case, a few of those Trustees are "able to testify about what transpired at such meetings, then the testimony of other attendees—even if parties—may be duplicative and cumulative." *Wood v. Mut. Redevelopment Houses, Inc.*, 14cv7535 (AT) (DF), 2019 WL 11590145, at *3 (S.D.N.Y. Mar. 21, 2019). In the event that, after those depositions have been completed, Defendants determine good cause exists to depose additional Trustees, they can request leave from the Court at that time.

If Defendants conduct their depositions in a reasonable manner, Plaintiffs submit that more than 10 depositions are not likely to be necessary. Thus, Plaintiffs respectfully submit that it is premature to expand the deposition limitations in Rule 30. However, Plaintiffs fully intend to work cooperatively with Defendants to evaluate the need for any additional depositions as discovery unfolds.

        ii.    **Defendants' Proposal:**

Defendants respectfully request leave to take up to 20 fact depositions in this matter, because the SAC itself identifies more than 10 potential key witnesses in this case. Specifically, the SAC identifies: (a) 14 Trustee Plaintiffs, each a fiduciary to the Pension Fund; (b) three principals of Onset, all alleged to have committed fraud against the Pension Fund; (c) the accounting firm that is alleged to have been responsible for calculating the Infrastructure Fund's internal rate of return; (d) an independent valuation firm that is alleged to have uncovered Onset's fraud through an investigation of the Infrastructure Fund; (e) an attorney responsible for negotiating the LPA; and (f) nine Portfolio Companies, about which Onset allegedly made false statements. In addition to the 14 current Trustees, there are also an unknown number of former Trustees who served during the time period when Plaintiffs chose to retain Onset. Because Plaintiffs' allegations depend in part upon the doctrine of fraudulent concealment, Plaintiffs' historical knowledge about Onset's conduct (and Defendants'

alleged attempts to conceal it) will be an important subject of discovery. Defendants will proceed as efficiently as possible, but Defendants respectfully submit that the number of likely witnesses justifies permitting up to 20 fact depositions.

Plaintiffs' citation to *AuthenTec* is inapplicable here. In *AuthenTec*, the court denied a party's motion for 14 additional depositions because the case was "a run-of-the-mill patent case with one plaintiff and one defendant." *Id.* at *2, 6. Plaintiffs' citations to *Acosta* and *Wood* are similarly misplaced. In *Acosta*, the court denied a party's request *on the eve of the fact discovery deadline* for an additional 140 hours (20 days) of deposition time to depose an additional 60 to 785 witnesses. *Acosta*, 2017 WL 8941165, at *11-12. And in *Wood*, the court ordered the *pro se* plaintiffs to "significantly pare down their list of desired deponents" because one plaintiff's "schedule ma[de] it difficult for him to take sufficient time off from work to conduct depositions" and plaintiffs were "[a]sking for nearly a year and a half to conduct depositions at the pace of only two depositions per month." *Wood*, 2019 WL 11590145, at *11.

Here, there are multiple parties and multiple potential key witnesses (both parties and third parties) identified in the SAC. Where, as here, it is clear at the outset of discovery that more than 10 depositions will be necessary, Defendants respectfully should not have to exhaust the 10 before seeking leave from the Court for any additional depositions. *See, e.g.*, *Perez v. Brain*, No. CV 14-3911-JAK (AGRx), 2015 U.S. Dist. LEXIS 197731, at *26-27 (C.D. Cal. July 21, 2015) ("The plain language of the Rule does not require that the motion be brought after 10 depositions are taken . . . . [C]onsideration should be given to this issue at the conference of counsel under Rule 26(f) and the scheduling conference under Rule 16(b), which ordinarily occur before a party has taken 10 depositions."); *Del Campo v. Am. Corrective Counseling Servs., Inc.*, No. C-01-21151 JW (PVT), 2007 U.S. Dist. LEXIS 87150, at *17 (N.D. Cal. Nov. 5, 2007) ("Defendants seek to limit Plaintiffs to ten depositions, each not to exceed seven hours, and to require an individualized showing for each additional

deposition sought. Given the breadth and complexity of this case, this limitation is unwarranted. It would be inefficient to require an additional motion for each additional deposition sought. Additionally, it would be prejudicial to require Plaintiffs to choose the ten depositions to take before they know whether they will be granted more."). Accordingly, Defendants respectfully request leave to take up to 20 fact depositions in this matter.

  d. **Production of Electronically Stored Information (ESI)**.  The Parties have conferred and intend to enter into a stipulated ESI protocol.

  e. **Protective Order**.  The Parties anticipate filing a joint stipulation for a protective order to govern the production and use of confidential materials in this case.  Such stipulated protective order will provide, pursuant to Federal Rule of Evidence 502(d), that inadvertent disclosure of privileged documents or communications does not operate as a waiver of any privilege or protection.

**5. Additional Matters Pursuant to Rule 26-1:**

  a. **Complex Cases**.  The Parties agree that none of the procedures in the Manual for Complex Litigation should be utilized in this action.

  b. **Motion Schedule**.  The Parties anticipate filing motions for summary judgment after the close of discovery and that the deadline to file any such motions should be 60 days after the close of discovery.

  c. **Alternative Dispute Resolution (ADR).**  The Parties agree that a private dispute resolution proceeding (ADR Procedure No. 3) is appropriate in this case and that such proceeding should be conducted after the close of fact discovery.

  d. **Trial Estimate.**  The Parties agree that trial is likely to last 7-10 days.

  e. **Likelihood of Appearance of Additional Parties.**  Defendants may implead Onset and/or its principals, if Defendants discover that Onset in fact made intentional misrepresentations to Plaintiffs and Defendants.

Defendants will make that decision as promptly as possible following discovery of Onset's documents and/or witnesses.

f.  **Expert Witnesses.**  The parties agree to exchange simultaneous expert reports 30 days after the completion of fact discovery and simultaneous rebuttal reports 30 days thereafter.

Dated:  New York, New York
October 22, 2024

SCHULTE ROTH & ZABEL LLP

By:  /s/ *Ronald E. Richman*
Ronald E. Richman
Taleah E. Jennings
Frank W. Olander
Andrew B. Lowy

919 Third Avenue
New York, New York 10022
Telephone: 212.756.2000
Facsimile: (212) 593-5955

Paul R. Fine
SCHONBUCH HALLISSY, LLP
11999 San Vicente Blvd.
Suite 300
Los Angeles, California 90049

*Attorneys for Plaintiffs Construction Laborers Pension Trust for Southern California, Jon Preciado, Sergio Rascon, Adrian Esparza, Alex Artiaga, Michael Dea, Hertz Ramirez, Peter Santillan, Jerome Di Padova, Catherine Moncada, Alan Ludwig, Jeff Stewart, Lance Boyer, Bill Boyd, and John Cooper, as Trustees of the Construction Laborers Pension Trust for Southern California, on behalf of the California Laborers Pension Plan for Southern California*

Dated: New York, New York
October 22, 2024

By:   */s/ Diana K. Lloyd*
Diana K. Lloyd
Samuel N. Rudman
Caroline Trusty
Alexander L. Bevans
CHOATE, HALL & STEWART LLP
Two International Place
Boston, Massachusetts 02110
Telephone: (617) 248.5000
Facsimile: (617) 248.4000

Eric G. Serron
STEPTOE LLP
1330 Connecticut Ave NW
Washington, D.C. 20036
Telephone: (202) 429.6470
Facsimile: (202) 429.3902

Robyn C. Crowther
STEPTOE LLP
633 West 5th Street, Suite 1900
Los Angeles, California 90071
Telephone: (213) 439.9400
Facsimile: (213) 439.9599

*Attorneys for Defendants Meketa Investment Group, Inc. and Judy Chambers*