1  Robyn Crowther (SBN 193840)
2  *rcrowther@steptoe.com*
   **STEPTOE LLP**
3  633 West 5th Street, Suite 1900
4  Los Angeles, CA 90071
   Telephone:  (213) 439-9400
5  Facsimile:  (213) 439-9599

6
7  (*Additional counsel listed on next page*)

8  *Attorneys for Defendants* MEKETA INVESTMENT
9  GROUP, INC. and JUDY CHAMBERS

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13  CONSTRUCTION LABORERS          Case No.: 2:23-cv-07726-CAS-PVC
14  PENSION TRUST FOR SOUTHERN
    CALIFORNIA, and JON PRECIADO,   **[DISCOVERY MATTER: Referred to**
15  SERGIO RASCON, ADRIAN           **Magistrate Judge Pedro V. Castillo]**
16  ESPARZA, ALEX ARTIAGA,
    MICHAEL DEA, HERTZ RAMIREZ,     **JOINT STIPULATION REGARDING**
17  PETER SANTILLAN, JEROME DI      **DEFENDANTS' MOTION TO**
18  PADOVA, CATHERINE MONCADA,      **COMPEL PRODUCTION OF**
    ALAN LUDWIG, JEFF STEWART,      **DOCUMENTS**
19  LANCE BOYER, BILL BOYD, and
20  JOHN COOPER, as TRUSTEES OF     Judge:          Pedro V. Castillo
    THE CONSTRUCTION LABORERS       Hearing Date:   February 11, 2025
21  PENSION TRUST FOR SOUTHERN      Hearing Time:   10:00 am
22  CALIFORNIA, on behalf of the    Courtroom:      590 & Zoom
    Construction Laborers Pension Plan for
23  Southern California,            Discovery Cut-off:    September 30, 2025
24                                  Pretrial Conference:  April 27, 2026
                 Plaintiffs,        Trial:                June 9, 2026
25
26
27           vs.
28

                                  1
         **JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO**
                **COMPEL PRODUCTION OF DOCUMENTS**

| 1 | MEKETA INVESTMENT GROUP, |
| 2 | INC. and JUDY CHAMBERS, |
| 3 | Defendants. |

Samuel N. Rudman (*admitted pro hac vice*)
Adam J. Bookbinder (*admitted pro hac vice*)
Caroline Trusty (*admitted pro hac vice*)
Alexander L. Bevans (*admitted pro hac vice*)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA 02110
srudman@choate.com
abookbinder@choate.com
ctrusty@choate.com
abevans@choate.com
Telephone:  (617) 248-5000
Facsimile:  (617) 248-4000

Eric G. Serron (*admitted pro hac vice*)
eserron@steptoe.com
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
Facsimile: (202) 429-3902

*Attorneys for Defendants* MEKETA INVESTMENT
GROUP, INC. and JUDY CHAMBERS

2

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENTS ...................................................................6

    A.    Defendants' Preliminary Statement .....................................................6

    B.    Plaintiffs' Preliminary Statement ........................................................8

II.   ISSUE IN DISPUTE ..................................................................................11

III.  PARTIES' CONTENTIONS ......................................................................12

    A.    Defendants' Statement ......................................................................12

        1.    Factual and Procedural Background .......................................12

            a.    Plaintiffs' Claims and Their Case Against Onset...........12

            b.    Defendants' Deadline for Impleading Onset and the Parties' Negotiations ......................................................13

            c.    The Parties' Conduct in Discovery and the Informal Discovery Conference ....................................................14

            d.    The Full Text of Defendants' Request and Plaintiffs' Responses and Objections .............................................16

        2.    Argument .................................................................................17

            a.    Legal Standard................................................................17

            b.    The Objections That Plaintiffs Preserved are Meritless and Plaintiffs Have Disclaimed Them. .........................18

            c.    The Sole Objection That Plaintiffs Now Stand on Was Waived and is Meritless. .............................................18

        3.    Conclusion ...............................................................................23

    B.    Plaintiffs' Statement.........................................................................24

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

1.    Factual and Procedural Background .......................................... 24

    a.    The Scheduling Conference and Scheduling Order ....... 24

    b.    The Parties Meet and Confer Multiple Times ............... 26

2.    Argument ................................................................................. 30

    a.    Plaintiffs Risk Significant Prejudice if Required to
        Produce the Transcripts on an Expedited Basis ............. 30

    b.    Defendants Do Not Need the Transcripts to Decide
        Whether to Implead Onset ............................................. 32

    c.    Defendants Are Not Entitled to Pre-Suit Discovery ...... 33

    d.    Defendants' Arguments About Discoverability Are
        Irrelevant and Incorrect ................................................. 35

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure and Local Rule 37-2, Plaintiffs CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA (the "Pension Fund") and JON PRECIADO, SERGIO RASCON, ADRIAN ESPARZA, ALEX ARTIAGA, MICHAEL DEA, HERTZ RAMIREZ, PETER SANTILLAN, JEROME DI PADOVA, CATHERINE MONCADA, ALAN LUDWIG, JEFF STEWART, LANCE BOYER, BILL BOYD, and JOHN COOPER as TRUSTEES OF THE CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, on behalf of the Construction Laborers Pension Plan for Southern California (collectively, "Plaintiffs") and Defendants MEKETA INVESTMENT GROUP, INC. ("Meketa") and JUDY CHAMBERS ("Ms. Chambers") (collectively, "Defendants") (collectively the "Parties"), submit the following joint stipulation regarding Defendants' Motion to Compel Production of Documents (the "Stipulation") in the above captioned action (the "Action").

5

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## I. PRELIMINARY STATEMENTS

### A. Defendants' Preliminary Statement

In this motion, Defendants seek three deposition transcripts from a closely related case (the "Transcripts"). The three deponents all appear on Plaintiffs' own initial disclosures, and Plaintiffs evidently will use their testimony to support their claims. It is undisputed that the Transcripts are relevant, discoverable, and readily available.

Plaintiffs nevertheless have refused to produce the Transcripts. According to Plaintiffs, Defendants and the witnesses may engage in some form of improper "collusion" if the Transcripts are produced. Plaintiffs claim that they therefore are entitled to withhold the Transcripts until the related case settles or is tried in December 2025. Defendants, however, reasonably require the Transcripts now, so they can make an informed decision concerning whether to implead the witnesses and/or their company, Onset General Partner LLC ("Onset"), in advance of a January 31, 2025 impleader deadline.

No authority supports Plaintiffs' decision to withhold the Transcripts. Indeed, Plaintiffs have not cited any rule—procedural, substantive, or otherwise—that insulates the Transcripts from discovery during the pendency of their other case. For at least the four reasons that follow, the Court should overrule Plaintiffs' objection and order them to produce the Transcripts.

*First*, the depositions were taken in a California state court proceeding, in Plaintiffs' related case against Onset. *Cal. Infrastructure Fund I Investor LLC v. Onset Gen. Partner, LLC*, 23SM-cv-00483 (Cal. Sup. Ct. Feb. 1, 2023) (the "Onset Litigation"). Under California law, deposition transcripts are a matter of public record, and Plaintiffs have neither sought nor obtained any order that would alter that baseline rule.

*Second*, the Ninth Circuit "strongly favors access to discovery materials to meet the needs of parties engaged in collateral litigation," because "[a]llowing the

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1131 (9th Cir. 2003) (internal citations omitted). Courts in this district therefore routinely order the production of deposition transcripts from related cases, and there is no reason to depart from that course here.

*Third*, as the party resisting production of admittedly relevant materials, Plaintiffs bear the burden of "supporting [their] objections with competent evidence." *Herbalife Int'l of Am., Inc. v. Kamel*, No. CV 21-6982 MWF (PVCx), 2023 U.S. Dist. LEXIS 130800, at *9 (C.D. Cal. July 20, 2023) (internal citations omitted). Here, however, Plaintiffs have abandoned every single one of the objections that they raised in their written responses and objections. Their concern regarding alleged "collusion" appears nowhere in those objections and therefore was waived. Even if the Court addresses that objection on the merits, the Court will find that Plaintiffs cannot carry their burden under Rule 34 and have cited nothing to substantiate their concern.

*Fourth*, insofar as Plaintiffs intend to rely upon the general rule against pre-pleading discovery, that reliance is misplaced. That rule protects putative defendants who do not yet have any discovery obligations, because they do not face any plausible claim for relief; it offers no protection for plaintiffs who already have wide-ranging discovery obligations. Nor does the rule insulate from discovery materials that are *both* indisputably relevant in the current case *and* which a defendant may use to evaluate a potential third-party claim. On the contrary, courts routinely set impleader deadlines for after discovery has commenced, and they routinely allow defendants to use discovery to implead third parties. Moreover, Plaintiffs themselves have requested, received, and agreed to produce pre-pleading discovery. That rule therefore cannot justify their withholding of the Transcripts.

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Defendants regret the need for this motion and sought to avoid it. Defendants offered to collect and produce materials from six custodians on an expedited basis in exchange for the Transcripts. Defendants also offered to address Plaintiffs' concerns about "collusion" by accepting the Transcripts on an attorneys-eyes'-only basis. Because Plaintiffs have refused to produce the Transcripts, however, the Court should evaluate their position against the demanding standard that applies when a party seeks to withhold relevant and readily available material. Plaintiffs cannot satisfy that standard, so the Court should compel them to produce the Transcripts immediately.

## B.     Plaintiffs' Preliminary Statement

While Defendants style their motion as a discovery motion to compel the production of documents, it is nothing of the sort. Plaintiffs already have agreed to produce the materials at issue—three deposition transcripts (the "Transcripts") from a separate case involving Onset (the "Onset Litigation")—in connection with fact discovery in this action.

What Defendants *really* seek is an order requiring Plaintiffs to produce the Transcripts on an expedited basis (indeed, immediately), purportedly so that Defendants can use the materials to decide whether to implead Onset by the current deadline of January 31, 2025. That is not a true discovery motion; it is, in essence, a motion to modify the scheduling order the Court entered in this action just two months ago, which provides for a fact discovery cutoff of September 30, 2025 and includes no requirement that Plaintiffs expedite any discovery. Indeed, at the scheduling conference before the Court, the Honorable Christina A. Snyder indicated that she thought an impleader deadline of "mid-December" was appropriate, and Defendants requested more time so they could take discovery "***from Onset***." (Jennings Decl., Ex. A, at 3:23-5:7 (emphasis added).) Yet, Defendants did not serve a subpoena on Onset until six weeks later, on December 20, 2024 (*after* seeking a discovery conference with the Court). Instead, Defendants demanded that

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

*Plaintiffs* produce all of the discovery from the Onset Litigation, including the Transcripts, on an expedited basis. They did not ask for any expedited fact discovery deadlines or inform the Court that they needed any such expedited discovery from Plaintiffs before the January 31, 2025 impleader deadline.

If Defendants believe they have a basis to require the completion of certain fact discovery, *i.e.*, all discovery from the Onset Litigation, before the impleader deadline, their proper recourse is to seek a modification to the scheduling order, not to move to compel production of documents that Plaintiffs have already agreed they will produce either (i) after Defendants provide testimony in the Onset Litigation or (ii) upon a settlement of the Onset Litigation, whichever is earlier (and, in no event after the deadline for fact discovery in this case). Defendants filed just such a motion on December 20, 2024, which has been fully briefed and will be heard by Judge Snyder on January 27, 2025. There is no basis to short-circuit that motion based on a trumped-up discovery dispute.

In furtherance of Defendants' efforts to mask their current request as a discovery dispute, they premise each of their arguments on the false pretense that Plaintiffs are refusing to produce the Transcripts, arguing, for example, that the Transcripts are discoverable under California and federal law, and that Plaintiffs waived certain objections to producing them. Again, Plaintiffs have not, nor have they ever, indicated that that the Transcripts are not discoverable or refused to produce them in this proceeding.

In any case, Defendants are neither entitled to the Transcripts to determine whether to implead Onset, nor have they articulated any legitimate need for the Transcripts to make an informed decision as to whether they can plead allegations against Onset sufficient to implead. In fact, they now have all party productions

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

made in the Onset Litigation (spanning approximately 110,000 pages),[1] have access to all of their own communications with Onset (and there should be many, given that, as the Infrastructure Fund's ERISA fiduciaries, they recommended Onset to serve as the Infrastructure Fund's investment manager and were responsible to supervising Onset for nearly the entire 6-year period Onset served in that capacity), and have a personal relationship with one of the Onset principals with whom Ms. Chambers continues to communicate. When Plaintiffs commenced an action against Onset, they had far less access to information and were able to allege facts sufficient to support their claims. Further, Defendants are not entitled to pre-pleading discovery, so their argument that Plaintiffs "evidently will use" the Transcripts to support their claims (based on a warped interpretation of Plaintiffs' initial disclosures) matters naught. They have not identified any legitimate prejudice they would suffer by receiving the Transcripts after the impleader deadline.

In contrast, Plaintiffs have a legitimate concern that Defendants, specifically Ms. Chambers, may use the Transcripts to help corroborate Defendants' otherwise questionable testimony in the Onset Litigation. This is of particular concern because (i) Defendants have refused to participate in discovery in the Onset Litigation, including by not producing a single document in response to a subpoena *duces tecum* served on Meketa on February 21, 2024, (ii) Defendants, specifically Ms. Chambers, concealed from Plaintiffs a pre-existing personal relationship with one of the Onset principals prior to recommending that Defendants engage Onset as an investment manager, and (iii) Plaintiffs learned, in the Onset Litigation, that Ms. Chambers and at least one of the Onset principals remain in contact, as they are personal friends. Defendants argue that Plaintiffs waived the right to raise this argument in connection with the instant motion because Plaintiffs did not assert a similar objection in their

---

[1] Defendants had this material eighteen days before the deadline to implead Onset. They represented to the Court that they needed approximately two weeks with that materials to determine whether to implead Onset. (*See* ECF No. 97, at 10.)

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

written objections and responses to Defendants' discovery demands. As Defendants know, they did not seek expedited production of the Transcripts until *after* Plaintiffs served their written objections. As Defendants also know, Plaintiffs' only concern here is the harm that could result for producing the Transcripts on an expedited basis. Plaintiffs do not object to producing the Transcripts during the fact discovery period at a time when the potential prejudice is lessened or eliminated (either by a settlement of the Onset Litigation, or testimony by Meketa and Ms. Chambers in that case). Defendants also argue that this Court should ignore Plaintiffs' concern because the Transcripts are purportedly a matter of public record. That is false, as the Transcripts have never been made public or filed with any court. Indeed, if the Transcripts were available to the public, Defendants would have no need to seek them through discovery—they could simply request a copy from the deposition officer.

In sum, the Court should deny Defendants' motion. As Plaintiffs have informed Defendants, they will produce the Transcripts consistent with the discovery schedule entered by the Court to allow Defendants to use the Transcripts for purposes of *discovery* in this case. The Court should not empower Defendants to obtain the Transcripts on an expedited basis (and thereby circumvent the scheduling order the Court entered) to use them solely for purposes of seeking to implead Onset, coordinate testimony in the Onset Litigation, or any other non-discovery purpose.

## II. ISSUE IN DISPUTE

Whether the Court should [Defendants' Position] grant Defendants' motion and compel Plaintiffs to produce immediately all deposition transcripts from the Onset Litigation or [Plaintiffs' Position] deny Defendants' motion so that Plaintiffs may produce the depositions transcripts from the Onset Litigation after either (i) Defendants (who concealed a pre-existing personal relationship with one of the

11

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Onset principals when recommending that Defendants engage Onset as an investment manager) testify in that proceeding or (ii) that case is settled.

## III.  PARTIES' CONTENTIONS

### A.  Defendants' Statement

#### 1.  *Factual and Procedural Background*

##### a.  *Plaintiffs' Claims and Their Case Against Onset*

This case arises from the allegedly fraudulent conduct of a third party:  Onset. Plaintiffs are a multiemployer Pension Fund and its Board of Trustees.  Ex. 1[2] ¶¶ 24-26.  Defendants are Plaintiffs' former investment advisors.  *Id.* ¶¶ 36-37.  Plaintiffs retained Defendants to recommend and monitor an investment manager who would invest in infrastructure projects.  *Id.* ¶¶ 39-41.  Defendants recommended Onset.  *Id.* ¶¶ 55, 57.  In 2016, Plaintiffs retained Onset and executed a limited partnership agreement, which established a partnership called the California Infrastructure Fund I, LP (the "Infrastructure Fund").  *See id.* ¶¶ 5, 71.  In 2023, the Pension Fund sued Onset in California state court, alleging that Onset breached the partnership agreement and defrauded the Pension Fund by intentionally making inappropriate investments and lying to the Pension Fund about the Infrastructure Fund's value and performance.  Ex. 2 at 1, ¶¶ 65-72, 88-91.  In the Onset Litigation, the parties produced more than 100,000 pages of documents, and all three of Onset's principals—the individuals who allegedly committed the fraud—were deposed.  Ex. 3 at 16:23-24, 20:9-19.

In this Action, Plaintiffs assert that Defendants breached their fiduciary duties by imprudently recommending Onset and by inadequately supervising Onset's work for the Pension Fund.  *See, e.g.*, Ex. 1 ¶¶ 135-136.  Plaintiffs claim that Defendants therefore should be held liable for the losses that Plaintiffs suffered due to Onset's

---

[2] All exhibits referenced herein are attached to the accompanying Declaration of Samuel N. Rudman in Support of Defendants' Notice of Motion and Motion to Compel Production of Documents ("Rudman Decl.").

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

alleged fraud.  *See id.* ¶¶ 135-141.  Defendants have denied the allegations and maintain that none of the information that was reasonably available to them during the relevant period raised any reason to suspect that Onset engaged in the misconduct or fraud alleged by Plaintiffs.  *See, e.g.*, Ex. 4 ¶ 16.  Defendants cannot know, however, whether the alleged misconduct nevertheless occurred and was concealed from them.  *See id.*

### b. *Defendants' Deadline for Impleading Onset and the Parties' Negotiations*

Since the beginning of this case, Defendants have indicated that they may implead Onset.  Defendants notified the Court in the Parties' Joint Rule 26(f) Report that they "may implead Onset and/or its principals" and "will make that decision as promptly as possible following discovery of Onset's documents and/or witnesses." Ex. 5 at 11-12.  The Court granted Defendants just under three months to determine whether to implead Onset.  *See* Ex. 6 at 1.  The Court set that deadline for January 31, 2025.  *Id.*.

Very shortly after discovery commenced, Defendants served their first set of document requests.  *See* Ex. 7 at 13.  As relevant here, Defendants sought documents, written discovery, and deposition transcripts from the Onset Litigation (collectively, the "Onset Requests").  *Id.* at 10.  Those materials both (i) are relevant to the Parties' claims and defenses, and (ii) would help Defendants evaluate whether to implead Onset. Ex. 8 at 5-6 (disclosing the Onset witnesses whose transcripts are the subject of this stipulation as having information Plaintiffs may use to "support their claims or defenses in this matter").  For three reasons, Defendants believed it would be undisputed that they were entitled to those materials, and that Plaintiffs could produce them promptly.  First, the alleged fraud that is the subject of the Onset Litigation is the same fraud that Defendants allegedly failed to detect in this case. *See* Ex. 1 ¶¶ 10-20; Ex. 2 ¶¶ 1-11.  Second, Plaintiffs included documents from the Onset Litigation and all three of Onset's principals on their initial disclosures, so

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

1    Plaintiffs evidently plan to use these materials to support their claims.  Ex. 8 at 5-7,
2    8 n. 1.  And third, the Onset Litigation materials already have been produced in that
3    litigation, so they are readily available to Plaintiffs and are not privileged.  *See id.*

4         Notwithstanding their initial disclosures, Plaintiffs responded and objected to
5    the Onset Requests.  Ex. 9 at 10-11.  According to Plaintiffs, the Onset Requests
6    sought materials that were irrelevant, and producing them would potentially violate
7    "privacy rights" or other agreements.  *Id.*  Plaintiffs therefore stated that they would
8    "not conduct additional searches" in response to Defendants' requests for documents
9    in the Onset Litigation.  *Id.* at 11.  Plaintiffs further stated that they "will not
10   produce" written discovery or deposition transcripts from the Onset Litigation.  *Id.*
11   In connection with both requests, however, Plaintiffs offered to meet and confer.  *Id.*

12        Defendants took Plaintiffs up on that offer, and the Parties had a negotiation.
13   Defendants explained that they wanted the Onset Litigation documents and
14   deposition transcripts meaningfully in advance of their January 31 deadline for
15   impleading Onset.  Ex. 10 at 1.  Plaintiffs agreed to produce the Onset Litigation
16   documents if, in exchange, Defendants produced communications between Meketa
17   (as well as a predecessor entity, Pension Consulting Alliance, Inc. ("PCA")) and
18   Onset on an expedited basis.  Ex. 11 at 7-8.  Plaintiffs stated that they wanted those
19   materials promptly, so they could use them to oppose any motion by Defendants to
20   implead Onset.  Ex. 3 at 10:6-13.

21        Plaintiffs refused, however, to produce the Transcripts.  Ex. 3 at 10:18-24; Ex.
22   13 at 1.  Plaintiffs said they were concerned about witness "collusion."  Ex. 3 at
23   10:18-24.  Defendants therefore offered to accept the Transcripts on an attorneys'-
24   eyes-only basis.  *Id.*  Plaintiffs declined that proposal.  *Id.*  From there, the Parties'
25   approaches to their discovery obligations sharply diverged.

26       c.  ***The Parties' Conduct in Discovery and the Informal***
27           ***Discovery Conference***

28

14

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

Defendants could not agree to a deal that (i) required them to complete custodial collections for six custodians over a ten-year time-period, but (ii) did not include the Transcripts, which Defendants regarded as the most important materials from the Onset Litigation.  Ex. 3 at 38:16-21.  On December 13, Defendants therefore declined Plaintiffs' proposal, but stated as follows:

> Notwithstanding our failure to reach an agreement, Defendants will produce all communications between Meketa/PCA and Onset that are currently available next week.  Defendants also will use their reasonable best efforts to complete their collection and produce all such communications from all of their custodians' files as promptly as possible.

Ex. 11 at 4.

In response, Plaintiffs did not offer to produce anything.  Nevertheless, consistent with their December 13 e-mail, Defendants produced 2,479 pages of communications with Onset on December 20.  *See* Ex. 16 at 1.  Defendants also expedited their custodial collection of Meketa/PCA e-mails.  Defendants therefore produced an additional 473 pages on January 3, which completed their production of Meketa/PCA e-mails with Onset.  *See* Ex. 17 at 1.  Plaintiffs did not make any reciprocal production.

The Parties appeared before Judge Castillo for an informal discovery conference on January 6.  Ex. 3 at 1.  After hearing the Parties' positions concerning documents, the Court cautioned Plaintiffs that "if I order you to turn over documents, keep in mind I can do a sanction . . . . [B]ecause you would have had no meritorious objections to turning over those documents."  *Id.* at 47:4-23. The next day, Plaintiffs agreed to produce party productions from the Onset Litigation, but not the Transcripts.

The Court ordered the Parties to brief their dispute concerning the Transcripts.  Ex. 3 at 39:13-16.  During the conference, the Court explained that it did not "hear a real objection or a viable objection regarding the relevance of the Transcripts."  *Id.*

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

at 30:6-8.  Plaintiffs conceded that the Transcripts are "fair game for discovery and that [Defendants] can get them[.]"  Ex. 3 at 29:4-6; *see also id.* at 31:7-8 ("you are right, we do not have an objection to producing the transcripts").  Plaintiffs likewise did not dispute that they could produce them immediately.  *See id.* at 29:2-31:19. Plaintiffs contended, however, that producing the Transcripts—even on an attorneys'-eyes-only basis—would increase the risk of "collusion."  *See id.* at 31:2-5.  When asked to direct the Court to evidence of collusion or possible collusion, Plaintiffs responded that "the best place to direct you would be in the [T]ranscripts themselves," but did not explain what this purported collusion consisted of.  *Id.* at 33:15-23, 34:16-19.

### d.    *The Full Text of Defendants' Request and Plaintiffs' Responses and Objections*

Pursuant to the requirements of Local Rule 37-2.1, the full text of the disputed request and Plaintiffs' response is as follows:

**REQUEST NO. 6:**
All Documents relating to discovery in the Onset Litigation, including subpoena responses, interrogatory responses, responses to document requests, responses to requests for admission, and deposition transcripts.

**RESPONSE TO REQUEST NO. 6:**
Plaintiffs object to Request No. 6 on the grounds that it is overbroad, vague, and ambiguous. Plaintiffs further object to Request No. 6 to the extent it seeks the production of documents that are not relevant to any party's claims or defenses or proportional to the needs of the case. Plaintiffs further object to Request No. 6 on the ground that it purports to seek documents or information, the disclosure of which would violate privacy rights, confidentiality agreements, or other legally-protected arrangements between Plaintiffs and any individual or entity. In particular, Request No. 6 expressly seeks the production of documents protected by the Confidentiality Stipulation. Plaintiffs further object to Request No. 6 to the extent it seeks communications that are mediation or settlement discussions or are otherwise protected by the attorney-client privilege, the work product doctrine, and/or any

16

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

other applicable privilege or protection. Plaintiffs further object to Request No. 6 to the extent it is duplicative of other Requests, including Request No. 5.

Plaintiffs state that they will not produce documents in response to Request No. 6. Plaintiffs further state that they are willing to meet and confer with Defendants regarding Request No. 6.

Ex. 9 at 11.

### 2. *Argument*

#### a. *Legal Standard*

Pursuant to Rule 26(b) of the Federal Rules of Civil Procedure, parties may seek "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Upon a motion to compel discovery, the movant has the initial burden of demonstrating relevance." *Herbalife*,, 2023 U.S. Dist. LEXIS 130800, at *9 (internal citations omitted). "[T]he party opposing discovery has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Id.*

After receiving a document request under Rule 34, a party must state its objections within 30 days. Fed. R. Civ. P. 34(b)(2)(A). A party must expressly state the objections based upon which it will withhold responsive materials. *Id.* 34(b)(2)(C). In the Ninth Circuit, "[i]t is well established that a failure to object to discovery requests within the time period constitutes a waiver of any objection." *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) (holding that a party waived a particular objection to a document request by not including it in its written objections) (internal citations omitted); *Associated Indus. Ins. Co. v. San Joaquin Hills Transp. Corridor Agency*, No. 8:18-cv-01776-PSG (JDEx), 2023 U.S. Dist. LEXIS 37930, at *9 (C.D. Cal. Feb. 13, 2023) (collecting

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

cases and explaining that, "[g]enerally, a party who fails to make timely objections to a discovery request waives those objections").

b.  ***The Objections That Plaintiffs Preserved are Meritless and Plaintiffs Have Disclaimed Them.***

In their responses and objections, Plaintiffs stated that they would not produce the Transcripts.  They objected to doing so on the basis of overbreadth, vagueness, ambiguity, relevance, proportionality, "privacy rights," "confidentiality agreements," and "other legally-protected arrangements between Plaintiffs and any individual or entity."  Ex. 9 at 11.

All of those objections are meritless, and Plaintiffs have disclaimed them.  At the discovery conference, Plaintiffs stated that the Transcripts are "fair game for discovery and that [Defendants] can get them" and that "[the Court] [is] right, [Plaintiffs] do not have an objection to producing the [T]ranscripts. We have an objection to producing them while the Onset [L]itigation is pending."  Ex. 3 at 29:4-5, 31:7-10.  It is therefore undisputed that the timely objections pursuant to which Plaintiffs purported to withhold the Transcripts offer no grounds for doing so.

c.  ***The Sole Objection That Plaintiffs Now Stand on Was Waived and is Meritless.***

Plaintiffs now claim that they are withholding the Transcripts for a reason that does not appear in their responses and objections:  because they fear some form of impermissible "collusion" between Defendants' witnesses and Onset.  Ex. 3 at 31:2-10.  That objection has been waived.  Insofar as the Court nevertheless addresses that objection on the merits, it should be overruled.

*(1)* ***Plaintiffs' Waived Their Collusion Objection.***

Plaintiffs waived their "collusion" objection by failing to include it in their timely-served written responses and objections.  As set forth above, those objections do not refer to any alleged or potential collusion.  *See* Ex. 9 at 11.  That objection therefore has been waived, and should be overruled for this reason alone.  *See*

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

1    *Richmark*, 959 F.2d at 1473.  Insofar as the Court looks past Plaintiffs' waiver, their

2    objection also fails for each of the reasons that follow.

### (2) The Transcripts are discoverable under California law.

5    California law permits discovery of the Transcripts.  Under California law,

6    deposition transcripts are a matter of public record.  Cal. Civ. Proc. Code § 2025.570.

7    They are therefore available not merely to parties in related cases, but to "any

8    person" who requests a copy.  *Bd. of Trs. of Cal. State Univ. v. Superior Court*, 132

9    Cal. App. 4th 889, 901 (2005) (citing Cal. Civ. Proc. Code § 2025.570) (affirming

10   discoverability of deposition transcripts because they "available to the public, absent

11   an objection and protective order, under another statutory scheme").  The Onset

12   depositions were taken in a California state court proceeding, and Plaintiffs

13   acknowledge that they "don't have an order in [the Onset Litigation] preventing . . .

14   witnesses from hearing each other's testimony[.]"  Ex. 3 at 33:8-10.  California law

15   thus offers no support for Plaintiffs' position.

### (3) The Transcripts are discoverable under Federal law.

17   Federal law likewise authorizes the discovery of deposition transcripts from

18   related cases.  Courts routinely hold that documents from a related proceeding—and

19   deposition transcripts in particular—are relevant and discoverable under Federal

20   Rule of Civil Procedure 26.  *See, e.g.*, *Blum v. Merrill Lynch Pierce Fenner & Smith*

21   *Inc.*, 712 F.3d 1349, 1355 (9th Cir. 2013) (affirming that a deposition transcript from

22   a related proceeding "contains testimony relevant to and discoverable in the present

23   action"); *Watchfire Signs LLC v. Catalyst Outdoor Advert. LLC*, No. 21-cv-2128,

24   2022 U.S. Dist. LEXIS 237316, at *9-10 (C.D. Ill. July 28, 2022) (holding that the

25   burden of producing documents from a related proceeding—including deposition

26   transcripts—is low and because "[t]he probative value of these documents []

27   outweighs the prejudice . . . the documents are discoverable").

28   Indeed, the Ninth Circuit "strongly favors access to discovery materials to

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

meet the needs of parties engaged in collateral litigation," because "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Foltz*, 331 F.3d at 1131; *see also Kurin, Inc. v. ICU Med., Inc.*, No. 8:24-cv-00564 FWS (ADSx), 2024 U.S. Dist. LEXIS 214484 at *9 (C.D. Cal. Nov. 22, 2024) (ordering production of deposition transcripts from related case after noting that "[c]ourts allow discovery of documents produced in prior litigation or investigations that have 'significant factual and legal overlap'") (internal citations omitted); *Ristro v. Screen Actors Guild-Am. Fedn. of Tv & Radio Artists*, No. CV 18-7241-CAS (PLAx), 2021 U.S. Dist. LEXIS 171511, at *8 (C.D. Cal. Apr. 2, 2021) (finding that another litigation overlapped with present case making the deposition testimony from the other litigation discoverable and that "Ninth Circuit authority [. . .] strongly favors allowing a party access to discovery materials from collateral litigation") (internal citations omitted); *In re Intuitive Surgical Sec. Litig*, No. 5:13-cv-01920 EJD (HRL), 2016 U.S. Dist. LEXIS 132699 at *4-5 (N.D. Cal. Sept. 27, 2016) (ordering defendants to promptly produce requested deposition transcripts because "[c]ourts have ordered production of deposition transcripts in litigation involving substantially similar claims and issues") (internal citations omitted).

The application of that rule is particularly appropriate here, because Plaintiffs have affirmatively disclosed that they intend to use the relevant witnesses' testimony to support their claims.  Ex. 8 at 5-7, 8 n. 1; *see Goldwater Bank, N.A. v. Elizarov*, No. 5:21-cv-00616-JWH (SPx), 2022 U.S. Dist. LEXIS 212123, at *20 (C.D. Cal. Sept. 21, 2022) (explaining that "Rule 26 affirmatively requires parties to disclose documents they may use to support their claims or defenses").

### (4) *Plaintiffs Cannot Satisfy the Standard for Withholding Relevant Materials Under Rule 34.*

Defendants are thus not aware of any legal principle that insulates the Transcripts from discovery.  Even if such a principle existed, however, Plaintiffs

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

1    would have failed to carry their burden of demonstrating that it applies here.  As the

2    party asserting an objection to the production of admittedly relevant materials,

3    Plaintiffs have "the burden of showing that discovery should not be allowed, and

4    also ha[ve] the burden of *clarifying, explaining and supporting [their] objections*

5    *with competent evidence*."   *Herbalife*,, 2023 U.S. Dist. LEXIS 130800, at *9

6    (emphasis added).

7         Plaintiffs have made no attempt to do so.  In the Parties' meet-and-confer

8    correspondence and at the discovery conference, they cited no legal authority or

9    factual materials—other than a vague reference to the Transcripts themselves—in

10   support of their position concerning collusion.  *See* Ex. 3 at 33:15-23, 34:16-19; Ex.

11   11 at 1, 3, 5 (failing to identify any authority to support their position after

12   Defendants requested such authority).  In truth, it is not clear even what Plaintiffs

13   mean by "collusion."  After all, no rule prohibits Defendants from speaking with the

14   Onset principals.  If, however, Plaintiffs mean to allege that Defendants engaged in

15   some form of serious misconduct, or improperly attempted to influence testimony,

16   then they should provide evidence supporting their allegations.  Plaintiffs cannot

17   carry their burden by vaguely suggesting that materials they will not produce contain

18   evidence that is itself the basis for non-production.

19        Insofar as Defendants can discern the factual predicate for Plaintiffs'

20   objection, it is baseless.  Elsewhere, Plaintiffs have stated that they "expect that

21   Meketa and Judy Chambers will be witnesses at any trial" in the Onset Litigation.

22   Ex. 14 at 13.  Plaintiffs' concern is that "[i]f Defendants (or their counsel) are

23   permitted to review the deposition testimony provided by other witnesses before

24   they testify in that action, it could compromise their testimony."  *Id.*  They have cited

25   no authority that authorizes withholding documents on that basis. *See id.*  But in any

26   event, neither Meketa nor Ms. Chambers will be trial witnesses in the Onset

27   Litigation.  Meketa is a corporation, and there is no analogy to Rule 30(b)(6) that

28   facilitates the testimony of corporations at trial.  Ms. Chambers is a resident of New

21

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

York, and outside the subpoena power of a California state court.  In short, neither of the hypothetical witnesses whose testimony allegedly could be compromised ever will testify at trial in the Onset Litigation.

> **(5) Plaintiffs Cannot Invoke the Rule Against Pre-Pleading Discovery to Withhold Relevant Materials That They Are Otherwise Obliged to Produce.**

In a recent brief, Plaintiffs suggested that the general rule against "pre-pleading discovery" applies here, and means that Plaintiffs need not produce materials that Defendants may use to evaluate potential claims against Onset until after the deadline for impleading Onset has passed.  *See* Ex. 14 at 9-10.  That argument is meritless in principle and in practice.

In principle, the rule against pre-pleading discovery protects putative defendants from the burdens of civil litigation until a plausible complaint has been filed against them.  Until that time, the putative defendant has no discovery obligations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 664-65, 686 (2009) (holding that a plaintiff is "not entitled to discovery" before stating a plausible claim for relief). Here, Plaintiffs commenced this case and already have wide-ranging discovery obligations.  *See, e.g.*, *Butler v. Riverside Cty.*, No. EDCV 14-1616-BRO (JEM), 2016 U.S. Dist. LEXIS 197832, at *7 (C.D. Cal. Mar. 16, 2016) ("Defendants have the right to use the discovery process to investigate into any matters which are reasonably calculated to lead to the discovery of admissible evidence.  Plaintiff filed this action, thereby opening the doors of discovery to Defendants.").  Plaintiffs have admitted that the Transcripts are discoverable.  Ex. 3 at 29:4-5, 31:7-8.  That Defendants will use them *both* to prepare their defenses *and* to evaluate their potential claims against Onset does not somehow remove them from the class of materials that Plaintiffs must produce.  Plaintiffs have cited no authority to the contrary.  *See* Ex. 3 at 33:15-23, 34:16-19; Ex. 11 at 1, 3, 5; Ex. 14 at 13.

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

In practice, Plaintiffs' rule is inconsistent with the ordinary procedure of this Court, contrary to the Parties' conduct, and unworkable in this case. Courts routinely set impleader deadlines for after discovery has commenced, as the Court did here. *See* Ex. 6 at 1. Courts also routinely allow defendants to use discovery to assert third-party claims. *Anthony v. Equifax Info. Servs., LLC*, No. 2:13-cv-01424-TLN-CKD, 2015 U.S. Dist. LEXIS 14110, at *9 (E.D. Cal. Feb. 3, 2015) ("When documents or information are uncovered during discovery and lead to good faith third-party claims, courts will find motions to implead timely."); *Susilo v. Robertson*, No. CV 12-9796 CAS (PJWx), 2013 U.S. Dist. LEXIS 115747, at *10 (C.D. Cal. Aug. 14, 2013) (holding that a motion to implead was timely when defendants filed the motion shortly after discovering a document suggesting third-party liability). Moreover, Plaintiffs themselves requested, received, and now have committed to produce "pre-pleading discovery." They asked for materials to assist them in preparing their opposition to any motion to implead Onset, and they agreed to produce the Onset document productions. *See* Ex. 3 at 10:6-18. If the rule against pre-pleading discovery had any application here, it would not apply to the Transcripts alone.

Finally, Plaintiffs' approach is unworkable in this case. They propose to withhold the Transcripts until their case against Onset has concluded. Ex. 3 at 29:8-9. That case is scheduled to go to trial in December 2025. Ex. 15 at 1. Fact discovery here closes three months before that, in September 2025. Ex. 6 at 1. No authority permits Plaintiffs to withhold indefinitely relevant, discoverable materials.

### 3. *Conclusion*

For these reasons, Defendants respectfully submit that their motion should be granted, and Plaintiffs should be compelled to produce the Transcripts immediately.

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**B.    Plaintiffs' Statement**

**1.    *Factual and Procedural Background***

This action seeks to remedy Defendants' breaches of their fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA"). Defendants breached those duties by, *inter alia*, (i) failing to adequately vet Onset General Partner LLC ("Onset") prior to recommending the Pension Fund retain Onset as the investment manager of an infrastructure investment fund (the "Infrastructure Fund") in which the Pension Fund invested $30 million of Plan assets, and (ii) failing to fulfill their obligation to adequately monitor Onset as the investment manager of the Infrastructure Fund.  (*See* ECF No. 69 at ¶¶ 8, 17.)

In the Onset Litigation, which is a separate action pending in California Superior Court, the Pension Fund and the Infrastructure Fund have asserted claims against Onset and its principals for fraud, breaches of fiduciary duties, and breaches of contract.  *California Infrastructure Fund I Investor LLC, et al. v. Onset General Partner, LLC, et al.*, Case No. 23SMCV00483 (Cal. Super. Ct.).  The parties to the Onset Litigation have engaged in discovery, including exchanging approximately 110,000 pages of documents and taking three depositions.  They currently are engaged in settlement discussions.  On February 21, 2024, Plaintiffs issued a subpoena *duces tecum* to Meketa in the Onset Litigation seeking certain documents within Meketa's possession, custody or control.  Meketa has refused to comply with the subpoena *duces tecum*.

**a.    *The Scheduling Conference and Scheduling Order***

On October 22, 2024, the parties filed a joint Rule 26(f) conference report and discovery plan.  (ECF No. 81.)  In that report, Defendants proposed an extended discovery schedule pursuant to which the parties would be required to complete fact discovery by January 22, 2026.  (*Id.* at 5-6.)  According to Defendants, such an extended discovery schedule was necessary to accommodate "wide-ranging

24

discovery from third parties, in addition to extensive party discovery" and to permit Defendants "the opportunity to evaluate Onset's conduct *using Onset's documents*." (*Id.* (emphasis added).)  Defendants made no mention of any specific need for the discovery from the Onset Litigation that they now want produced immediately, which includes party productions (the "Onset Productions"), subpoena responses, interrogatory responses, responses to document requests, responses to requests for admission and the Transcripts (together with the Transcripts, the "Onset Discovery Record").

Likewise, at no point during the Court's scheduling conference on November 4, 2024 did Defendants state that they needed the Onset Productions or Onset Discovery Record, including the Transcripts, to determine whether to implead Onset.  Instead, Defendants argued that they needed an extended fact discovery period to "replicate … in some measure" the discovery that had been conducted in the Onset Litigation.  (Jennings Decl., Ex. A, Tr. at 5:19-24.)  Similarly, when the Court indicated that it planned to set an impleader deadline of "mid-December," Defendants requested "a little more time … until we have some discovery *from Onset* so we can evaluate that claim." (*Id.* at 3:23-5:7 (emphasis added).)  The Court granted that request, setting January 31, 2025 as the deadline to request leave to file amended pleadings or to add parties and September 30, 2025 to complete fact discovery.  (*Id.*)

Despite requesting additional time from the Court to take discovery from Onset, Defendants waited nearly *six weeks*, until December 20, 2024, to serve a subpoena on Onset.  Instead, as discussed below, Defendants decided to impose an expedited discovery schedule on Plaintiffs that was *never raised* with the Court and which the Court *never ordered*.

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

b. ***The Parties Meet and Confer Multiple Times***

Defendants propounded document requests to Plaintiffs on October 22, 2024, to which Plaintiffs responded on November 20, 2024. Plaintiffs objected to Defendants' Request No. 6 for "[a]ll Documents relating to discovery in the Onset Litigation, including subpoena responses, interrogatory responses, responses to document requests, responses to requests for admission, and deposition transcripts" because, *inter alia*, the request was overbroad, vague, ambiguous, not relevant or proportionate to the needs of the case, and violated privacy rights. (Rudman Decl., Ex. 9.) Plaintiffs stated that they would not produce documents in response to Request No. 6, but stated that they were willing to meet and confer with Defendants regarding Request No. 6. (*Id.*)

Following the timely submission of Plaintiffs' responses and objections to Defendants' document requests, on November 22, 2024, Defendants raised, *for the first time*, a purported need to negotiate "a schedule that gives Defendants an opportunity to meaningfully review [the Onset Productions and the Onset Discovery Record, including the Transcripts] sufficiently far in advance of the January 31, 2025, deadline for impleading Onset." (ECF No. 97-5 at 2-3.) During a meet and confer on December 2, 2024, Defendants informed Plaintiffs that they wanted Plaintiffs to produce the Onset Productions and the Onset Discovery Record, including the Transcripts, by December 20, 2024 to help them determine whether to implead Onset. (ECF No. 97-6 at 3.)

**Plaintiffs told Defendants that Plaintiffs would produce the Transcripts from the Onset Litigation once that case has been settled or tried**. (*See* ECF No. 97-6 at 4.) Plaintiffs *never* refused to produce the Transcripts during the December 2, 2024 meet and confer or the parties' subsequent discussions. (*Id.*) Plaintiffs explained to Defendants that Plaintiffs were concerned that providing the Transcripts prior to the resolution of the Onset Litigation will compromise Plaintiffs case against

26

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Onset and its principals. Ms. Chambers is expected to be a witness in the Onset Litigation and providing Defendants with the Transcripts prior to Ms. Chambers' testimony, or a settlement in the Onset Litigation, risks witness collusion between Ms. Chambers and the Onset principals, Wendell McCain, Charles Snyder, and Eric Perreca. That risk is particularly acute here, given that Ms. Chambers has a close personal relationship with Mr. McCain and concealed that relationship from Plaintiffs when making a recommendation that they engage Onset as an investment manager and during the 6 years that Meketa served as an ERISA fiduciary for Plaintiffs and was supposed to be monitoring Onset. (*See* Compl. ¶¶ 56-59, 64.) Plaintiffs did not learn that Ms. Chambers and Mr. McCain were personal friends until well after Meketa's and Ms. Chambers' fiduciary breaches were uncovered.

The Scheduling Order does not require Plaintiffs to produce the Onset Productions and the Onset Discovery Record, including the Transcripts, on an expedited basis. Nevertheless, Plaintiffs made every effort to accommodate Defendants' desire to receive the Onset Productions and the Onset Discovery Record, **excluding the Transcripts**, in advance of Defendants' deadline to implead Onset. Plaintiffs proposed a mutually beneficial agreement whereby Plaintiffs would agree to produce the entirety of the Onset Productions and the Onset Discovery Record, excluding the Transcripts, if Defendants would agree to produce, on the same time frame, their communications with Onset. (ECF No. 97-8.) As part of that proposal, Plaintiffs agreed that they would not oppose a request by Defendants to extend the deadline to implead Onset by one month. (*Id.*)

Defendants responded that they would agree to the proposal only if Plaintiffs also would produce the Transcripts and expert reports from the Onset Litigation. (ECF No. 97-7.) Plaintiffs explained on numerous occasions that they could not agree to produce the Transcripts on an expedited basis because the Onset Litigation was still pending, Defendants were likely to be witnesses at any trial in the Onset

27

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Litigation, and Defendants' testimony could be compromised if Defendants (or their counsel) had access to the deposition testimony of Onset's principals in advance of their own testimony. (ECF No. 97-6 at 4.) Plaintiffs also informed Defendants that the parties in the Onset Litigation had not exchanged expert reports.

Defendants' single-minded desire to get their hands on the Transcripts caused them to abruptly reverse course. On December 13, 2024, they informed Plaintiffs that they intended to move to compel production of the Onset Productions and the Onset Discovery Record, including the Transcripts, and to extend the deadline to implead Onset. (*Id.* at 5.)

On December 20, 2024, Defendants filed a motion to modify the scheduling order to extend the impleader deadline to March 15, 2024. (ECF No. 97.) That motion has been fully briefed and will be heard on January 27, 2025.

At Defendants' request, the parties participated in an informal discovery conference with the Court on January 6, 2025. Plaintiffs' counsel made clear that Plaintiffs would produce the Transcripts but could not do so immediately because Plaintiffs were concerned about potential witness collusion. (*See* Rudman Decl., Ex. 3, Tr. 30:18-20 ("[W]ithout getting into too much detail, we think there's already been collusion between the witnesses, and we are very concerned about that.").) At that conference, the Court directed the parties to submit a joint stipulation regarding their dispute over the Transcripts by January 16, 2025 and indicated that he would resolve that dispute promptly. The Court further directed the parties to meet and confer regarding the production of the Onset Productions and the Onset Discovery Record. (*See id.* at 46:9-19.)

After the conference, Plaintiffs wrote to Defendants with a proposal that would eliminate the need to further burden the Court with unnecessary motion practice. (ECF No. 107-2.) Under that proposal, Plaintiffs agreed to produce the entirety of the Onset Productions and the Onset Discovery Record, excluding the

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Transcripts, by January 13, 2025, a full eighteen days before Defendants' deadline to implead Onset—leaving Defendants more than the two weeks they represented to the Court they would need to determine whether to implead Onset. (*See* ECF No. 97-1 at 10 ("If Defendants are correct, and the deadline is extended, then Defendants would have at least two weeks to review the Onset Litigation Materials and decide whether to seek to implead Onset. Defendants expect that is the bare minimum amount of time they would need to conduct a meaningful review of the Onset Litigation Materials.").) Given that Plaintiffs proposal would provide Defendants with more than sufficient time to make their determination by the January 31, 2025 deadline, Plaintiffs requested that Defendants agree to withdraw their December 20, 2024 motion to modify the Scheduling Order (the "Motion"). (ECF No. 107-2.) Defendants refused to do so, unless Plaintiffs would stipulate to a four-week extension of the impleader deadline. (*Id.*)

On January 13, 2025, Plaintiffs produced the Onset Productions—running more than 110,000 pages—in their entirety, as well as all of the Onset Discovery Record, excluding the Transcripts. Defendants now have more pre-pleading discovery than most litigants could ever expect—including the Onset Productions and documents and materials already in Defendants' possession by virtue of Defendants' role as ERISA fiduciaries overseeing Onset. In addition, Plaintiffs understand that Onset and its principals intend to make a production in response to the subpoena Defendants belatedly served in this action. Defendants, therefore, should be able to make an informed decision about whether to implead Onset in advance of the January 31, 2025 deadline.

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.    Argument

a.    *Plaintiffs Risk Significant Prejudice if Required to Produce the Transcripts on an Expedited Basis*

Plaintiffs do not object to producing the Transcripts. Rather, Plaintiffs oppose Defendants' attempt to obtain the Transcripts before they testify in the Onset Litigation, because there is a significant risk of prejudice if Defendants (or their counsel) are permitted to review the Transcripts of Onset's principals before testifying as to the facts at issue. Accordingly, Defendants' argument that Plaintiffs have "disclaimed" or waived their objections to producing the Transcripts is a red herring. Defendants cite no authority that supports their contention that a party must object to a request for expedited discovery (that was never previously made) in their written discovery responses in order to preserve the right to oppose a later request to expedite the production of specific documents. Nor can they.

Defendants cite *Richmark Corp v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) for the unremarkable proposition that "a failure to object to discovery requests within the time period constitutes a waiver of any objection." Given that Defendants did not *request* that Plaintiffs produce the Transcripts on an expedited basis until November 22, 2024 (*see* ECF No. 97-5, at 2-3), Plaintiffs had no reason to object to that request when they served their written responses days earlier. Nevertheless, Plaintiffs asserted a timely objection during the parties' meet and confers in early December 2024.

Defendants' argument that the objection lacks merit is similarly misguided. To the contrary, there is a significant risk of prejudice to Plaintiffs if they are required to produce the Transcripts on an expedited basis. Judy Chambers, a Defendant in this action, maintained a close relationship with Onset's principals, Charles Snyder, Wendell McCain, and Eric Perreca, each of whom are defendants in the Onset Litigation. Indeed, Ms. Chambers attended business school with Mr. McCain and was personally responsible for the formation of Onset. (*See* Compl.

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

¶¶ 56-59, 64.)   She failed to disclose that relationship to Plaintiffs when she recommended they engage Onset as an investment manager and during the 6 years she (and Meketa) served as Plaintiffs' ERISA fiduciaries and were responsible for monitoring Onset.

Contrary to Defendants' suggestion, the idea that similarly-situated parties might coordinate their testimony is not novel.   The American legal system has procedural rules that serve to safeguard legal proceedings against that very risk.  *See, e.g.,* Fed. R. Evid. 615 (permitting courts to sequester witnesses so that they cannot hear each other's testimony).  Indeed, "[c]ases often turn on the corroboration of one witness's testimony by another witness. Where this is likely to occur, it is obviously essential for the courts to prevent witness collusion." David T. Moran, *Preventing Witness Collusion,* ALM MEDIA NEWS (2003). *See also* Morgan Scott, *A Different Standard for Different Stages: Why Parties Must Be Allowed to "Invoke the Rule" During Oral Depositions,* 36-37 VAND. L. REV. EN BANC (2024) ("The rule of witness sequestration is deeply rooted in American legal jurisprudence... [and] [t]he risks the Rule protects against—witness fabrication, collusion, intimidation, etc.— are all present in depositions").

The risk that Plaintiffs seek to eliminate by producing the Transcripts after either (i) Defendants testify in the Onset Litigation or (ii) the Onset Litigation is settled is the same risk that rules like Federal Rule of Evidence 615 guard against— the risk that prior testimony taints future testimony.[3]

---

[3]  Defendants argue that neither Ms. Chambers nor a representative of Meketa will testify at trial in the Onset Litigation.  Plaintiffs disagree and will address that issue with the court overseeing the Onset Litigation in due course.  In any case, Defendants cannot credibly argue that they cannot even be subpoenaed to provide deposition testimony in the Onset Litigation.

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

b. ***Defendants Do Not Need the Transcripts to Decide Whether to Implead Onset***

Much of Defendants' submission is premised on the misleading and incorrect assumption that, if the Court does not grant this motion, Defendants will be deprived of discovery to which they are otherwise entitled. Not so. Plaintiffs have *never* taken the position that the Transcripts are not discoverable nor have Plaintiffs refused to produce them. Plaintiffs will produce the Transcripts; the only question is whether the Court should require them to produce the Transcripts now (when it could result in significant prejudice to Plaintiffs in another case) or later (as contemplated by the discovery schedule set by the Court).

The scheduling order entered by the Court provides that fact discovery is to be completed by September 30, 2025. (ECF No. 86.) Plaintiffs will produce the Transcripts sufficiently in advance of that deadline to permit the parties to take necessary discovery. But there is no reason whatsoever why Plaintiffs should be compelled to produce the Transcripts on an expedited basis according to a schedule that Defendants unilaterally dictated (but never requested from the Court and that is contrary to the Court's resolution of the parties' dueling proposed discovery deadlines).

Defendants' sole argument in support of their purported need for the Transcripts now is that they purportedly need them to decide whether to implead Onset. Defendants, as the ERISA fiduciaries responsible for vetting Onset and supervising Onset for nearly the entire 6-year period Onset served as the manager of the Infrastructure Fund, have access to an enormous amount of information about Onset. Like any other litigant, they can use the materials already in their possession to determine whether to assert claims against Onset. Moreover, Plaintiffs have produced the party productions from the Onset Litigation—spanning approximately 110,000 pages—to Defendants, and did so eighteen days before the deadline to implead Onset. Defendants represented to the Court that this was sufficient time,

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

stating that they needed approximately two weeks with materials from the Onset Litigation to determine whether to implead Onset. (*See* ECF No. 97, at 10 ("If Defendants are correct, and the deadline is extended, then Defendants would have at least two weeks to review the Onset Litigation Materials and decide whether to seek to implead Onset. Defendants expect that is the bare minimum amount of time they would need to conduct a meaningful review of the Onset Litigation Materials.").) In short, Defendants have both the time and the necessary information to make the determination of whether to implead Onset. They do not also need the Transcripts now.

### c. *Defendants Are Not Entitled to Pre-Suit Discovery*

Defendants expressly seek pre-pleading discovery—*i.e.*, discovery that they claim to need to make a determination about whether to assert claims against Onset in this proceeding.

As a general rule, however, parties are not entitled to take discovery to determine whether or not to assert claims against another party; they must make that determination based on documents and information in their possession, custody, and control. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 686 (2009) ("the doors of discovery" do not unlock "for a plaintiff armed with nothing more than conclusions," so if a complaint does not "state[ ] a plausible claim for relief," the plaintiff "is not entitled to discovery"); *United States v. Cuya*, 964 F.3d 969, 973 (11th Cir. 2020) ("[I]n civil cases generally, a party is not entitled to discovery before an action is brought—indeed, he may not seek discovery until after he has not only filed a complaint, but a well-pleaded one."); *Application of Eisenberg*, 654 F.2d 1107, 1112 (5th Cir. 1981) (noting that "a person contemplating litigation has no absolute entitlement to early discovery"); *see also* Charles Alan Wright & Arthur R. Miller, Fed. Practice & Procedure § 2071 n.5 (3d ed. 2020) ("The type of fishing which the [Federal Rules of Civil Procedure] do not tolerate is fishing before action

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

1  to try to discover some ground for bringing suit. No discovery process can be used
2  by the plaintiff before he has filed his complaint.").

3          Under the Federal Rules of Civil Procedure, pre-pleading discovery is
4  permitted only in an extremely narrow set of circumstances.  Specifically, Federal
5  Rule of Civil Procedure 27 permits limited discovery to "preserve important
6  testimony that might otherwise be lost," but it is an "abuse of the rule" for potential
7  plaintiffs to "try to use it as a means of discovery to enable them to draw a
8  complaint." *Martin v. Reynolds Metals Corp.*, 297 F.2d 49, 55 (9th Cir. 1961); *see*
9  *also Jorgensen v. HOWS Markets, LLC*, Case No. 8:21-cv-00250-JLS-ADS, 2022
10 WL 3574440, at *4 (C.D. Cal. July 5, 2022) (Rule 27 "may not be used as 'a method
11 of discovery to determine whether a cause of action exists, and if so, against whom
12 action should be instituted'").

13         Defendants do not want the Transcripts now because they are concerned that
14 the testimony contained in the Transcripts will be lost.  Rather, Defendants expressly
15 seek the Transcripts for the impermissible purpose of determining "whether a cause
16 of action exists" against Onset.[4] *Jorgensen*, 2022 WL 3574440, at 4.  They are not
17 entitled to pre-pleading discovery for that purpose.

18         The cases Defendants cite are not to the contrary.  *Anthony v. Equifax Info.*
19 *Servs., LLC*, No. 2:13-cv-01424-TLN-CKD, 2015 U.S. Dist. LEXIS 14110 (E.D.
20 Cal. Feb. 3, 2015) and *Susilo v. Robertson*, No. CV 12-9796 CAS (PJWx), 2013 U.S.
21 Dist. LEXIS 115747, at *10 (C.D. Cal. Aug. 14, 2013) concern whether a party
22 should be granted leave to file a third-party complaint based on new facts uncovered
23 during discovery.  It does not follow logically that because leave to file third-party
24 complaint may be granted after new facts are revealed in discovery (as was the case
25 in *Anthony* and *Susilo*), that parties are entitled to pre-suit discovery.  If that were

26 _____

27 [4] Defendants argue that they will use the Transcripts "*both* to prepare their defenses and to evaluate
their potential claims against Onset."  The mere fact that Defendants will also use the Transcripts
28 to prepare their defense in this action does not support a conclusion that Plaintiffs should produce
the Transcripts *now*, instead of later in discovery.

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

1    the rule, then the Federal Rules of Civil Procedure would permit pre-pleading
2    discovery for the purpose of determining whether to assert a claim.  They do not.

3        Further, Defendants already suggested, in the parties' joint Rule 26(f) report,
4    that they intended to wait until the conclusion of fact discovery to decide whether to
5    implead Onset.  (ECF No. 81, at 10-11.)  The Court rejected that request by setting
6    the impleader deadline at January 31, 2025, approximately eight months before the
7    discovery cutoff.  (ECF No. 86.)

8        Finally, Defendants argue that Plaintiffs' approach is unworkable because the
9    trial in the Onset Litigation currently is scheduled for December 2025, after the fact
10   discovery cutoff in this action.  As they well know, the parties to the Onset Litigation
11   currently are engaged in advanced settlement negotiations.  If the Onset Litigation
12   settles, Plaintiffs will promptly produce the Transcripts.  If it does not, Plaintiffs
13   believe that the risk of witness collusion/coordination would be substantially
14   reduced if Ms. Chambers is deposed in the Onset Litigation before Plaintiffs produce
15   the Transcripts here.  Plaintiffs are more than willing to work with Defendants to
16   schedule and conduct that deposition promptly.

d.    ***Defendants' Arguments About Discoverability Are***
17
18        ***Irrelevant and Incorrect***

19       The issue in this motion is not whether the Transcripts are discoverable but
20   whether Plaintiffs should be compelled to produce them on an expedited basis.  That
21   issue is properly before the Court in the form of Defendants' motion to modify the
22   scheduling order; it is not a discovery issue.  As such, Defendants' arguments that
23   the Transcripts are discoverable under California and federal law are irrelevant.
24   Nevertheless, Defendants' arguments miss the mark.

25       Defendants assert that under California law, deposition transcripts are a matter
26   of public record, and therefore are discoverable.  However, that presumption of
27   access is not absolute, and it does not apply until the documents in question, namely
28   the Transcripts, are filed with the court or used at a judicial proceeding.  *NBC*

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

1  *Subsidiary (KNBC-TV), Inc. v. Superior Court of L.A. Cty.*, 20 Cal.4th 1178, n. 25

2  (1999). The Transcripts have never been filed with any court, so the presumption of

3  access is inapplicable.

4      Defendant's reliance on various federal cases in support of their position is

5  similarly misplaced. None of those cases stand for the proposition that a litigant is

6  entitled to expedited production of a deposition transcript in a separate but related

7  action in which the litigant will be a key trial witness. Indeed, none of the

8  circumstances at issue in the cases Defendants cite are remotely analogous. *See*

9  *Blum v. Merrill Lynch Pierce Fenner & Smith Inc.*, 712 F.3d 1349 (9th Cir. 2013)

10  (affirming district court order requiring a copy of deposition transcript to be held in

11  escrow rather than destroyed and noting a lack of prejudice because the "existing

12  parties have settled their dispute, and … KPMG's intervention has little effect on the

13  original parties' underlying rights"); *Watchfire Signs LLC v. Catalyst Outdoor*

14  *Advert. LLC*, No. 21-cv-2128, 2022 U.S. Dist. LEXIS 237316 (C.D. Ill. July 28,

15  2022) (only potential prejudice identified from production was "the ability to exploit

16  disagreements Defendants have with each other"; no indication that there would be

17  any risk of witness collusion); *Ristro v. Screen Actors Guild-Am. Fedn. of Tv &*

18  *Radio Artists*, No. CV 18-7241-CAS (PLAx), 2021 U.S. Dist. LEXIS 171511 (C.D.

19  Cal. Apr. 2, 2021) (ordering the production of deposition transcript *after* the witness

20  had been deposed in the case and *after* discovery had closed); *Kurin, Inc. v. ICU*

21  *Med., Inc.*, No. 8:24-cv-00564 FWS (ADSx), 2024 U.S. Dist. LEXIS 214484 (C.D.

22  Cal. Nov. 22, 2024) (no expressed concern about witness collusion); *In re Intuitive*

23  *Surgical Sec. Litig*, No. 5:13-cv-01920 EJD (HRL), 2016 U.S. Dist. LEXIS 132699

24  (N.D. Cal. Sept. 27, 2016) (same).

25      Accordingly, none of Defendants' authorities support their argument that

26  Plaintiffs should be ordered to produce the Transcripts on an expedited basis.

27

28

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Dated: January 16, 2025

/s/ Robyn C. Crowther
Robyn C. Crowther (SBN 193840)
**STEPTOE LLP**
633 West 5th Street, Suite 1900
Los Angeles, CA 90071

Samuel N. Rudman (*admitted pro hac vice*)
Adam J. Bookbinder (*admitted pro hac vice*)
Caroline Trusty (*admitted pro hac vice*)
Alexander L. Bevans (*admitted pro hac vice*)
**CHOATE, HALL & STEWART LLP**
Two International Place
Boston, MA 02110

Eric G. Serron (*admitted pro hac vice*)
**STEPTOE LLP**
1330 Connecticut Avenue, NW
Washington, DC 20036

*Attorneys for Defendants*
MEKETA INVESTMENT GROUP, INC.,
and JUDY CHAMBERS

Dated: January 16, 2025

/s/ Ronald E. Richman
Ronald E. Richman (*admitted pro hac vice*)
Taleah E. Jennings *(admitted pro hac vice)*
Frank W. Olander (*admitted pro hac vice*)
Andrew B. Lowy (*admitted pro hac vice*)
**SCHULTE ROTH & ZABEL LLP**
919 Third Avenue
New York, NY 10022
Telephone: 212.756.2000

Paul R. Fine
**SCHONBUCH HALLISSY LLP**
11999 San Vicente Boulevard
Suite 300
Los Angeles, CA 90049
Telephone: 310.556.7900

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Attorneys for Plaintiffs* CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA and JON PRECIADO, SERGIO RASCON, ADRIAN ESPARZA, ALEX ARTIAGA, MICHAEL DEA, HERTZ RAMIREZ, PETER SANTILLAN, JEROME DI PADOVA, CATHERINE MONCADA, ALAN LUDWIG, JEFF STEWART, LANCE BOYER, BILL BOYD, and JOHN COOPER as TRUSTEES OF THE CONSTRUCTION LABORERS PENSION TRUST FOR SOUTHERN CALIFORNIA, on behalf of the Construction Laborers Pension Plan for Southern California

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## SIGNATURE ATTESTATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer attests that all signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  January 16, 2025

*/s/ Robyn C. Crowther*
Robyn C. Crowther (SBN 193840)

**JOINT STIPULATION REGARDING DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS**